# The Rosen Law Firm
### I N V E S T O R   C O U N S E L

January 10, 2020

**VIA ECF**
The Honorable Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    *Horowitz v. Sunlands Technology Group, et al.*, Case No. 1:19-cv-03744-FB-SMG

Dear Judge Block:

We write on behalf of Lead Plaintiff in response to Defendant Sunlands Technology Group's ("Sunlands" or the "Company") December 30, 2019 pre-motion letter (Dkt. No. 29) that was joined by the Underwriter Defendants.

Sunlands is headquartered in and provides online and post-secondary education classes in China. In its Registration Statement for its IPO, Sunlands portrayed itself as rapidly growing in revenue and enrollment due to the quality of its courses and faculty and its positive engagement with students. Indeed, Sunlands reported that new student enrollment rose from 188,733 in 2016 to 387,878 by end of 2017. During that same period, net revenues more than doubled from RMB418.9 million to RMB970.2 million. Not surprisingly, Sunlands had no trouble raising approximately $150 million in its IPO from the sale of 13 million shares at $11.50/share. However, Sunlands' Registration Statement was materially inaccurate. It failed to disclose, that the Company's success was predicated on the sanctioned use of pervasive and aggressive illegal misrepresentations to trick students into signing up for courses, including lies to students about the fact that installment payments were only made possible by loans that students were personally liable for and about refunds. Sunlands investors have been left holding the bag. As of the commencement of this action Sunlands' shares have lost over 80% of their value, trading around $2.28/share. Given the strength of those allegations, Defendants focus their letter on statute of limitations, but that argument is without merit because, *inter alia,* it relies on the assumption that investors in a security listed on the New York Stock Exchange ("NYSE") were put on notice by an article written in Chinese posted on a Chinese website.

**The Amended Complaint Was Timely**

Securities Act claims must be "brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 77m. The limitations period does not start when a plaintiff is on inquiry notice, but only when "in the course of that investigation, the reasonable plaintiff would have discovered sufficient information to plead a securities-law violation adequately." *Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am.*, Inc., 873 F.3d 85, 119 (2d Cir. 2017). "As that determination requires a fact-intensive inquiry, a motion to dismiss will only be granted where uncontroverted evidence irrefutably demonstrates that the plaintiff discovered or should

have discovered facts sufficient to adequately plead a claim." *Yi Xiang v. Inovalon Holdings, Inc.*, 254 F. Supp. 3d 635, 641 (S.D.N.Y. 2017) (internal quotation marks omitted). A plaintiff is only charged with knowing information in a source that "an investor of ordinary intelligence would regularly search." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 432 (2d Cir. 2008).

Defendants' contend that the May 2, 2018 Beijing News article[1] put Plaintiff on constructive notice of his claims, but fail to mention that it was *published in Chinese* on a Chinese website. (Dkt. No. 25; Amended Complaint ("AC") ¶ 40.)  Sunlands listed its shares on the NYSE, clearly targeting English speaking investors in the United States. Courts have consistently held that Chinese language sources are not publicly available to investors in securities listed in the United States. *See In re Fuwei Films Sec. Litig.*, 634 F. Supp. 2d 419, 438 (S.D.N.Y. 2009) ("The Court finds that the publication of three newspaper articles—in Chinese—does not transform the information contained within the articles into 'matters of general public knowledge' that may properly be imputed to Fuwei's stockholders."); *In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*, No. CV 11-2768 PSG (SSX), 2012 WL 12893520, at *7 (C.D. Cal. Feb. 16, 2012) (holding that Section 11 claim was not time-barred even though it was based on Chinese language filings with the State Administration of Industry and Commerce in China that the complaint pled were "publicly available" more than a year before complaint was filed).[2]

Defendants posit that the corrective disclosure date is the same as the constructive notice date, but that undermines their own argument since there is not uncontroverted evidence that the Beijing News article was a corrective disclosure. *See Dartell v. Tibet Pharm., Inc.*, No. CV 14-3620, 2016 WL 718150, at *6 (D.N.J. Feb. 22, 2016)  (holding that disclosure on Chinese-language website was not corrective since "Defendants point to no evidence that this disclosure actually was known to the relevant public or that the market quickly priced in the disclosure"). Here, there is no evidence that the article was known to the relevant public or that the market quickly priced it in.[3]

Defendants argue that the Amended Complaint does not relate back to the Original Complaint, but that argument is meritless. "The purpose of Rule 15 is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities" and an amended complaint only does not relate back if its claims are "based on an entirely distinct set of factual allegations." *Slayton v. Am. Exp. Co.*, 460 F.3d 215, 228 (2d Cir. 2006) (internal quotation marks omitted).  The Amended Complaint easily meets this liberal standard. The Original Complaint alleged that "Sunlands' marketing tactics were not as robust as described in the Registration Statement." (Dkt. 1 ¶ 29.) The Amended Complaint alleges that Sunlands' marketing tactics were not as robust as described because the tactics relied on the aggressive use of illegal misrepresentations.[4] Finally, even if the Amended Complaint did not relate back, it would still be

---

[1] There was nothing in the Beijing News article about the key allegation that Sunlands enticed students with "installment payments" without disclosing that students would be taking out personal loans. (AC ¶¶ 73-78.)

