**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAVID HOROWITZ, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>SUNLANDS TECHNOLOGY GROUP, TONGBO LIU, YIPENG LI, JIANHONG YIN A/K/A PENG OU, LU LU, MICHAEL MINHONG YU, YANG WANG, GOLDMAN SACHS (ASIA) L.L.C., CREDIT SUISSE SECURITIES (USA) LLC, AND J.P. MORGAN SECURITIES LLC,<br><br>    Defendants. | No. 1:19-cv-03744-FB-SMG<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR**
**MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Edmund Polubinski III
Nikolaus Williams
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Tel: (212) 450-4695
Fax: (212) 701-5800
edmund.polubinski@davispolk.com
nikolaus.williams@davispolk.com

Jonathan Chang
DAVIS POLK & WARDWELL LLP
18/F, The Hong Kong Club Building
3A Chater Road, Hong Kong SAR
Tel: +852-2533-1028
Fax: +852-2533-4328
jonathan.chang@davispolk.com

*Counsel for Defendant Sunlands*
*Technology Group*

Douglas H. Flaum
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
Tel: (212) 813-8800
Fax: (212) 355-3333
dflaum@goodwinlaw.com

*Counsel for Defendants Goldman Sachs*
*(Asia) L.L.C., Credit Suisse Securities*
*(USA) LLC, and J.P. Morgan Securities*
*LLC*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ..................................................................................................................... 2

I.      PLAINTIFF'S CLAIMS ARE UNTIMELY .................................................................. 2

      A.      The Initial Complaint Was Untimely Because It Was Filed More than One Year After the *Beijing News* Article ............................................................ 2

            1.      Plaintiff Cannot Disclaim Knowledge of the Beijing News Article Merely Because It Was in Chinese ............................................................ 3

            2.      The Price of Sunlands' ADSs Following Publication of the Beijing News Article Is Irrelevant ................................................................ 6

            3.      The Beijing News Article Provided Notice of the Allegations Central to Plaintiff's Complaint ............................................................ 7

      B.      The Amended Complaint Was Untimely Because It Was Filed More than One Year After English-Language Sources Provided Notice of the Claims ......... 8

II.     PLAINTIFF FAILED TO PLEAD A SECURITIES ACT CLAIM ................................ 10

      A.      Plaintiff's Section 11 Claim Should Be Dismissed for Failure to Plead a Material False Statement or Omission ............................................................ 10

            1.      The Registration Statement Disclosed the Allegedly Omitted Risks ....... 10

            2.      Defendants Owed No Duty to Disclose Allegedly "Deceptive" or "Illegal" Practices and the Identified Statements Were Not Otherwise Misleading ............................................................ 11

      B.      Plaintiff's Section 15 Claim Should Be Dismissed for Failure to Plead an Underlying Violation of the Securities Act ....................................................... 15

CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

## CASES

PAGE(S)

*Amorosa v. AOL Time Warner, Inc.*,
409 F. App'x 412 (2d Cir. 2011) ................................................................................7

*ASARCO LLC v. Goodwin*,
756 F.3d 191 (2d Cir. 2014) .................................................................................. 10

*In re Braskem S.A. Sec. Litig.*,
246 F. Supp. 3d 731 (S.D.N.Y. 2017) ................................................................... 14

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
750 F.3d 227 (2d Cir. 2014) .................................................................................... 6

*In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*,
2012 WL 12893520 (C.D. Cal. Feb. 16, 2012) ...................................................... 5

*In re China Mobile Games & Entm't Grp. Ltd. Sec. Litig.*,
2016 WL 922711 (S.D.N.Y. Mar. 7, 2016) ........................................................ 5, 6

*Dartell v. Tibet Pharm., Inc.*,
2016 WL 718150 (D.N.J. Feb. 22, 2016) ............................................................... 6

*In re Fuwei Films Sec. Litig.*,
634 F. Supp. 2d 419 (S.D.N.Y. 2009) .................................................................... 5

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
643 F. Supp. 2d 562 (S.D.N.Y. 2009) ................................................................... 14

*Karasick v. ProShares Tr.* (*In re ProShares Tr. Sec. Litig.*),
728 F.3d 96 (2d Cir. 2013) .................................................................................... 10

*Knox v. Yingli Green Energy Holding Co.*,
2016 WL 6609210 (C.D. Cal. May 10, 2016) ............................................... 3, 4, 12

*In re Lehman Bros. Sec. & ERISA Litig.*,
799 F. Supp. 2d 258 (S.D.N.Y. 2011) ................................................................... 13

*McMahan & Co. v. Wherehouse Entm't*,
900 F.2d 576 (2d Cir. 1990) .................................................................................. 15

*Meyer v. JinkoSolar Holdings Co.*,
761 F.3d 245 (2d Cir. 2014) ............................................................................ 12, 13

*In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*,
2010 WL 3239430 (S.D.N.Y. Aug. 17, 2010) ........................................................ 2

