UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------x
DAVID HOROWITZ, individually and
on behalf of all others similarly situated,

               Plaintiff,

      -against-

SUNLANDS TECHNOLOGY GROUP,
TONGBO LIU, YIPENG LI,
JIANHONG YIN a/k/a PENG OU, LU
LU, MICHAEL MINHONG YU, YANG
WANG, GOLDMAN SACHS (ASIA)
L.L.C., CREDIT SUISSE SECURITES
(USA) LLC, and J.P. MORGAN
SECURITIES LLC,

             Defendants.

----------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 19-CV-3744 (FB) (SMG)

*Appearances:*
*For the Plaintiff*:
LAURENCE ROSEN
PHILLIP KIM
BRIAN B. ALEXANDER
JING CHEN
The Rosen Law Firm, P.A.
275 Madison Avenue, 40th Floor
New York, New York 10016

*For the Defendants:*
EDMUND POLUBINSKI III
NIKOLAUS WILLIAMS
JONATHAN CHANG
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, New York 10017

**BLOCK, Senior District Judge:**

      The defendant in this action under Sections 11 and 15 of the Securities Act of

1933 ("the '33 Act") moves to dismiss on the grounds that the complaint is untimely

and, in the alternative, fails to state a claim.  For the following reasons, the motion is denied.

## I

David Horowitz invested in Sunlands Technology Group ("Sunlands"), which provides online education services in China.  The company went public in March 2018, offering 13 million shares on the New York Stock Exchange at $11.50 a share.

At about the same time, an undercover reporter was investigating several allegedly unfair marketing practices at Sunlands.  The Beijing *News*, a state-owned media outlet, published an exposé on May 2, 2018.  The piece led China's State Administration for Industry and Commerce to investigate and impose an administrative fine of 900,000 RMB (about $135,000) on Sunlands in July 2018.  In April 2019 China's state-run television network reported negatively on Sunlands's refund policy.

In May 2019, Sunlands reported that its earnings for the first quarter of 2019 had decreased by 28.6% over the previous year.  By the following month, it shares were trading at only $2.28 a share.  This precipitous decline inevitably led to litigation.

In his initial complaint filed on June 27, 2019, Horowitz alleged that the registration statement accompanying the initial public offering contained false and misleading statements.  Specifically, he alleged that Sunlands knew and failed to

disclose that its student enrollment and, therefore, its billings were declining because "Sunlands's marketing tactics were not as robust as described in the Registration Statement." Compl. ¶ 29.

On November 15, 2019, Horowitz filed an amended complaint advancing the opposite theory that Sunlands's erstwhile success was predicated on its "aggressive use of illegal misrepresentations to trick students into purchasing courses." Am. Compl. ¶ 5. The amended complaint then detailed the findings of the Chinese media and government, corroborating them with accounts of confidential witnesses inside Sunlands. Horowitz contended that the company's registration statement was false and misleading because it "failed to disclose that . . . deceptive and illegal marketing was pervasive at Sunlands." Am. Compl. ¶ 98.

## II

Section 11 of the '33 Act imposes civil liability if a company's registration statement "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). Section 15 extends that liability to anyone who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under [Section 11.]" *Id.* § 77o. Unlike Section 10(b) of the Security

3

Exchange Act of 1934, Sections 11 and 15 of the '33 Act "impose essentially strict liability for material misstatements contained in registered securities offerings." *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 148 (2d Cir. 2012).

## A. Statute of Limitations

An action to enforce Section 11 must be brought "within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 77m. "[T]he limitations period commences not when a reasonable investor would have begun investigating, but when such a reasonable investor conducting such a timely investigation would have uncovered the facts constituting a violation." *City of Pontiac Gen. Employees' Ret. Fund v. MBIA, Inc.*, 637 F.3d 169, 174 (2d Cir. 2011).

As Sunlands points out, the allegations of the amended complaint are clearly drawn from the Beijing *News* article and its fallout. From that, Sunlands argues that a reasonable investor would have known about the salient facts giving rise to a Section 11 violation either as soon as the article was published May 2, 2018, or very shortly thereafter; since even the original complaint was not filed until June 27, 2019, it is untimely.

4

There are valid points on both sides of the issue.  The article was printed in Chinese in a source not widely read in the United States.  On the other hand, reasonable investors in a Chinese company might be expected to keep abreast of their investment in Chinese media.

