**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAVID HOROWITZ, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>SUNLANDS TECHNOLOGY GROUP, TONGBO LIU, YIPENG LI, JIANHONG YIN A/K/A PENG OU, LU LU, MICHAEL MINHONG YU, YANG WANG, GOLDMAN SACHS (ASIA) L.L.C., CREDIT SUISSE SECURITIES (USA) LLC, AND J.P. MORGAN SECURITIES LLC,<br><br>    Defendants. | No. 1:19-cv-03744-LDH-RML<br><br>**ORAL ARGUMENT**<br>**REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Edmund Polubinski III
Craig J. Bergman
Nikolaus Williams
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Tel: (212) 450-4695
Fax: (212) 701-5695
edmund.polubinski@davispolk.com
craig.bergman@davispolk.com
nikolaus.williams@davispolk.com

Jonathan K. Chang
DAVIS POLK & WARDWELL LLP
18/F, The Hong Kong Club Building
3A Chater Road, Hong Kong SAR
Tel: +852-2533-1028
Fax: +852-2533-4358
jonathan.chang@davispolk.com

*Counsel for the Sunlands Defendants*

Douglas H. Flaum
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
Tel: (212) 813-8800
Fax: (212) 355-3333
dflaum@goodwinlaw.com

*Counsel for the Underwriter*
*Defendants*

**TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................................... 1

BACKGROUND .................................................................................................................................. 3

PROCEDURAL HISTORY .................................................................................................................. 6

ARGUMENT ........................................................................................................................................ 9

I.      PLAINTIFF'S CLAIMS ARE TIME-BARRED ................................................................. 10

        A.      Both the Initial and Amended Complaints Were Untimely Because Both
                Were Filed More than One Year After the *Beijing News* Article ......................... 11

        B.      The Amended Complaint Was Also Filed More than One Year After
                English-Language Sources Provided Further Notice of the *Beijing News*
                Article ..................................................................................................................... 15

II.     THE MOTION TO DISMISS ORDER DOES NOT BIND THE COURT ON
        THIS MOTION ..................................................................................................................... 18

CONCLUSION .................................................................................................................................... 22

i

# TABLE OF AUTHORITIES

## CASES

PAGE(S)

*ASARCO LLC v. Goodwin*,
756 F.3d 191 (2d Cir. 2014) ...................................................................................... 17

*Bey v. City of New York*,
2010 WL 3910231 (S.D.N.Y. Sept. 20, 2010) ......................................................... 19

*Biro v. Condé Nast*,
963 F. Supp. 2d 255 (S.D.N.Y. 2013) ...................................................................... 18

*Brigham v. Royal Bank of Can.*,
2009 WL 935684 (S.D.N.Y. Apr. 7, 2009) .............................................................. 21

*Burke v. Nationstar Mortgage LLC*,
2016 WL 4231705 (E.D. Va. Aug. 9, 2016) ............................................................ 18

*City of Almaty, Kazakhstan v. Ablyazov*,
2019 WL 1430155 (S.D.N.Y. Mar. 29, 2019) ......................................................... 19

*City of Pontiac Gen. Emps. Ret. Sys. v. MBIA, Inc.*,
637 F.3d 169 (2d Cir. 2011) ..................................................................................... 10

*Corporacion de Mercadeo Agricola v. Mellon Bank Int'l*,
608 F.2d 43 (2d Cir. 1979) ....................................................................................... 21

*Dilaura v. Power Auth. of State of N.Y.*,
982 F.2d 73 (2d Cir. 1992) ....................................................................................... 21

*Dodds v. Cigna Sec., Inc.*,
12 F.3d 346 (2d Cir. 1993) ......................................................... 3, 10, 11, 19, 20

*Emerson v. Mut. Fund Series Tr.*,
393 F. Supp. 3d 220 (E.D.N.Y. 2019) .......................................................... 10, 15, 19

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
2005 WL 6457182 (S.D.N.Y. Sept. 21, 2005) ......................................................... 21

*Freidus v. Barclays Bank Pub. Ltd. Co.*,
734 F.3d 132 (2d Cir. 2013), *aff'd*, 616 F. App'x 442 (2d Cir. 2015) ............... 10, 13

*Gavin/Solmonese L.L.C. v. D'Arnaud-Taylor*,
68 F. Supp. 3d 530 (S.D.N.Y. 2014) ........................................................................ 17

ii

*Johnson v. Rowley*,
   569 F.3d 40 (2d Cir. 2009) ............................................................................................ 9

*Knox v. Yingli Green Energy Holding Co.*,
   2016 WL 6609210 (C.D. Cal. May 10, 2016) .......................................................... 14

*LC Capital Partners, L.P. v. Frontier Ins. Grp.*,
   318 F.3d 148 (2d Cir. 2003) ................................................................................. 11, 19

*In re Magnum Hunter Res. Corp. Sec. Litig.*,
   26 F. Supp. 3d 278 (S.D.N.Y. 2014), *aff'd*, 616 F. App'x 442 (2d Cir. 2015) ........................... 10

*In re Magnum Hunter Res. Corp. Sec. Litig.*,
   616 F. App'x 442 (2d Cir. 2015) ................................................................................. 10

*Monroe Cty. Emps. Ret. Sys. v. YPF Sociedad Anonima*,
   15 F. Supp. 3d 336 (S.D.N.Y. 2014) .................................................................... 9, 13

*Napoli v. Deluxe Corp.*,
   2019 WL 2579348 (E.D.N.Y. Jun. 21, 2019)............................................................ 18

*Penn. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp.*,
   874 F. Supp. 2d 341 (S.D.N.Y. 2012) ................................................................ 10, 13

*Pension Tr. Fund for Operating Eng'rs v. Mortg. Asset Securitization Transactions, Inc.*,
   730 F.3d 263 (3d Cir. 2013), *aff'd*, 639 F. App'x 664 (2d Cir. 2016) .................................. 17

*Perez-Ruiz v. Crespo-Guillen*,
   25 F.3d 40 (1st Cir. 1994) ........................................................................................... 21

*Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*,
   714 F. Supp. 2d 475 (S.D.N.Y. 2010) ...................................................................... 10