[2] *See also In re China Mobile Games & Entm't Grp., Ltd Sec. Litig.*, No. 14-CV-4471 (KMW), 2016 WL 922711, at *9 n.12 (S.D.N.Y. Mar. 7, 2016) (holding that information was not "publicly available" because it contained "information requiring travel to China, communicating in Chinese, reading signs in Chinese, and translating financial filings in Chinese.").  The only case that Defendants cite in which the limitations period was triggered by media reports concerned articles in *The Wall Street Journal*, *Barron's,* and *The Financial Times*, prominent English language publications aimed at investors. *See Youngers v. Virtus Inv. Partners Inc.,* 195 F. Supp. 3d 499, 521 (S.D.N.Y. 2016).

[3] Sunlands' shares dropped a small amount on May 2, 2018, but still closed higher than they had on April 30, 2018.  On May 11, 2018, the shares surged back to within ten cents of the IPO price.

[4] *See Slayton*, 460 F.3d at 228-229 (holding that allegations concerning adequacy of risk management controls and faulty valuation methods related back to general allegations that management did not fully comprehend risk factors

2

timely because the July 2018 administrative penalty decision (the only other piece of notice that Defendants point to), was, like the Beijing News article, in Chinese.

### The Amended Complaint Alleges Actionable Misstatements and Omissions

Section 11 imposes liability if a registration statement "contained an untrue statement of a material fact or omitted to state a material fact…necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). Securities Act claims are governed by Rule 8 notice pleading standards. *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.* 324 F. Supp. 2d 474, 502 (S.D.N.Y. 2004).

First, Defendants argue that the Registration Statement disclosed what Plaintiff claims was concealed. Sunlands disclosed that there could be "refund disputes between us and our students," (AC ¶ 110) but that could apply to any consumer facing company since they all have disputes with their customers. The disclosure that Sunlands "ha[d]been exposed to negative publicity concerning refund dispute and administrative penalty and alleged improper or misleading statement made in our sales and marketing activities in the past" (*Id.* ¶ 105) indicates that the problems were in the past. The Registration Statement tells the story that Sunlands was growing because of positive engagement with students and the quality of its course offering. The disclosure that Sunlands' "sales and marketing activities may be deemed to violate PRC laws and regulations" (*Id.* ¶ 103) treats the issue as hypothetical and completely failed to convey that Sunlands was actively engaging in aggressive and obviously illegal marketing and the wrongful denial of refunds at the time of its IPO. That disclosure did not give Sunlands carte blanche to engage in illegal activities.[5]

Second, Defendants argue that Sunlands' disclosures in the Registration Statement about its installment payment plan and refund policies were not misleading because they were accurate[6] and had "nothing to do" with Sunlands' sales practices. That entirely misses the point. Those statements were misleading because to achieve its enrollment numbers Sunlands had to falsely offer more attractive terms to students than what was set forth in the Registration Statement. *See McMahan & Co. v. Wherehouse Entm't, Inc.*, 900 F.2d 576, 579 (2d Cir. 1990) (disclosures required under the securities laws are "measured not by literal truth," but on "whether defendants' representations, taken together and in context, would have mislead a reasonable investor").

Third, statements about the Company's growth were not puffery and Plaintiff is not arguing an obligation to self-flagellate. Highlighting positive trends and figures is an actionable misrepresentation when they were inflated by an undisclosed activity that is a risk to the company. *See In re Giant Interactive Grp., Inc. Sec. Litig.*, 643 F. Supp. 2d 562, 569 (S.D.N.Y. 2009).

Respectfully submitted,
/s/ *Brian B. Alexander*

---

and that company had violated SEC regulations requiring accurate representations of its operations and financial conditions). Defendants' cases are inapposite. *See Caldwell v. Berlind,* 543 F. App'x 37, 40 (2d Cir. 2013) (original complaint was entirely based on allegation that defendants had failed to disclose a metric that was actually disclosed); *In re Noah Educ. Holdings*, Ltd. Sec. Litig., No. 08 CIV. 9203 (RJS), 2010 WL 1372709, at *9 (S.D.N.Y. Mar. 31, 2010) (plaintiff's only argument was that both complaints concerned the same registration statement).

[5] *See  In re Prudential Sec. Inc. Ltd. P'ships Litig*., 930 F. Supp. 68, 72 (S.D.N.Y. 1996) (the securities laws do not protect someone who "warns his hiking companion to walk slowly because there might be a ditch ahead when he knows with near certainty that the Grand Canyon lies one foot away.").

[6] Plaintiff does not concede these statements are accurate.

3

---