*In re Mylan N.V. Sec. Litig.*,
   2018 WL 1595985 (S.D.N.Y. Mar. 28, 2018) ........................................................................ 14

*Newman v. Warnaco Grp., Inc.*,
   335 F.3d 187 (2d Cir. 2003) ................................................................................................... 6

*Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*,
   300 F. Supp. 3d 551 (S.D.N.Y. 2018) ................................................................................. 13

*Penn. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp.*,
   874 F. Supp. 2d 341 (S.D.N.Y. 2012) ................................................................................... 7

*Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*,
   637 F.3d 169 (2d Cir. 2011) ..................................................................................... 1, 2, 3, 6

*Resnik v. Swartz*,
   303 F.3d 147 (2d Cir. 2002) ................................................................................................. 12

*In re Rockwell Med., Inc. Sec. Litig.*,
   2018 WL 1725553 (S.D.N.Y. Mar. 30, 2018) ...................................................................... 15

*Shah v. Meeker*,
   435 F.3d 244 (2d Cir. 2006) ................................................................................................... 2

*In re Signet Jewelers Ltd. Sec. Litig.*,
   389 F. Supp. 3d 221 (S.D.N.Y. 2019) ................................................................................. 12

*Slayton v. Am. Express Co.*,
   460 F.3d 215 (2d Cir. 2006) ............................................................................................. 9, 10

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
   547 F.3d 406 (2d Cir. 2008) ............................................................................................... 5, 8

*In re Van Der Moolen Holding N.V. Sec. Litig.*,
   405 F. Supp. 2d 388 (S.D.N.Y. 2005) ................................................................................. 14

*In re VEON Ltd. Sec. Litig.*,
   2017 WL 4162342 (S.D.N.Y. Sept. 19, 2017) .................................................................... 14

*Yi Xiang v. Inovalon Holdings, Inc.*,
   268 F. Supp. 3d 515 (S.D.N.Y. 2017) ................................................................................... 6

*Yi Xiang v. Inovalon Holdings, Inc.*,
   254 F. Supp. 3d 635 (S.D.N.Y. 2017) ................................................................................... 7

STATUTES & RULES

15 U.S.C. § 77k .............................................................................................................................. 4, 7

iv

## PRELIMINARY STATEMENT

Plaintiff's opposition only underscores that his claims should be dismissed.

*First*, Plaintiff's claims are untimely because they are based on the May 2018 *Beijing News* article, which a reasonably diligent investor would have uncovered more than one year before this action was filed in June 2019—and certainly more than one year before the Amended Complaint[1] was filed in November 2019.  Plaintiff contends that the article did not put him on notice of his claims because it was in Chinese.  But that does not justify any delay in the filing of a claim.  The one-year limitations period starts to run when a "reasonably diligent" investor "conducting . . . a timely investigation would have uncovered" facts necessary to plead a claim. *Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 174 (2d Cir. 2011).  And for a Chinese company that operates almost exclusively in China, the mainstream Chinese press is precisely where a reasonably diligent investor would look to uncover information about the company.  Plaintiff ignores this reality and instead attempts to defend his delay by making inapposite arguments based on irrelevant decisions that have no bearing on the application of the discovery rule in the Second Circuit.  Plaintiff's claims should be dismissed as untimely based on the *Beijing News* article alone.

In any event, it is undisputed that English-language sources, *including Sunlands itself*, put Plaintiff on notice of the article by August 2018, well over a year before Plaintiff filed the Amended Complaint in November 2019.  Plaintiff cannot avoid dismissal by invoking the relation back doctrine because the Amended Complaint rests on an entirely distinct set of factual allegations than the original pleading, which did not even mention the *Beijing News* article.

---

[1] Defined terms have the meaning set forth in Defendants' opening brief ("Mot."). "Opp." refers to Plaintiffs' opposition brief.

1

*Second*, Plaintiff's claims should be dismissed because he has failed to allege that there was anything misleading about the Registration Statement. Unsurprisingly, Plaintiff's opposition devotes little attention to the actual disclosures in the Registration Statement, which starkly disclosed the very risks that Plaintiff now claims were concealed. Nor were the generalized statements in the Registration Statement about the Company's sales and marketing practices, growth, and refund policies remotely misleading. At base, Plaintiff urges the Court to conclude that Defendants should have accused Sunlands of illegal marketing, even though Plaintiff does not and cannot allege that *any* regulatory body had ever concluded as much, or even commenced an investigation, at the time of the IPO. The securities laws impose no such duty.