These conflicting arguments lead the Court to conclude that it cannot answer the question as a matter of law on a motion to dismiss.  Determining when a claim accrues often "requires a fact-intensive inquiry," and so "a motion to dismiss will only be granted where uncontroverted evidence irrefutably demonstrates that the plaintiff discovered or should have discovered facts sufficient to adequately plead a claim."  *Yi Xiang v. Inovalon Holdings, Inc.*, 254 F. Supp. 3d 635, 641 (S.D.N.Y. 2017) (internal quotation marks and alterations omitted).  Though the historical facts are not seriously in dispute, there are conflicting inferences to be drawn from them.  At this stage, Horowitz is entitled to the benefit of the doubt.  *See Caro v. Weintraub*, 618 F.3d 94, 97 (2d Cir. 2010) ("We review the dismissal of a complaint *de novo,* accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff.").

Sunlands alternatively argues that a reasonable investor would have discovered the claimed inaccuracies and omissions in the registration statement when "negative publicity" was discussed on an earnings call and in an analyst report in August 2018.  Although the Court agrees that a reasonable investor would

5

likely stay apprised of such information, *see, e.g.*, *Gavin/Solmonese LLC v. D'Arnaud-Taylor*, 68 F. Supp. 3d 530, 535 (S.D.N.Y. 2014), it cannot say with certainty when a reasonably diligent investigation would have yielded both the source and content of the publicity.

## B. The Merits

Sunlands argues that Horowitz cannot plausibly allege that any statements in its registration statement were misleading in light of the risk disclosures in the statement. The registration statement generally warned that employee misconduct—including misrepresentations to potential students—"could result in customer complaints, regulatory and legal liabilities, as well as serious harm to our brand and reputation." Decl. of Edmund Polubinski, Ex. A at 31. It further warned that "our sales and marketing activities may be deemed to violate [Chinese] laws and regulations, and we may be exposed to administrative penalties." *Id.* at 19. It described Chinese law as "involv[ing] uncertainties." *Id.* at 41.

In addition, the registration statement warned that "[w]e may be adversely affected by any negative publicity concerning us and our business, shareholders, affiliates, directors, officers and employees and the industry in which we operate, regardless of its accuracy, that could harm our reputation and business." *Id.* at 20. It specifically informed potential investors that "[w]e have been exposed to

6

negative publicity concerning refund dispute and administrative penalty and alleged improper or misleading statement made in our sales and marketing activities in the past." *Id.* (sic).

The Court agrees that, as a general matter, "[w]hen a registration statement warns of the exact risk that later materialized, a Section 11 claim will not lie as a matter of law." *In re ProShares Trust Sec. Litig.*, 728 F.3d 96, 102 (2d Cir. 2013). On the other hand, "[c]autionary words about future risk cannot insulate from liability the failure to disclose that the risk has transpired." *See Rombach v. Chang*, 355 F.3d 164, 173 (2d Cir. 2004). In other words, a warning framed in hypothetical terms does not apprise a reasonable investor of actual misconduct. *Cf. Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 251 (2d Cir. 2014) ("Although [a cautionary] statement warned of a financial risk to the company from environmental violations, the failure to disclose then-ongoing and serious pollution violations would cause a reasonable investor to make an overly optimistic assessment of the risk.").

The Court is well aware that a company is not required to accept any claim of wrongdoing to avoid liability under Section 11. *See Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 131 (2d Cir. 2011) ("Disclosure is not a rite of confession[.]" (internal quotation marks omitted)). Nor do overly optimistic risk assessments create liability. *Cf. ECA, Local 134 IBEW Joint Pension Trust v. JP Morgan*

*Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009) ("The statements highlighted by Plaintiffs are no more than 'puffery' which does not give rise to securities violations.").

Once again, the procedural posture of this case is dispositive.  It may well be the case that Sunlands's difficulties with students and regulators were unforeseeable, good-faith disputes.  But the amended complaint alleges that they were the result of pervasive and obviously illegal wrongdoing that was ongoing at the time of the registration statement.  Horowitz must eventually prove those allegations, of course, but that is not his burden on a motion to dismiss.

### III

For the foregoing reasons, Sunlands's motion to dismiss is denied.

**SO ORDERED**.


_/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
March 31, 2021