*In re Qudian Secs. Litig.*,
   2019 WL 4735376 (S.D.N.Y. Sept. 27, 2019) ......................................................... 15

*Rudman v. CHC Grp. Ltd.*,
   217 F. Supp. 3d 718 (S.D.N.Y. 2016) ................................................................ 11, 19

*Staehr v. Hartford Fin. Servs. Grp. Inc.*,
   547 F.3d 406 (2d Cir. 2008) ............................................................................. 9, 10, 19

*Velarde v. GW GJ, Inc.*,
   914 F.3d 779 (2d Cir. 2019) ...................................................................................... 4, 9

iii

*Youngers v. Virtus Inv. Partners Inc.*,
   195 F. Supp. 3d 499 (S.D.N.Y. 2016) ................................................................................. 13


STATUTES & RULES

PAGE(S)

15 U.S.C. § 77m ...................................................................................................................... 10

Fed. R. Civ. P. 12................................................................................................................... 18

Defendants Sunlands Technology Group ("Sunlands" or the "Company"), Tongbo Liu, Yipeng Li, Jianhong Yin, Lu Lu, Michael Minhong Yu, and Yang Wang (collectively, the "Sunlands Defendants"), and Goldman Sachs (Asia) L.L.C., Credit Suisse Securities (USA) LLC, and J.P. Morgan Securities LLC (collectively, the "Underwriter Defendants," and together with the Sunlands Defendants, the "Defendants") respectfully submit this memorandum of law in support of their motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

**PRELIMINARY STATEMENT**

This is a federal securities action arising out of the March 2018 initial public offering ("IPO") of Sunlands, an online education services company headquartered and operating in China.  Plaintiff brings claims under Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"), contending that the disclosures in Sunlands' IPO Registration Statement were misleading.  Although Plaintiff's claims are flawed for many reasons—including because there was nothing misleading about Sunlands' Registration Statement—this motion concerns a single, narrow, dispositive issue: that Plaintiff's claims are time-barred as a matter of law and therefore should be dismissed with prejudice.

The pleadings and their exhibits conclusively establish that Plaintiff brought his claims outside of the one-year limitations period applicable to Sections 11 and 15.  That period begins to run when a reasonable investor exercising reasonable diligence should have discovered the facts necessary to state the claim.  In this case, it is clear on the face of the pleadings that all of the relevant facts were publicly known well more than a year before Plaintiff commenced this action.  The gravamen of Plaintiff's claim is that certain statements in Sunlands' Registration Statement were misleading by omission because they did not affirmatively assert that Company employees utilized "aggressive," "deceptive," and "illegal" tactics to attract prospective students

to sign up for Sunlands course offerings.  But the allegations that purport to describe these practices were all drawn nearly verbatim from an investigative news article that was published online in the *Beijing News*—a major, state-sponsored Chinese newspaper—*nearly 14 months before Plaintiff commenced this case* and nearly *18 months* before he filed the amended complaint (Dkt No. 25) (the "Amended Complaint" or "AC").  Indeed, the AC itself cites liberally to that very article as the basis for its allegations.  In addition, the Company publicly addressed the article, a resulting administrative penalty, and ensuing "negative publicity" during its August 2018 earnings call (the transcript of which was posted to Sunlands' Website), and a subsequent August 2018 J.P. Morgan analyst report addressed these events yet again—all still more than a year before the AC was filed.  In short, the pleadings and the exhibits thereto demonstrate that all of the facts on which Plaintiff bases his claims were available to any reasonable investor well more than a year before even the initial complaint was filed, and certainly more than a year before the AC was filed.  Plaintiff's claims, therefore, are time-barred and should be dismissed.

In his response to the Sunlands Defendants' pre-motion letter, Plaintiff claimed that Judge Block's decision on Defendants' pre-answer motion to dismiss (Dkt. No. 41) (the "MTD Order")—issued immediately before the case was reassigned—somehow bars or otherwise requires this Court to deny the instant motion. (Dkt. No. 48 at 2-3.)  That is incorrect.  Even setting aside that the record on this motion is concededly different, it is well established that motions under Rule 12(c) can be brought at any time after the pleadings are closed, and there is no bar to raising an issue that was also raised in a pre-answer motion to dismiss.  And insofar as the MTD Order reached a different result, Defendants respectfully submit that it was clearly erroneous and therefore does not bind this Court.  The MTD Order applied an incorrect standard

2

in "conclud[ing] that it cannot answer the question [of timeliness] as a matter of law on a motion to dismiss." (MTD Order at 5.)  That is not the law.  The Second Circuit has made clear that the applicable question here—whether an investor was on notice of its claims—is analyzed under an "objective" standard, and any "suggestion that the question of constructive notice is an improper subject for resolution as a matter of law is contradicted by a vast number of cases in this circuit resolving these issues at the pleading stage." *Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 350, 352 n.3 (2d Cir. 1993).  Because the pleadings conclusively establish that the AC is time-barred as a matter of law, it should be dismissed now before the Court and the parties expend further resources unnecessarily on this untimely case.

## BACKGROUND

Sunlands is a Chinese online post-secondary and professional education services company.  (AC ¶¶ 3, 19, 37.)  As of December 31, 2017, the majority of the Company's gross billings came from self-taught higher education examination ("STE") programs, which the Chinese government initiated in the 1980s as an alternative to formal higher education through a university or college.  (*Id.*)

Sunlands conducted its IPO of American Depositary Shares ("ADS") in the United States in March 2018.  (*Id.* ¶ 36.)  In connection with the IPO, Sunlands filed a Form F-1 registration statement and prospectus (and subsequent amendments thereto) with the U.S. Securities and Exchange Commission, which were declared effective on March 22, 2018 (collectively, the "Registration Statement").  (*Id.* ¶¶ 35, 36.)  Sunlands ADS now trade on the New York Stock Exchange.  (*Id.* ¶ 19.)  The Underwriter Defendants—all "investment banking houses that specialize in, among other things, underwriting public offerings of securities"—served as underwriters for the IPO.  (*Id.* ¶¶ 30-32, 33(a).)  They assisted Sunlands and its officers and directors in planning the IPO, and performed a due diligence investigation in connection with the

3

IPO.  (*Id.* ¶ 33(c).)  The Underwriter Defendants were advised by Kirkland & Ellis International LLP; Davis Polk & Wardwell LLP represented Sunlands in connection with the IPO.[1]

The Registration Statement contained robust disclosures about Sunlands' business, the environment in which it operates, and the potential risks it faced as of the IPO, including, as pertinent here, the risks of negative publicity and government investigation or enforcement activity with respect to the Company's sales and marketing practices.  For example, the Registration Statement expressly advised that Sunlands' sales and marketing efforts could be deemed to violate Chinese law or constitute fraud.  In particular, it warned investors of the risk of "[f]raud or other misconduct" by Sunlands employees, which could involve "engaging in unauthorized misrepresentation[s] to our potential students . . . during marketing activities," and could, among other things, "result in customer complaints, regulatory and legal liabilities, as well as serious harm to our brand and reputation."  (Ex. E at 31.)