## ARGUMENT

## I.    PLAINTIFF'S CLAIMS ARE UNTIMELY

There is no dispute that the statute of limitations period commences when a "reasonably diligent" investor "conducting . . . a timely investigation would have uncovered the facts constituting a violation." *Pontiac*, 637 F.3d at 174. That standard is clearly met here.[2]

### A.    The Initial Complaint Was Untimely Because It Was Filed More than One Year After the *Beijing News* Article

Plaintiff does not dispute that, according to his own allegations, the *Beijing News* article identified nearly all the alleged conduct in the Amended Complaint or that it was published almost 14 months prior to the filing of the initial complaint and over 18 months prior to the Amended Complaint. (Mot. 11-14; Opp. 13-20.) Instead, Plaintiff offers three arguments: that

---

[2] Plaintiff claims that Defendants must present "evidence irrefutably demonstrat[ing]" that the claims are untimely. (Opp. 13.) But even a single news article can provide notice, requiring dismissal. *See Shah v. Meeker*, 435 F.3d 244, 249-52 (2d Cir. 2006); *In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, 2010 WL 3239430, at *7 (S.D.N.Y. Aug. 17, 2010).

the article was in Chinese, that the price of Sunlands ADSs did not drop following its publication, and that it did not describe *all* the alleged misconduct.  All fail.

>    1.    *Plaintiff Cannot Disclaim Knowledge of the* Beijing News *Article Merely Because It Was in Chinese*

Plaintiff contends that the *Beijing News* article could not have provided notice of his claims because it was "published by a Chinese news source and available only in Chinese." (Opp. 14.)  But Plaintiff conspicuously ignores the relevant standard: what a "reasonably diligent" investor conducting a "timely investigation" would have "uncovered."  *Pontiac*, 637 F.3d at 174.  And any reasonably diligent investor in a Chinese company doing business almost exclusively in China undoubtedly would have looked to the mainstream Chinese press in conducting an investigation and therefore would have "uncovered" the *Beijing News* article.

As Defendants previously explained (*see* Mot. 14), the only case to have addressed Plaintiff's argument rejected it.  In *Knox v. Yingli Green Energy Holding Co.*, 2016 WL 6609210 (C.D. Cal. May 10, 2016), the court found that "the fact that [certain] articles were published in Chinese does not justify any significant delay in discovery" because "investors following a China-based company should have the means with which *to locate and analyze Chinese-language news articles just as quickly as it could with English-language news articles*."  *Knox*, 2016 WL 6609210, at *7 (emphasis added).  That reasoning—based on the same standard applied in this Circuit—is especially apt here, since Plaintiff clearly *was* able to identify the article once he belatedly commenced his investigation.

Plaintiff does not and cannot dispute the *Knox* court's holding that the publication of articles in Chinese "does not justify any significant delay in discovery."  *Id.*  Instead, Plaintiff notes the *Knox* court's additional and separate observation—that plaintiff there alleged that the defendant company's stock price dropped following the publication of Chinese news articles—

and contends that such an allegation is not present in this case.  (Opp. 16.)  But that is a *non sequitur*.  Nothing about the *Knox* court's conclusion about statute of limitations depends on stock price movements following the appearance of the article.[3]

Nor is there anything "fundamentally unfair" about expecting a reasonably diligent investor in a company that operates almost exclusively in China to look to Chinese news media for information about the company.  Indeed, that is a natural source—perhaps even the most natural source—of information about the company's financial performance.  Here, searching Google and using tools like Google Translate would have allowed a reasonably diligent investor to uncover the *Beijing News* article.[4]  (Mot. 15.)  The failure by Plaintiff (who was and is represented by counsel that claims to be expert in investigating Chinese companies) to take these simple steps is particularly inexcusable, given that Sunlands warned investors that it had experienced "negative publicity" and could experience similar publicity in the future.  (*Id*.).[5]

None of the cases Plaintiff cites are on point.  None involved complaints, like here, where the central allegations were drawn from the very source that gave Plaintiff notice of his claims.  Moreover, only two arose in the statute of limitations context, and both are distinguishable.

---

[3] Stock price movements were arguably relevant in *Knox* because plaintiff had sued under Section 10(b) of the Securities Exchange Act of 1934, which requires that plaintiff plead loss causation—which plaintiff there sought to do by alleging that the company's stock price fell following the disclosure of supposed corrective information. *Knox*, 2016 WL 6609210, at *5, *7.  But Plaintiff need not plead loss causation here because he has pleaded claims only under the Securities Act.  15 U.S.C. § 77k(a) (describing affirmative elements of a Section 11 claim, which does not require proof of loss causation).  It is, therefore, unsurprising that such an allegation is not present here.

[4] Plaintiff incorrectly asserts that Google Translate only helps investors *after* they identify a specific article and that it would not help in any event because Google translates Sunlands as "Suntech."  (Opp. 15)  A Google search for Sunlands' name in Chinese, 尚德机构, which is readily identifiable on the Registration Statement's cover, returns Chinese-language articles about Sunlands, and the *Beijing News* article is the *third* hit after Sunlands' website.  (Reply Declaration of Edmund Polubinski III in Further Support of Defendants' Motion to Dismiss the Amended Complaint ("Polubinski Reply Decl.") ¶ 2; *id.*, Ex. F (Google Search Results).)

[5] Whether the Securities Act has a "philosophy of full disclosure" or the SEC requires Securities Act filings to be in English (Opp. 14) are irrelevant given that the *Beijing News* article had not been published when the Registration Statement became effective.