On May 2, 2018—more than a month *after* the IPO but nearly 14 months *before* Plaintiff filed his original complaint (and 18 months before he filed the AC)—the *Beijing News*, a state-sponsored news outlet owned by the Chinese government (AC ¶¶ 6, 9), published a lengthy, detailed, and highly critical article that purported to expose information regarding Sunlands' sales and marketing practices (the "*Beijing News* Article").  (Ex. A.)[2]  Specifically, the 10-page article, which was posted to the *Beijing News* website, provided the alleged account of an "undercover reporter" who applied for and was hired to perform a sales role at Sunlands.  (Ex. A;

---

[1] *See, e.g.*, Registration Statement at Cover Page.  The Registration Statement is attached as Exhibit E to the Declaration of Edmund Polubinski III in support of Defendants' Motion for Judgment on the Pleadings, dated June 24, 2021 (the "Polubinski Declaration").  Because the Registration Statement is "integral" to the AC, the Court may consider it on motion for judgment on the pleadings.  *See, e.g.*, *Velarde v. GW GJ, Inc.*, 914 F.3d 779, 781 n.1 (2d Cir. 2019).  As used herein, "Ex. __" refers to the exhibits attached to the Polubinski Declaration.

[2] The *Beijing News Article*, attached as Exhibit A to the Polubinski Declaration, was also attached as Exhibit A to the Sunlands Defendants' Answer to the AC (Dkt. No. 46) (the "Answer").

AC ¶ 6.)  The undercover reporter claimed in the article that, during his training, he purportedly learned that some Sunlands employees used a variety of "techniques . . . to trick students into buying courses using misrepresentations."  (Ex. A; AC ¶¶ 6-7, 40-49.)  The *Beijing News* Article claimed to have identified purported student recruitment methods involving allegedly misleading tactics, including:

- when prospective students inquired about majors that Sunlands did not offer, telling the prospective students that those majors were "too difficult" and "persua[ding]" them to "change majors" to subjects on which Sunlands could provide courses;

- quoting inflated prices and then offering "fake discounts," supposedly expiring on artificial "deadlines";

- setting "registration deadline[s]" that did not exist;

- assuming "multiple identities," including posing as a "teacher" or "principal" or claiming to be male when speaking to a female prospective student and female when speaking to a male; and

- intentionally creating "difficult[ies]" and "delays" in the refund process.

(Ex. A at 1-2, 4-9; AC ¶¶ 7, 40-49 (relying on the *Beijing News* Article).)

In the ensuing months, the facts alleged in the *Beijing News* Article were the subject of additional publicity.  For example, on July 4, 2018 (still over a year before the AC was filed), the Beijing Administration for Industry and Commerce, Shijingshan Branch, a regulator of Sunlands, issued an administrative penalty decision (the "2018 AIC Decision").  (Ex. B; AC ¶¶ 10, 52-55.)[3] The 2018 AIC Decision relied on the *Beijing News* Article in accusing Sunlands of using "false and misleading terms" to "deceive and mislead consumers," including by citing false registration

---

[3] The 2018 AIC Decision, attached as Exhibit B to the Polubinski Declaration, was also attached as Exhibit B to the Answer.

deadlines and supposedly adverse implications for failing to register—as "reported publicly through newspapers and the Internet." (Ex. B at 1; AC ¶ 52.)

On August 24, 2018—*still* more than a year before Plaintiff filed the AC—Sunlands conducted its public earnings call for the second quarter of 2018 (the "August 2018 Earnings Call"). (Ex. C.)[4] During the question-and-answer session of the August 2018 Earnings Call, Sunlands' CFO and an analyst from Credit Suisse repeatedly referenced the *Beijing News* Article and resulting 2018 AIC Decision. In particular, they discussed the "negative publicity that occurred in May" with respect to Sunlands' "sales approach to students," the "government reactions" thereto—including whether officials were "still checking" the practices of "some sales team[s]"—and the Company's belief that it was in "100% compliance with government regulations" and there were no "*other* . . . violations." (Ex. C. at 6-7 (emphasis added).)

Three days later, J.P. Morgan issued an analyst report on Sunlands (the "August 2018 JPM Report"). (Ex. D.)[5] Recounting "[h]ighlights" from the August 2018 Earnings Call, the August 2018 JPM Report reminded investors that "negative news occurred in May" for Sunlands but noted that the Company had launched "initiatives to address the problems" and was now "compliant with government regulation." (Ex. D at 3.)

## PROCEDURAL HISTORY

Plaintiff filed his original complaint on June 27, 2019. (Dkt. No. 1.) In that pleading, Plaintiff alleged that Sunlands' Registration Statement (i) falsely reported Sunlands' historical student enrollment and gross billing figures and (ii) failed to disclose that the Company's

---

[4] A transcript of the August 2018 Earnings Call, attached as Exhibit C to the Polubinski Declaration, was also attached as Exhibit C to the Answer.

[5] The August 2018 JPM Report, attached as Exhibit D to the Polubinski Declaration, was also attached as Exhibit D to the Answer.