Plaintiff argues that a foreign-language newspaper article is similar to the "specialty publications" that were insufficient to provide notice in *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406 (2d Cir. 2008). (Opp. 14-15.) But the articles in *Staehr* did not identify the alleged misconduct, only one of the seventeen articles even identified the defendant, and that article was in a "niche publication[]" directed at the insurance industry with "relatively minimal" coverage. *Id.* at 418, 420, 432. The court therefore applied a "sliding scale"—under which "the more widespread and prominent the public information disclosing the facts underlying the fraud, the more accessible this information is to plaintiffs, and the less company-specific the information must be"—and held that the general, non-specific information in the niche publications were insufficient to put investors on notice. *Id.* at 432. Here, in contrast, the *Beijing News*—a state-sponsored newspaper in China's capital—is exactly the type of "mainstream press" that *Staehr* found an investor *would* be on notice of. *Id.* Moreover, even if *Beijing News* were not mainstream press, which it is, it would still be sufficient to put Plaintiff on notice under the court's "sliding scale" approach. *See id.* at 432. Company-specific information like the *Beijing News* article, which focused almost exclusively on Sunlands, need not be disclosed in a "widespread and prominent" publication. *See id.* Plaintiff's other case involving limitations did not even involve online news; rather, it concerned Chinese regulatory filings *that were not even alleged to be available online*. *In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*, 2012 WL 12893520, at *7 (C.D. Cal. Feb. 16, 2012) (*see* Opp. 16 n.8). It has no application here.

The remaining two cases Plaintiff cites did not arise in the statute of limitations context and applied materially different standards. *In re Fuwei Films Sec. Litig.*, 634 F. Supp. 2d 419, 437-38 (S.D.N.Y. 2009) (considering whether Chinese articles were "matters of general public knowledge" such that company had duty to disclose); *In re China Mobile Games & Entm't Grp.*

*Ltd. Sec. Litig.*, 2016 WL 922711, at *9 n.12 (S.D.N.Y. Mar. 7, 2016) (considering, *in dicta*, whether report contained "publicly available" information for purposes of loss causation).[6] Neither considered the standard applicable here, which charges a reasonably diligent investor with the *affirmative* obligation to conduct a timely investigation.  *Pontiac*, 637 F.3d at 174.

> 2.    *The Price of Sunlands' ADSs Following Publication of the* Beijing News *Article Is Irrelevant*

Plaintiff next argues that the *Beijing News* article could not have provided investors notice because the price of Sunlands' ADSs did not fall following its publication and it therefore was not a corrective disclosure.  (Opp. 17-20.)  That argument fails for several reasons.

*First*, Plaintiff's evidence (Opp. 9) does not support his assertion.  To the contrary, it shows that the stock price *fell* approximately 6% on May 2—the day after the article was published in New York.[7] *Cf.*, *e.g.*, *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 233-34 (2d Cir. 2014) (considering price movements the day *after* disclosure).

*Second*, whether or not the stock price moved is irrelevant to what a reasonably diligent investor would have uncovered based on a timely investigation.  *Pontiac*, 637 F.3d at 174. Indeed, even Plaintiff's own cases make clear that "a decline in stock price is not necessarily required to put a plaintiff on notice regarding a potential claim." *Yi Xiang v. Inovalon Holdings, Inc.*, 268 F. Supp. 3d 515, 524 (S.D.N.Y. 2017).[8]  And whether an analyst report published at the end of May mentioned the article (Opp. 18-19) similarly has no bearing here.

---

[6] *In re China Mobile* is also readily distinguishable because obtaining the information at issue would have "*require[d] traveling to China*." 2016 WL 922711, at *9 n.12.

[7] Pl.'s Ex. 2 at 2 (May 1 closing price of 9.80; May 2 closing price of 9.21).  Plaintiff claims that the article was published at 2:30 p.m. on May 1, 2018 Eastern Standard Time.  (Opp. 9.)

[8] Plaintiff's other cases are also readily distinguishable.  In *Newman v. Warnaco Grp., Inc.*, 335 F.3d 187, 195 (2d Cir. 2003), which was a Section 10(b) case, the court noted that stock price is "a factor" in assessing notice—not that it is dispositive—and only considered stock movement after finding that, unlike here, the disclosure did not clearly identify the alleged fraud.  *Dartell v. Tibet Pharm., Inc.*, 2016 WL 718150, at *6 (D.N.J. Feb. 22, 2016), (….continued)

6

*Finally*, Plaintiff's argument that he could not "have shown damages based on" the *Beijing News* article (Opp. 19) rests on a basic misapplication of the law. Section 11 damages are measured as the difference in the price of a security when it was bought and the price at the time the lawsuit was brought (or, if the plaintiff no longer owns the security, at its price when sold). 15 U.S.C. § 77k(e). Accordingly, Plaintiff need not allege any damages "based on" the *Beijing News* article in order to state a *prima facie* claim. Moreover, Plaintiff did not buy any Sunlands ADSs until August 28, 2018. (ECF No. 1-1 at 1.) Thus, whether he could have asserted damages following a hypothetical purchase three months earlier is irrelevant.