6

"marketing tactics were *not as robust* as described in the Registration Statement." (*Id.* ¶ 29 (emphasis added).) Plaintiff premised this theory entirely on a May 28, 2019 Form 6-K disclosure, which reported Sunlands' Q1 2019 financial results and attributed declines in gross billings and student enrollment in part to "*softer* marketing tactics." (*Id.* ¶ 30 (emphasis added).) Despite alleging that his complaint was based on review of "media and analyst reports about the Company and Company press releases" (*id.* at 1-2) and despite being represented by counsel claiming to be a "pioneer in going after fraudulent Chinese companies" (Ex. F), Plaintiff made no mention of the *Beijing News* Article or the allegations asserted therein.

Following the lead plaintiff appointment process (during which no other investors sought to be appointed lead plaintiff), Plaintiff filed the AC on November 15, 2019. The AC abandons Plaintiff's original theory of liability and asserts what the MTD Order aptly described as the "opposite" theory: that the Registration Statement was allegedly misleading because Sunlands did not disclose that its marketing tactics were too "*aggressive*." (AC ¶¶ 5, 96-119 (emphasis added); MTD Order at 3.) Specifically, the AC alleges, based overwhelmingly on the May 2018 *Beijing News* Article and the July 2018 AIC Decision, that "deceptive and illegal marketing was pervasive at Sunlands," including "using various fake teacher identities to gain the trust of students," "making up false registration deadlines for courses," making "false claim[s]" about temporary price discounts, and steering students away from supposedly "too difficult" courses that Sunlands did not actually offer. (AC ¶¶ 5-7, 9-10, 40-55, 98.) Although the AC also purports to rely on certain confidential witness reports, it makes clear the alleged witnesses merely "confirmed [the] use of misrepresentations" as already "described" in the *Beijing News* Article. (*Id.* ¶¶ 8, 58-83; *see also* MTD Order at 3 (AC uses "accounts of confidential witnesses" to "*corroborate[]*" Chinese media and government reports) (emphasis added).) Likewise, the

7

AC cites an April 10, 2019 report by China Central Television in order to "confirm[]" and "corroborate[]" information already in hand. (AC ¶¶ 84-88.) As with the original complaint, the AC asserts claims under Sections 11 and 15 of the Securities Act.

Defendants moved to dismiss the AC on the grounds that (i) Plaintiff's claims were time-barred, and (ii) the AC failed to plead an actionable misstatement or omission. (Dkt. Nos. 35-1, 37.) On March 31, 2021, Defendants' motion was denied in the MTD Order. With respect to the statute of limitations issue, the MTD Order observed that "the allegations of the [AC] are *clearly drawn* from [the *Beijing News* Article] and its fallout." (MTD Order at 4 (emphasis added).) It also acknowledged both that "reasonable investors in a Chinese company might be expected to keep abreast of their investments in Chinese media" and, at the very least, "that a reasonable investor would likely stay apprised" of developments like the August 2018 Earnings Call and August 2018 JPM Report. (*Id.* at 4-6.) Despite such "valid points," however, and though the pertinent "historical facts [were] not seriously in dispute," the MTD Order explained that the presence of "conflicting arguments lead the Court to conclude that it cannot answer the question as a matter of law on a motion to dismiss." (*Id.* at 5-6; *see id.* at 7 ("Once again, the procedural posture of this case is dispositive.").)[6] The action was reassigned to Your Honor the following day. (*See* Minute Entry, Apr. 1, 2021.)

On May 17, 2021, the Sunlands Defendants and the Underwriter Defendants filed their answers to the AC. Both answers plead as an affirmative defense that Plaintiff's claims are barred because they are untimely. In support, the Sunlands Defendants' Answer included four exhibits: (i) a certified translation of the *Beijing News* Article (Ex. A), (ii) a certified translation

---

[6] The MTD Order also considered the robust warnings in the Registration Statement, but—again citing the "procedural posture" of the case as "dispositive"—declined to conclude at the motion to dismiss stage that the AC had failed to plead an actionable misstatement or omission. (MTD Order at 6-8.) While Defendants respectfully disagree with that portion of the Order too, it is not at issue on this motion.

8

of the 2018 AIC Decision (Ex. B), (iii) the publicly available transcript of the August 2018 Earnings Call (Ex. C), and (iv) the publicly available August 2018 JPM Report (Ex. D).

Two days after filing the Answer, on May 19, 2021, the Sunlands Defendants filed a letter requesting a pre-motion conference in anticipation of the instant motion.  (Dkt. 47.) Plaintiff submitted a letter in opposition on May 26, 2021 (Dkt. 48), and the Sunlands Defendants filed a one-page reply on June 1, 2021, addressing certain procedural points raised in Plaintiff's letter (Dkt. No. 49).  In a minute order dated June 10, 2021, the Court authorized Defendants to file the instant motion.  (Minute Entry, June 10, 2021.)

## ARGUMENT

A motion for judgment on the pleadings under Rule 12(c) is governed by the same standard as a motion to dismiss under Rule 12(b)(6): A court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in [plaintiff's] favor.  To survive a Rule 12(c) motion, [plaintiff's] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Johnson v. Rowley*, 569 F.3d 40, 43-44 (2d Cir. 2009) (internal quotation marks and citations omitted).  In deciding a Rule 12(c) motion, a court may consider, "[i]n addition to the facts alleged in the complaint . . . the defendants' answer, any written documents attached to the complaint or the answer, any document that is incorporated by reference into the complaint, any document that is 'integral' to the complaint, and any matter of which the court may take judicial notice."  *Velarde*, 914 F.3d at 781.[7]

---

[7] Independently, a court may also take judicial notice of news articles and reports for the fact of their publication when analyzing timeliness issues.  *See, e.g.*, *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008); *Monroe Cty. Emps.' Ret. Sys. v. YPF Sociedad Anonima*, 15 F. Supp. 3d 336, 348 (S.D.N.Y. 2014).

9

## I.   PLAINTIFF'S CLAIMS ARE TIME-BARRED

A plaintiff must assert a Section 11 claim "within one year after the discovery of the untrue statement or omission, or after such discovery should have been made by the exercise of reasonable diligence."  15 U.S.C. § 77m.  The one-year limitations period starts to run when "a reasonable investor conducting such a timely investigation would have uncovered the facts constituting a violation."  *Emerson v. Mut. Fund Series Tr.*, 393 F. Supp. 3d 220, 240 (E.D.N.Y. 2019) (quoting *City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 174 (2d Cir. 2011)).  Section 15 claims derive from Section 11 violations and are therefore "subject to the same time limitation."  *Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 714 F. Supp. 2d 475, 479 n.3 (S.D.N.Y. 2010).