> 3.    *The* Beijing News *Article Provided Notice of the Allegations Central to Plaintiff's Complaint*

Finally, Plaintiff argues that the *Beijing News* article did not describe *all* of the alleged misconduct identified in the Amended Complaint. (Opp. 19-20.) But that is not the standard. There is no dispute that the article generally disclosed the existence of allegedly deceptive sales and marketing practices and also described nearly all the specific marketing tactics identified in the Amended Complaint. (Mot. 11-12.) As even Plaintiff's cases make clear, that is sufficient. *See Yi Xiang v. Inovalon Holdings, Inc.*, 254 F. Supp. 3d 635, 640-41 (S.D.N.Y. 2017) (a disclosure "do[es] not have to perfectly match the allegations that a plaintiff chooses to include in its complaint" (internal quotation marks omitted)); *see also Penn. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp.*, 874 F. Supp. 2d 341, 368 (S.D.N.Y. 2012) (plaintiff only needs notice of issues that are "central to its complaint"); (Mot. 12-13 (citing cases)).

In any event, Plaintiff's argument ignores the article's actual content. For example,

---

(continued….)

considered whether an article was a corrective disclosure for purposes of establishing the typicality of class representatives who purchased their shares after the disclosure. In *Amorosa v. AOL Time Warner Inc.*, 409 F. App'x 412, 416 (2d Cir. 2011), a corrective disclosure had been specifically pleaded.

7

Plaintiff claims that the article did not disclose that Sunlands' salespeople allegedly "lied about being able to add student status." (Opp. 19-20.) But there was an entire section describing how Sunlands salespeople would purportedly "Break the Promise about . . . Recording . . . Academic Status." (Pl.'s Ex. 1 (*Beijing News* Article) at 3 (describing teacher's "promise[] to make up for the student status, but unexpectedly, the promise about additional recording was broken" and "the student status was not recorded").) Plaintiff also claims that the article did not disclose a purported monthly cap on refunds (Opp. 19), but it mentions refunds *eleven* times and purports to describe issues students allegedly had in receiving them (Pl.'s Ex. 1 (*Beijing News* Article)). Given that a disclosure need not "detail every aspect of the alleged fraudulent scheme," *Staehr*, 547 F.3d at 427, the article was more than sufficient to put Plaintiff on notice of his allegations.

**B.     The Amended Complaint Was Untimely Because It Was Filed More than One Year After English-Language Sources Provided Notice of the Claims**

Even putting aside the *Beijing News* article, Plaintiff's claims are still untimely because it is undisputed that the Amended Complaint was filed over a year after English-language sources put a reasonably diligent investor on notice of the claims. (*See* Mot. 16; Opp. 18.) Indeed, Sunlands acknowledged "the negative publicity that occurred in May" during its August 24, 2018 earnings call—an English transcript of which was posted on its English-language website. (Mot. 15-16.) Similarly, an August 27, 2018 J.P. Morgan analyst report stated, in English, that Sunlands had received "negative publicity" in May "regarding the high proportion of students using loans to finance classes and the company's restrictive returns policy." (*Id.* at 16.)[9]

Plaintiff does not meaningfully dispute as much, and instead attempts to avoid dismissal

---

[9] Plaintiff asserts, in a footnote, that the disclosures could not trigger the statute of limitations because, "[i]n both, Sunlands' management falsely assured investors that they now complied with government regulations." (Opp. 18 n.10.) But Plaintiff has not alleged any basis to believe that such statements were false in August 2018. And even if they were, it is irrelevant to whether they placed investors on notice of the negative publicity that occurred in May. Whether a *different* J.P. Morgan report did not mention marketing practices (*id.* at 18) is also irrelevant.

by claiming that the Amended Complaint relates back to the initial complaint. (*Id.* at 11-13.) Under that doctrine, the central inquiry is whether "the general fact situation alleged in the original pleading" gave Defendants "adequate notice of the matters raised in the amended pleading," *Slayton v. Am. Exp. Co.*, 460 F.3d 215, 228 (2d Cir. 2006)—i.e., the Registration Statement's failure to disclose Sunlands' allegedly "deceptive and illegal" marketing tactics.

The initial complaint does not come close to meeting that standard: It did not mention the *Beijing News* article, the AIC Penalty decisions, allegations from confidential witnesses, or any other of the Amended Complaint's sources. Nor did it include any allegations whatsoever relating to false or deceptive marketing tactics, refund disputes, or tuition payment plans.

Plaintiff does not dispute this, and instead quibbles over the meaning of the word "robust." (Opp. 12.) But however "robust" is defined, the initial complaint's allegation that Sunlands' "marketing practices were not as robust as described in the Registration Statement" (ECF No. 1 ¶ 29) does not suggest that the practices were "deceptive and illegal" (*e.g.*, AC ¶ 98). Similarly, the initial complaint's reference to a Sunlands' press release mentioning "softer marketing tactics" as one of several reasons for a decline in new student enrollments and gross billings nearly a year after the Registration Statement became effective (ECF No. 1 ¶ 30) did not give "notice that the aggressiveness of Sunlands' marketing tactics would be at issue" (Opp. 12).