A Section 11 plaintiff need not be on notice of all the misconduct alleged in the complaint for the statute of limitations to begin running; instead, a plaintiff needs notice only of those issues that are "central to its complaint."  *See Penn. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp.*, 874 F. Supp. 2d 341, 368 (S.D.N.Y. 2012).  As courts in the Second Circuit have explained, "[t]he statute of limitations for Securities Act claims is not somehow tolled until the appearance of disclosures that perfectly match the allegations that a plaintiff chooses to include in its complaint."  *In re Magnum Hunter Res. Corp. Sec. Litig.*, 26 F. Supp. 3d 278, 302 (S.D.N.Y. 2014) (citing *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 139 (2d Cir. 2013)), *aff'd*, 616 F. App'x 442 (2d Cir. 2015); *see also In re Magnum Hunter Res. Corp. Sec. Litig.*, 616 F. App'x 442, 447 (2d Cir. 2015) ("We have never permitted the statute of limitations to be tolled until a company's disclosures touch on every specific allegation that a plaintiff chooses to put in his complaint."); *Staehr*, 547 F.3d at 427 ("An investor does not have to have notice of the entire fraud being perpetrated to be on inquiry notice." (quoting *Dodds*, 12 F.3d at 352)).

10

"While a statute of limitations defense in a securities case sometimes turns on disputed facts, the 'facts on the face of the complaint and related documents' are sufficiently conclusive in 'a vast number of cases' to permit resolution" at the pleading stage. *Rudman v. CHC Grp. LTD.*, 217 F. Supp. 3d 718, 723 (S.D.N.Y. 2016) (quoting *LC Capital Partners, LP v. Frontier Ins. Grp., Inc.*, 318 F.3d 148, 156 (2d Cir. 2003)).  Indeed, any "suggestion that the question of constructive notice is an improper subject for resolution as a matter of law is contradicted by a vast number of cases in this circuit resolving these issues at the pleading stage." *Dodds*, 12 F.3d at 352 n.3 (2d Cir. 1993).

A.    **Both the Initial and Amended Complaints Were Untimely Because Both Were Filed More than One Year After the *Beijing News* Article**

The pleadings make clear that Plaintiff was on notice of all of the central allegations of his claims by May 2, 2018, when the undisputed source of those allegations, the *Beijing News* Article, was published online.

The crux of Plaintiffs' claims in the AC is that the Registration Statement misled investors by making various statements about Sunlands' marketing efforts, tuition installment plan and refund policies, and rapid growth, while failing to disclose the "improper sales techniques and misstatements to students" supposedly identified in the AC.  (*See* AC ¶ 11.)  As demonstrated in the chart below, those allegations were drawn almost entirely from the May 2, 2018 *Beijing News* Article, which was published online nearly 14 months before the initial complaint and over 18 months before the AC.

| Alleged Omissions in Amended Complaint | Source of Allegation |
|---|---|
| Sunlands' sales personnel impersonated teachers and used fake identities (AC ¶¶ 7, 41, 45, 63) | *Beijing News* Article (AC ¶¶ 7, 41, 45, 63; Ex. A at 3-5) |

11

| | |
|---|---|
| Sunlands instructed sales personnel to pose as a woman when talking to a man and vice versa (AC ¶ 46) | *Beijing News* Article (AC ¶ 46; Ex. A at 5) |
| Instead of admitting that it lacked certain courses, Sunlands instructed sales personnel to portray the student's chosen course as too difficult and suggest a course that Sunlands did offer instead (AC ¶¶ 7, 47, 62, 63) | *Beijing News* Article (AC ¶¶ 7, 47; Ex. A at 6) |
| Sunlands' sales personnel claimed that course prices were discounted for only one day (AC ¶¶ 7, 48, 60, 68, 71) | *Beijing News* Article (AC ¶¶ 7, 48; Ex. A at 7) |
| Sunlands' sales personnel made up false registration deadlines (AC ¶ 7, 48, 49) | *Beijing News* Article (AC ¶¶ 7, 48, 49; Ex. A at 3-7) |
| Sunlands' sales personnel claimed that examinations would be more difficult if the students registered later (AC ¶¶ 7, 48, 64, 68, 71) | *Beijing News* Article (AC ¶¶ 7, 48; Ex. A) |
| Sunlands' sales personnel instructed students that if they signed up they would be exempt from certain exams even though there was no exemption (AC ¶¶ 49, 64, 68, 71) | *Beijing News* Article (AC ¶ 49; Ex. A at 2) |
| Sunlands' sales personnel instructed students they could be granted "student" status even though Sunlands could not add the status (AC ¶¶ 49, 59, 61, 67, 72) | *Beijing News* Article (AC ¶ 49; Ex. A at 2) |
| Sunlands made it difficult for customers to get refunds (AC ¶ 43, 80, 81, 82) | *Beijing News* Article (AC ¶ 43; Ex. A at 3, 9) |

As the AC makes clear, these are the very "deceptive and illegal" marketing practices that Plaintiff contends were omitted from the Registration Statement. (*See* AC ¶¶ 98, 100, 102, 104, 106, 111, 113, 119.) Because they were publicly reported in the *Beijing News* Article, Plaintiff was on notice of his claims more than a year before he filed this case and well more

12

than a year before he first asserted the claims in the AC.[8]  *See, e.g.*, *Youngers v. Virtus Inv. Partners Inc.*, 195 F. Supp. 3d 499, 521 (S.D.N.Y. 2016) (dismissing Section 11 claims as untimely because a news "article clearly describe[d] the allegedly misrepresented facts undergirding the Complaint"); *Monroe Cty.*, 15 F. Supp. 3d at 351-53 (securities claims time-barred where "media reports" alerted public to purportedly concealed risks and trends); *see also Freidus*, 734 F.3d at 138 ("[Defendants'] corrective disclosures provided precisely the information [defendants] should have disclosed earlier such that Lead Plaintiffs should have *discovered* their alleged claims on the dates of those disclosures." (internal quotation marks omitted)).  In addition to the *Beijing News* Article, the AC also cites the 2018 AIC Decision (Ex. B; AC ¶¶ 50-55), which further put Plaintiff on notice of his claims because the decision was, on its face, based on the May 2018 *Beijing News* Article.  (*See* Ex. B at 1 (stating that 2018 AIC Decision was based on information that was revealed by "reporters of the Beijing News and reported publicly via newspapers and the Internet"); AC ¶ 52 (same).)  The 2018 AIC Decision was, like the *Beijing News* Article itself, published well over a year before the AC was filed.