Indeed, Plaintiff's own cases make clear that the relation back doctrine does not apply here. As the Second Circuit explained in *Slayton*, "even where an amended complaint tracks the legal theory of the first complaint, claims that are based on an entirely distinct set of factual allegations will not relate back." 460 F.3d at 228. Here, the Amended Complaint's legal theory

is based on an "entirely distinct" set of factual allegations and is therefore time barred.[10]  *See also ASARCO LLC v. Goodwin*, 756 F.3d 191, 202 (2d Cir. 2014) (no relation back because the initial pleading "contained no facts whatever" about the amended claim).[11]

## II.    PLAINTIFF FAILED TO PLEAD A SECURITIES ACT CLAIM

Plaintiff's claims should be dismissed for the independent reason that the Amended Complaint fails to allege a material misrepresentation.  Plaintiff's opposition effectively concedes that the Amended Complaint does not allege any actionable *false* statement and instead proceeds solely on the basis of alleged omissions, none of which are actionable.

### A.    Plaintiff's Section 11 Claim Should Be Dismissed for Failure to Plead a Material False Statement or Omission

#### 1.    *The Registration Statement Disclosed the Allegedly Omitted Risks*

There is no dispute that, "when a registration statement warns of the exact risk that later materialized, a section 11 claim will not lie as a matter of law."  (Mot. 19 (quoting *In re ProShares Tr. Sec. Litig.*, 728 F.3d 96, 102 (2d Cir. 2013)).)  That is the case here.  Among other things, the Registration Statement warned that (1) Sunlands personnel could engage in "[f]raud or other misconduct," including by making "unauthorized misrepresentation[s] to [its] potential students . . . during marketing activities"; (2) that its "sales and marketing activities may be deemed to violate PRC laws and regulations" and it "may be exposed to administrative penalties, such as paying fines"; (3) that it "ha[d] been exposed to negative publicity concerning refund dispute[s] . . . and alleged improper or misleading statement[s] made in [its] sales and marketing

---

[10] *Slayton* is also distinguishable because it involved an original complaint that was far more detailed.  *See Slayton*, 460 F.3d at 219-20.  The original complaint here, in contrast, was a placeholder containing virtually no factual allegations.  (*See, e.g.*, ECF No. 1 ¶¶ 26-30.)

[11] For these and other reasons, Plaintiff is wrong that "only claims of purchasers from before June 27, 2018 would be time barred."  (Opp. 20 n.11.)

activities"; and (4) that similar negative publicity could occur in the future.  (Mot. 19-21.)  In light of these disclosures, it would have come as no surprise to a reasonable investor that Sunlands' salespeople may have made misrepresentations to prospective students or that Sunlands could be fined by the government or receive negative publicity as a result.

Plaintiff fails to rebut this.  For example, Plaintiff takes issue with the fact that the disclosure only warned that employees "may" make "unauthorized" misrepresentations to potential students during marketing activities.  (Opp. 28-29.)  But Plaintiff has never suggested, much less alleged, that the marketing tactics described in the Amended Complaint were required by the Company.  Likewise, Plaintiff quibbles with the disclosure that Sunlands' sales and marketing activities "may" be deemed to violate Chinese laws.  (Opp. 29.)  But given that there was no determination of illegality at the time the Registration Statement became effective (*see infra* at 14), that disclosure was entirely accurate.  Moreover, the Registration Statement specifically warned of the difficulties in predicting whether any particular conduct violated the law due to significant "uncertainties" in China's legal system.  (Mot. 5.)[12]  Plaintiff's argument that this and related disclosures are "irrelevant" (Opp. 29), is therefore misplaced.[13]

> 2. *Defendants Owed No Duty to Disclose Allegedly "Deceptive" or "Illegal" Practices and the Identified Statements Were Not Otherwise Misleading*

Even if the risk disclosures were not adequate, there was still no duty to disclose the

---

[12] Plaintiff claims, without support, that the alleged conduct would be "illegal almost anywhere" and is "straight forwardly illegal."  (Opp. 27, 29.)  But conduct such as using a male WeChat avatar to talk to female students and vice versa (Pl.s' Ex. 1 (*Beijing News* Article) at 2, 6; AC ¶ 46) is not "straight forwardly illegal."  And whether a single Sunlands "trainer" believed that impersonating a teacher may be illegal (Opp. 27) is irrelevant.