The fact that the AC cites to a handful of other sources to purportedly support its allegations is not relevant.  As the above chart demonstrates (and the MTD Order concluded), the May 2018 *Beijing News* Article is the source of virtually all of Plaintiff's allegations and is therefore "central to its complaint."  *See Penn. Pub.*, 874 F. Supp. 2d at 368; (MTD Order at 4).  The subsequent disclosures were not necessary to put Plaintiff on notice of his claims.  Indeed, the confidential witness statements (*see* AC ¶¶ 58-83), according to Plaintiff himself, only

---

[8] Because the *Beijing News* Article was published over one year before even the initial complaint was filed, the Court need not consider whether the AC relates back.  In any event, though, given that the AC proceeds on a wholly different—indeed the opposite—theory from that asserted in the initial complaint, it plainly does not relate back; for that reason, the filing date of the AC is the relevant date for statute of limitations purposes.  (*See infra* at 17-18.)

13

"confirmed" the marketing tactics that were alleged in the *Beijing News* Article. (*Id.* ¶ 8.)[9] Likewise, the April 2019 China Central Television report that Plaintiff identifies (*id.* ¶¶ 84-88) only "corroborated the statements by the Confidential Witnesses" (*id.* ¶ 84).[10]

Nor is the fact that the *Beijing News* Article and 2018 AIC Decision were published in Chinese relevant to the timeliness analysis, given that reasonable investors in Chinese companies would be expected to follow coverage of those companies in Chinese media. (*Cf.* MTD Order at 5 ("[R]easonable investors in a Chinese company might be expected to keep abreast of their investment in Chinese media.").) Indeed, that is perhaps *the most natural source* of information about the Company's financial performance. And a large, state-sponsored newspaper in China's capital (where Sunlands is headquartered), such as the *Beijing News*, is exactly the type of publication that one would expect a reasonably diligent investor to consider. The fact that the *Beijing News* is published in Chinese would be no obstacle, given the ready availability of free and easy tools like Google Translate—which merely require a user to hit a button to obtain near-instantaneous translations.

The only case to have addressed this issue in the same context correctly reached the same conclusion. In *Knox v. Yingli Green Energy Holding Co.*, 2016 WL 6609210 (C.D. Cal. May 10, 2016), the court dismissed a complaint as untimely at the pleading stage where Chinese-language

---

[9] For instance, the confidential witnesses allegedly stated that Sunlands' sales personnel "lied about how easy it was to pass STE exams" and "falsely promised potential clients that they would be exempt from certain STE exams if they registered early and/or that the exams would be more difficult if the student registered later." (AC ¶¶ 63-64.) These allegations are nearly identical to those in the May 2, 2018 *Beijing News* Article. (*See id*. ¶ 47 (alleging that salespeople "portray[ed] every major that Sunlands offered 'as a simple and easy-to-test major' that was valuable for employment"); *id.* ¶ 48 (claiming that Sunlands' training materials encourage salespeople to "[f]alsely claim[] that examinations the students had to pass would be more difficult if they registered later").)

[10] The AC also refers to a May 16, 2019 Beijing AIC administrative penalty decision that allegedly found that Sunlands violated China's false advertising law in connection with an advertisement published on internet browsers and mobile phones. (AC ¶¶ 56-57.) That decision is irrelevant to Plaintiff's claim, which is based on alleged tactics used by Sunlands' marketing personnel during sales calls (*see id.* ¶ 5), not the Company's media-based advertising.

14

articles and financial analyst reports put the plaintiff on notice of his claims for purposes of the statute of limitations.  The court determined, *as a matter of law*, that "the fact that the articles were published in Chinese does not justify any significant delay in discovery" because, "*[i]n this day in age, reasonably sophisticated analysts and investors following a China-based company should have the means with which to locate and analyze Chinese-language news articles just as quickly as it could with English-language news articles*."  *Id.* at *7 (emphasis added).[11]

In any event, it is especially likely that a reasonable Sunlands investor would have found the *Beijing News* Article because the English-language Registration Statement *itself* warned of past "negative publicity" regarding the Company.  In particular, the Registration Statement disclosed that Sunlands had "been exposed to negative publicity concerning refund dispute[s] and administrative penalt[ies] and alleged improper or misleading statement[s] made in our sales and marketing activities" and cautioned that it could be exposed to similar negative publicity in the future.  (AC ¶ 105; Ex. E at 20.)  The Registration Statement's specific reference to potential future negative publicity would cause a reasonable investor to monitor Chinese news for just such "negative publicity."  *Cf. Emerson*, 393 F. Supp. 3d at 240 ("Generally, courts find plaintiffs on inquiry notice when the offering documents disclose the risks forming the basis of the underlying fraud claim.").

## B.  The Amended Complaint Was Also Filed More than One Year After English-Language Sources Provided Further Notice of the *Beijing News* Article

The AC was also filed more than one year after English-language disclosures referencing the *Beijing News* Article and the matters it discussed.

---

[11] Similarly, courts assessing materiality have found that articles published in Chinese were "in the mix of public information" available to investors.  *In re Qudian Inc. Sec. Litig.*, 2019 WL 4735376, *6 (S.D.N.Y. Sept. 27, 2019).

As the pleadings and documents attached thereto make clear, *Sunlands itself* affirmatively pointed investors to the May 2018 *Beijing News* Article within just a few months of its publication.  During the August 2018 Earnings Call—an English transcript of which was posted on Sunlands' English-language website—Sunlands' CFO (Defendant Li) answered several questions about "negative publicity" surrounding the Company's sales and marketing practices:

> [ANALYST]: So my first question is about your operational changes. *After the negative publicity and government reactions you made*, what are the key changes that you made and what are the feedbacks from the students and the government? . . .