[13] Plaintiff's challenges to the other risk disclosures also fail.  For example, the qualifier that the Company could be harmed by negative publicity, "regardless of its accuracy," does not imply that "the greatest threat to Sunlands was negative publicity caused by false allegations" or somehow "encourage[] investors to dismiss negative news about Sunlands as inaccurate."  (Opp. 29-30.)  And Plaintiff's claims that disclosures about refund disputes could generically "apply to any consumer facing company" (*id*. 30) ignores the nongeneric disclosure that Sunlands *had* received negative publicity in connection with those disputes in the past (Mot. 5).

alleged omissions because the securities laws do not require companies to cast their practices in a negative light or characterize their actions as illegal, improper, or unlawful. (Mot. 22 (citing cases).) In response, Plaintiff acknowledges that there is no "free-floating obligation to disclose uncharged wrongdoing" (Opp. 28), but claims that he has pleaded three types of false or misleading misstatements. None are actionable.

*First*, Plaintiff claims that statements "concerning" Sunlands' "marketing" were false or misleading "because they inaccurately depict Sunlands' marketing strategy." (Opp. 21.) But the statements Plaintiff identifies—that Sunlands' marketing strategy was "counseling-oriented" and based on a "deep understanding of [students'] unique profile and needs" and that marketing staff received "extensive training" (*id.* at 21-22)—are imprecise generalizations that courts routinely find to be nonactionable puffery. *See, e.g.*, *Knox*, 2016 WL 6609210, at \*16 (statement that company had "deep understanding of local market" was "puffery"); *see also* Mot. 24-25.

In any event, the statements are neither false nor misleading because they "make[] no representations, expressly or by implication, about" the nature of the marketing tactics employed by Sunlands. (Mot. 24 (quoting *Resnik v. Swartz*, 303 F.3d 147, 154 (2d Cir. 2002)).) In response, Plaintiff claims that the statements were "meant to convey to investors that Sunlands had a student centric approach to marketing that distinguished the Company," and cites *In re Signet Jewelers Ltd. Secs. Litig.*, 389 F. Supp. 3d 221 (S.D.N.Y. 2019), in support. (Opp. 23.) But *In re Signet* states only that whether statements are "designed to distinguish the company to the investing public in some meaningful way" is a factor in assessing *materiality*—not whether the statements are *misleading*. *See In re Signet*, 389 F. Supp. 3d at 229.

Plaintiff's reliance on *Meyer v. JinkoSolar Holdings Co.*, 761 F.3d 245 (2d Cir. 2014) (Opp. 21-22) is also misplaced. There, the court found that statements describing measures

12

taken by a Chinese company to comply with environmental regulations were misleading where the company failed to disclose that it nonetheless had "serious ongoing pollution problems." *JinkoSolar*, 761 F.3d at 250. That opinion has no bearing here, as the Registration Statement contained no statements regarding Sunlands' specific marketing tactics, much less "comforting" statements giving the impression that Sunlands complied with all marketing regulations. (Opp. 22-23.) In fact, the Registration Statement expressly warned to the contrary: that Sunlands' "sales and marketing activities may be deemed to violate PRC laws and regulations." (Mot. 4.)[14]

*Second*, Plaintiff claims that various statements about Sunlands' "growth," including in gross billing and new student enrollments, are misleading. (Opp. 24-26 & n.17.) To begin with, Plaintiff mischaracterizes the statements, most of which do not even refer to Sunlands' "growth" or its gross billings and new student enrollment figures. Instead, as explained in Defendants' opening brief, they are vague and generalized statements about Sunlands' "success" and its "deep understanding of [its] students,"[15] which are nonactionable puffery because they do "not give an investor an assessment that can be measured or verified." (Mot. 25 (quoting *Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*, 300 F. Supp. 3d 551, 570 (S.D.N.Y. 2018).).

Nor are the remaining statements identified by Plaintiff—that Sunlands has "a large, fast-growing student base, primarily as a result of our well established brand and effective sales and marketing efforts" and that the "number of new student enrollments grew . . . primarily as a

---

[14] *In re Lehman Brothers Securities & ERISA Litigation*, 799 F. Supp. 2d 258 (S.D.N.Y. 2011) (Opp. 22), is distinguishable for the same reason. There, Lehman's disclosures about net leverage ratios were incomplete, resulting in an obligation to disclose additional details. *In re Lehman Bros.*, 799 F. Supp. 2d at 283. Here, in contrast, there were no disclosures whatsoever about Sunlands' specific marketing tactics.

[15] *See, e.g.*, Opp. 25 n.17; *see also* AC ¶ 97 ("We believe *our success* is largely attributable to our *deep understanding* of our students.") (emphasis added); *id.* ¶ 114 ("*We have been successful* in addressing the unmet demand of a large, growing market . . . .") (emphasis added); *id.* ¶ 115 ("*Our success* has been driven by our ability to cultivate an engaging community among students, teachers and mentors, strong educational content development capabilities, and high-quality faculty . . . .") (emphasis added); *id.* ¶ 117 ("*We have a deep understanding* of the educational needs of our prospective students . . . .") (emphasis added).

result of our increased investment in improving the quality of our course and educational content offerings and sales, branding and marketing spending" (Opp. 25 n.17)—actionable.