> STEVEN YIPENG LI: Okay. *Regarding the first question, the negative publicity that occurred in May*, that was actually -- there were a couple of reasons why we started to take those new initiatives in order to provide better user experience to our students, like free trial classes, *like a [less] assertive sales approach to students*. So as we mentioned earlier, *those new initiatives will show effects over time, but in the short term,* that may impact our gross billings and conversion rate, but based on the feedback we have gathered so far, the response from the free trial classes are very positive. . . .

> ANALYST: May I have one follow-up? That is about what are the government responses to Sunlands' reactions and new initiatives? *Are they still checking the malpractices of some sales team*, or they are already satisfied with the current regulation?

> STEVEN YIPENG LI: Yes, we have already -- right now, we are in 100% compliance with the government regulations. So all those new initiatives are -- the initiative taken by the Company, so that we can provide better user experience for the students, not because of the government. Now there is no -- *any other government regulation violations*.

(Ex. C at 6-7 (emphasis added).)

Similarly, the first page of the English-language August 2018 JPM Report issued three days later reinforced to investors that Sunlands had experienced "negative publicity regarding the high proportion of students using loans to finance tutorial classes and the company's restrictive returns policy."  (Ex. D at 1.)  The same report "[h]ighlight[ed]" that during the August 2018 Earnings Call, "Management mentioned that after the negative news in May, the company has

16

launched many initiatives to address the problems and now is compliant with government regulation." (*Id.* at 3.)

Therefore, in addition to the earlier Chinese-language news, this further, widely-available English-language information would have caused a reasonably diligent investor (or his or her counsel) to conduct the minimal investigation required to find the *Beijing News* article and the 2018 AIC Decision well more than a year before the filing of the AC. *See, e.g.*, *Gavin/Solmonese LLC v. D'Arnaud-Taylor*, 68 F. Supp. 3d 530, 536 (S.D.N.Y. 2014) ("[A] reasonably diligent plaintiff would undertake an investigation based on . . . 'news articles and analyst's reports,' and 'prospectuses, quarterly reports, and other information related to their investments.'" (quoting *Pension Tr. Fund for Operating Eng'rs v. Mortg. Asset Securitization Transactions, Inc.*, 730 F.3d 263, 276-77 (3d Cir. 2013))), *aff'd*, 639 F. App'x 664 (2d Cir. 2016).

Nor can there be any question that a reasonably diligent investor would have found the *Beijing News* Article, given that Plaintiff and his counsel (which bills itself as "a pioneer in going after fraudulent Chinese companies" (Ex. F)) clearly had no trouble finding it in connection with filing the AC. Notably, Plaintiff did not dispute as much in opposing Defendants' Rule 12(b)(6) motion.

Finally, Plaintiff cannot avoid dismissal by arguing that the AC relates back to the initial complaint. Most basically, the *Beijing News* Article preceded even the original complaint by more than a year. Even putting that aside, however, the allegations of the original pleading nowhere gave Defendants "adequate notice of the matters raised in the amended pleading," as would be required for the AC to relate back. *ASARCO LLC v. Goodwin*, 756 F.3d 191, 202 (2d Cir. 2014) (internal quotation marks omitted) (alteration omitted). As discussed above, the AC

17

asserts an *entirely different* theory based on an *entirely new* set of factual allegations.  Nothing in the initial complaint so much as mentioned "deceptive or illegal" marketing practices, much less put Defendants on notice of Plaintiff's eventual new claims.  Indeed, as the MTD Order noted, the AC advanced the "opposite" theory as the initial complaint.  (MTD Order at 3.)  Strikingly, of the 61 paragraphs in the "Substantive Allegations" section of the AC, all but five are entirely absent from the original pleading.  (*Compare* AC ¶¶ 35-95, *with* ECF No. 1 ¶¶ 23-32.)

## II.  THE MOTION TO DISMISS ORDER DOES NOT BIND THE COURT ON THIS MOTION

Although the MTD Order declined to dismiss this action on timeliness grounds, the earlier decision does not bind the Court on this motion.

As an initial matter, the record before this Court on the instant motion is different from the record on the motion to dismiss; all documents required to conclude that Plaintiff's claims are legally time-barred are attached to the Answer and therefore before the Court for its consideration as part of the pleading record.  *See, e.g.*, *Napoli v. Deluxe Corp.*, 17-cv-6957, 2019 WL 2579348, at *3-6 (E.D.N.Y. Jun. 21, 2019) (granting Rule 12(c) motion on the basis of documents attached to answer); *Burke v. Nationstar Mortgage LLC*, 14-cv-837, 2016 WL 4231705, *5-7 (E.D. Va. Aug. 9, 2016) (same).

In any case, it is clear that defendants are "permitted by Rule 12(h)(2) to bring successive motions challenging the sufficiency of a claim, the first under 12(b)(6) and the second, after the Answer has been filed, under Rule 12(c)."  *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 266 n.2 (S.D.N.Y. 2013) (collecting authorities).  And the latter may be brought any time "[a]fter the pleadings are closed," so long as it is "early enough not to delay trial."  Fed. R. Civ. P. 12(c).[12]

---

[12] *See, e.g.*, *City of Almaty, Kazakhstan v. Ablyazov*, 2019 WL 1430155 at *3 (S.D.N.Y. Mar. 29, 2019) (Rule 12(c) motion timely even if proponent could have moved "years earlier than it did" (quotation marks omitted)); *Bey* (….continued)

Here, the Sunlands Defendants filed their request for a pre-motion conference just two days after filing their Answer.