Plaintiff does not dispute that the statements are literally accurate; instead, Plaintiff claims that, by "put[ting] the cause of its success at issue," Defendants were obligated to disclose "that an important reason for [Sunlands'] growth was deceptive marketing tactics." (*Id.* at 25.) But the statements *did* disclose that Sunlands' "sales and marketing efforts" were a "primar[y]" reason for Sunlands' success. (AC ¶ 97.) Requiring Defendants to insert "deceptive" in front of "sales and marketing efforts" is no more than imposing a duty on companies to cast their practices in a negative light, which is not the law. (*See supra* at 11-12; Mot. 22.)

Nor do Plaintiff's cases (Opp. 24-25) support his position. Indeed, they make clear that statements, like these, which are merely "narrative restatement[s] of accurate financial reporting . . . [are] not, without more, actionable." *In re VEON Ltd. Sec. Litig.*, 2017 WL 4162342, at *6 (S.D.N.Y. Sept. 19, 2017). Moreover, they are distinguishable because all involve a failure to disclose alleged improper conduct that was *known* when the statements were made.[16] Here, in contrast, there is no suggestion that Sunlands knew that the alleged conduct was illegal (or otherwise "improper") when the Registration Statement became effective in March 2018, or at any point before the July 2018 Beijing AIC penalty decision was issued. (Mot. 23.) And even then, the Beijing AIC decision only identified *some* of the marketing tactics identified in the Amended Complaint. (AC ¶ 52.)

---

[16] *See In re Mylan N.V. Sec. Litig.*, 2018 WL 1595985, at *1-2 (S.D.N.Y. Mar. 28, 2018) (failure to disclose known misclassification of medication to receive higher Medicaid rebates and anticompetitive agreements to inflate drugs prices); *In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d 731, 748-49, 760 (S.D.N.Y. 2017) (failure to disclose bribes that were *criminal*, and therefore intentional conduct); *In re VEON Ltd.*, 2017 WL 4162342, at *1, *6 (same); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 643 F. Supp. 2d 562, 565, 569-70 (S.D.N.Y. 2009) (failure to disclose risk that company knew had already materialized and was already taking steps to address); *In re Van der Moolen Holding N.V. Sec. Litig.*, 405 F. Supp. 2d 388, 405 (S.D.N.Y. 2005) (failure to disclose illegal "front-running" trading practices that company knew, or was reckless in not knowing, violated NYSE rules).

14

*Third*, Plaintiff claims that statements describing certain terms of Sunlands' installment tuition plan and refund policy were misleading because "a reasonable investor would assume that Sunlands' salespeople accurately informed potential students of those policies when selling courses." (Opp. 26.)  But that does not follow: The statements do not purport to suggest anything about what was (or was not) communicated to students.[17]

Plaintiff also argues that the statements about the refund policy were false and misleading because they did not disclose *other* aspects of the refund policy, such as how long it would take for students to receive their refunds or how many refunds would be processed each month.  (*Id.* at 27.)  But the challenged disclosures do not purport to describe *all* aspects of the policy.  (AC ¶¶ 110, 112.)  And it "is well settled that a corporation is not required to reveal all facts on a subject just because it reveals a single fact."  *In re Rockwell Med., Inc. Sec. Litig.*, 2018 WL 1725553, at \*10 (S.D.N.Y. Mar. 30, 2018) (internal quotation marks omitted).

**B.      Plaintiff's Section 15 Claim Should Be Dismissed for Failure to Plead an Underlying Violation of the Securities Act**

It is undisputed that a Section 15 claim requires an underlying Section 11 violation. (Mot. 25.)  Accordingly, Plaintiff's claim should be dismissed for the same reasons as above.

## CONCLUSION

For the reasons set forth above and in Defendants' opening brief, Defendants respectfully request that the Court dismiss the Amended Complaint with prejudice.

---

[17] *McMahan & Co. v. Wherehouse Entertainment, Inc.*, 900 F.2d 576 (2d Cir. 1990) (Opp. 26), involved statements implying that a debenture holder's right to tender was valuable when, in fact, it was not.  *McMahan*, 900 F.2d at 581.  That has no relevance here.

Dated:  June 11, 2020
       New York, NY

Respectfully Submitted,


/s/ Edmund Polubinski III
Edmund Polubinski III
Nikolaus Williams
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Tel: (212) 450-4695
Fax: (212) 701-5800
edmund.polubinski@davispolk.com
nikolaus.williams@davispolk.com

Jonathan Chang
DAVIS POLK & WARDWELL LLP
18/F, The Hong Kong Club Building
3A Chater Road, Hong Kong SAR
Tel: +852-2533-1028
Fax: +852-2533-4328
jonathan.chang@davispolk.com

*Counsel for Defendant Sunlands
Technology Group*


/s/ Douglas H. Flaum
Douglas H. Flaum
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
Tel: (212) 813-8800
Fax: (212) 355-3333
dflaum@goodwinlaw.com

*Counsel for Defendants Goldman Sachs
(ASIA) L.L.C., Credit Suisse Securities
(USA) LLC, and J.P. Morgan Securities
LLC*

16