In all events, the MTD Order is clearly erroneous because it is inconsistent with Second Circuit law.  The Court of Appeals has repeatedly found that securities claims can *and should* be dismissed at the pleading stage where, as here, the facts providing notice of the claim are evident from the face of the pleadings and other documents the court may consider.  *See, e.g.*, *LC Capital Partners, LP*, 318 F.3d at 156 ("Where the facts needed for determination of when a reasonable investor of ordinary intelligence would have been aware of the existence of fraud can be gleaned from the complaint and papers integral to the complaint, resolution of the issue on a motion to dismiss is appropriate and we have done so in a vast number of cases." (internal quotation marks omitted) (alterations omitted)); *Dodds*, 12 F.3d at 352 n.3 ("[A]ppellant's suggestion that the question of constructive notice is an improper subject for resolution as a matter of law is contradicted by a vast number of cases in this circuit resolving these issues at the pleading stage."); *Emerson*, 393 F. Supp. 3d at 240-41 ("[T]he Second Circuit has also stated that courts can readily resolve the issue of inquiry notice as a matter of law on a motion to dismiss—as has been done in a vast number of cases in this circuit—where the facts needed for determination of when a reasonable investor of ordinary intelligence would have been aware of the existence of fraud can be gleaned from the complaint and papers integral to the complaint." (quoting *Staehr*, 547 F.3d at 427) (internal quotation marks omitted) (alterations omitted)); *Rudman*, 217 F. Supp. 3d at 723 ("While a statute of limitations defense in a securities case sometimes turns on disputed facts, the 'facts on the face of the complaint and related documents' are sufficiently

<hr />

(continued….)

*v. City of New York*, 2010 WL 3910231, at *3 (S.D.N.Y. Sept. 21, 2010) (Rule 12(c) motion "not untimely" because "the Court ha[d] not yet fixed a date for trial").

conclusive in 'a vast number of cases' to permit resolution on a motion to dismiss." (internal quotation marks omitted)).

The MTD Order erred in its application of this clear and controlling case law.  Although the MTD Order found that (i) "the allegations of the amended complaint are clearly drawn from the Beijing News article and its fallout"; (ii) "reasonable investors in a Chinese company might be expected to keep abreast of their investment in Chinese media"; (iii) "a reasonable investor would likely stay appraised of" the August 2018 Earnings Call and August 2018 JPM Report; and (iv) "the historical facts are not seriously in dispute" (MTD Order at 4-6), it nevertheless found that it could *not* answer the question of whether Plaintiff was on notice of his claims "as a matter of law on a motion to dismiss" (*id.* at 5; *see also id.* at 8 ("*Once again*, the procedural posture of this case is dispositive." (emphasis added))).

That is directly in conflict with the Second Circuit's command.  Where, as here, the pertinent facts are "not seriously in dispute," questions of notice and timeliness are entirely objective and legal in nature: They turn on *constructive* knowledge and on what a reasonable investor *should* have learned or known.  *Dodds*, 12 F.3d at 350 ("[T]he standard is an objective one.").  They do not require judgments on subjective questions (such as what any particular investor *actually* knew) or potentially complex, fact-bound matters (such as whether a reasonable investor would have found an article to be substantively important).  Rather, if a court finds that sufficient information was in the public domain for a securities claim to be pled, it can and should dismiss the complaint as untimely.  That is indisputably the case here—as is evident from the face of the pleadings.  There is nothing further for a finder of fact to do.

The law of the case doctrine does not warrant a different conclusion.  As the Second Circuit has made clear, courts are not bound by prior orders "if it appears that the court's original

20

ruling was erroneous," as was the case here. *DiLaura v. Power Auth. of State of N.Y.*, 982 F.2d 73, 77 (2d Cir. 1992) (internal quotation marks omitted). Indeed, a district court "*always* has the power to change a ruling" when "further reflection" permits "a better informed" decision. *Corporacion de Mercadeo Agricola v. Mellon Bank Int'l*, 608 F.2d 43, 48 (2d Cir. 1979) (emphasis added); *see also Perez-Ruiz v. Crespo-Guillen*, 25 F.3d 40, 42 (1st Cir. 1994) (dismissal on timeliness grounds not precluded by prior denial of Rule 12(b) motion because such denials "remain open to trial court reconsideration" and "subject to change at any time" until "entry of final judgment" (internal quotation marks omitted)). As explained above, there is no doubt that the MTD Order was erroneous here; the Court should issue a correct decision on this new motion, with the assistance of an even more robust record.

Moreover, rigid adherence to the erroneous MTD Order would work a manifest injustice on Defendants by forcing them to incur the massive expense associated with discovery and litigation of an obviously untimely securities claim. Congress has repeatedly recognized that "securities class actions" are highly vulnerable to the risk that "the cost of discovery . . . forces innocent parties to settle frivolous [suits]." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2005 WL 6457182, at *2 (S.D.N.Y. Sept. 21, 2005) (internal quotation marks and citations omitted); *see also Brigham v. Royal Bank of Canada*, 2009 WL 935684, at *2 (S.D.N.Y. Apr. 7, 2009) (Congress enacted PSLRA with goal of "preventing plaintiffs from filing frivolous securities class actions in the hope that the defendant will settle the action"); *see also Pepper v. U.S.*, 562 U.S. 476, 506-07 (2011) (explaining law of the case doctrine does not apply where prior decision "would work a manifest injustice"). Granting this motion would end this untimely litigation before the Court and the parties needlessly devote more time and resources to it.

21

## **CONCLUSION**

For the reasons set forth above, Defendants respectfully request that the Court grant

Defendants' motion for judgment on the pleadings and dismiss the AC with prejudice.


Dated:  June 24, 2020
        New York, NY

Respectfully Submitted,

DAVIS POLK & WARDWELL LLP


 */s/ Edmund Polubinski III*
Edmund Polubinski III
Craig J. Bergman
Nikolaus Williams
450 Lexington Avenue
New York, NY 10017
Tel: (212) 450-4695
Fax: (212) 701-5800
edmund.polubinski@davispolk.com
craig.bergman@davispolk.com
nikolaus.williams@davispolk.com

Jonathan K. Chang
18/F, The Hong Kong Club Building
3A Chater Road, Hong Kong SAR
Tel: +852-2533-1028
Fax: +852-2533-4358
jonathan.chang@davispolk.com

*Counsel for the Sunlands Defendants*


*/s/ Douglas H. Flaum*
Douglas H. Flaum
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
Tel.: (212) 813-8800
Fax: (212) 355-3333
dflaum@goodwinlaw.com

*Counsel for the Underwriter Defendants*


22