**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| DAVID HOROWITZ, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>SUNLANDS TECHNOLOGY GROUP, TONGBO LIU, YIPENG LI, JIANHONG YIN A/K/A PENG OU, LU LU, MICHAEL MINHONG YU, YANG WANG, GAONENG JI, SAM HANHUI SUN, XIAOCHUAN WANG, GOLDMAN SACHS (ASIA) L.L.C., CREDIT SUISSE SECURITIES (USA) LLC, AND J.P. MORGAN SECURITIES LLC,<br><br>    Defendants. | No. 1:19-CV-03744-LDH-RML<br><br>**ORAL ARGUMENT REQUESTED**<br><br> Served on July 15, 2021 |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim
Brian B. Alexander
Jing Chen
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
        balexaner@rosenlegal.com
        jchen@rosenlegal.com

*Counsel for Plaintiff and the Class*

## Table of Contents

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND .................................................................................................................. 3

    A.    Sunlands' IPO on the New York Stock Exchange......................................................... 3

    B.    At the Time of its IPO, Deceptive and Illegal Marketing Was Pervasive at Sunlands and the Company Trained its Employees to Engage in It. ............................ 4

    C.    There is no Indication that the Market for Sunlands ADSs was Aware of the Beijing News Article.................................................................................................... 7

PROCEDURAL HISTORY................................................................................................... 8

    A.    The Initial and Amended Complaints Pursue the Same Legal Theory for the Same Factual Reasons.................................................................................................. 8

    B.    Judge Block's Denial of Defendants' Rule 12(b)(6) Motion to Dismiss...................... 9

    C.    Defendants' Motion for Judgment on the Pleadings Makes the Same Argument as Defendants' Motion to Dismiss Based on the Same Evidence. ............ 12

ARGUMENT .................................................................................................................... 12

    I.    DEFENDANTS HAVE NOT SHOWN THAT PLAINTIFF'S CLAIMS ARE TIME BARRED................................................................................................... 12

    A.    The Motion For Reconsideration and Law of the Case Standards Apply Here............................................................................................................................. 12

    B.    The MTD Order Applied the Correct Statue of Limitations Standard. ..................... 15

    C.    This Action is Not Time Barred Due to the Beijing News Article............................. 17

    D.    This Action is Not Time Barred Based on the AIC Decision, August 2018 Earnings Call, and the August 2018 JPM Report. ...................................................... 21

        1.    Those Documents Did Not Trigger the Statute of Limitations.................................. 22

        2.    The Amended Complaint Relates Back to the Initial Complaint. .............................. 23

    E.    It is Not in the Interests of Justice for the Court to Dismiss This Case on Statute of Limitations Grounds................................................................................... 24

CONCLUSION.................................................................................................................. 25

# Table of Authorities

**Pages**

**Cases**

*ASARCO LLC v. Goodwin*,
  756 F.3d 191 (2d Cir. 2014)..................................................................................................... 24

*Aviles v. S&P Glob., Inc.*,
  No. 17-CV-2987 (JPO), 2020 WL 1689405 (S.D.N.Y. Apr. 6, 2020) ..................................... 13

*Caro v. Weintraub*,
  618 F.3d 94 (2d Cir. 2010)....................................................................................................... 11

*Christianson v. Colt Indus. Operating Corp.*,
  486 U.S. 800 (1988).................................................................................................................. 14

*City of Pontiac Gen. Employees' Ret. Fund v. MBIA, Inc.*,
  637 F.3d 169 (2d Cir. 2011)................................................................................................ 10, 15

*Dartell v. Tibet Pharms., Inc.*,
  No. CV 14-3620, 2016 WL 718150 (D.N.J. Feb. 22, 2016)..................................................... 21

*Dodds v. Cigna Sec., Inc.*,
  12 F.3d 346 (2d Cir. 1993)....................................................................................................... 17

*DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*,
  323 F. Supp. 3d 393 (S.D.N.Y. 2018)......................................................................... 16, 22, 23

*Egelston v. State University College*,
  535 F.2d 752 (2d Cir.1976)...................................................................................................... 15

*Emerson v. Mut. Fund Series Tr.*,
  393 F. Supp. 3d 220 (E.D.N.Y. 2019) ............................................................................... 17, 21

*Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*,
  873 F.3d 85 (2d Cir. 2017)................................................................................................. 15, 16

*Feit v. Leasco Data Processing Equip. Corp.*,
  332 F. Supp. 544 (E.D.N.Y. 1971) .......................................................................................... 25

*Freidus v. Barclays Bank PLC*,
  734 F.3d 132 (2d Cir. 2013)..................................................................................................... 19

*Gavin/Solmonese LLC v. D'Arnaud Taylor*,
  68 F. Supp. 3d 530 (S.D.N.Y. 2014).................................................................................. 11, 23

ii

*Hatteras Enterprises Inc v. Forsythe Cosm. Grp., Ltd*,
No. 15CV5887ADSARL, 2016 WL 4083386 (E.D.N.Y. July 30, 2016) ............................... 14

*Hayden v. Paterson*,
594 F.3d 150 (2d Cir. 2010) ................................................................................................ 12

*In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*,
No. CV 11-2768 PSG (SSX), 2012 WL 12893520 (C.D. Cal. Feb. 16, 2012) ....................... 19

*In re China Mobile Games & Ent. Grp., Ltd Sec. Litig.*,
2016 WL 922711 (S.D.N.Y. Mar. 7, 2016) ........................................................................... 19

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
No. 13 CIV. 7789 (LGS), 2016 WL 5108131 (S.D.N.Y. Sept. 20, 2016) ............................... 22

*In re Fuwei Films Sec. Litig.*,
634 F. Supp. 2d 419 (S.D.N.Y. 2009) ................................................................................... 19

*In re Qudian Inc. Sec. Litig.*,
No. 17-CV-9741 (JMF), 2019 WL 4735376 (S.D.N.Y. Sept. 27, 2019) ............................... 20

*In re Refco, Inc. Sec. Litig.*,
503 F. Supp. 2d 611 (S.D.N.Y. 2007) ................................................................................... 25

*In re SunEdison, Inc. Sec. Litig.*,
300 F. Supp. 3d 444 (S.D.N.Y. 2018) ................................................................................... 20

*Johnson v. Holder*,
564 F.3d 95 (2d Cir. 2009) ................................................................................................... 14

*Knights v. Legere*,
No. 16-CV-6965 (LDH), 2017 WL 11487172 (E.D.N.Y. Sept. 6, 2017) ............................... 14

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
No. 215CV04003ODWMRWX, 2016 WL 6609210 (C.D. Cal. May 10, 2016) .............. 19, 20

*LC Cap. Partners, LP v. Frontier Ins. Grp., Inc.*,
318 F.3d 148 (2d Cir. 2003) ................................................................................................. 17

*Longo v. OSI Sys., Inc.*,
No. CV 17-8841 FMO (SKX), 2021 WL 1232678 (C.D. Cal. Mar. 31, 2021) ....................... 18

*Merck & Co., Inc. v. Reynolds*,
559 U.S. 633 (2010) ............................................................................................................. 15

*Monroe Cty. Employees' Ret. Sys. v. YPF Sociedad Anonima*,
15 F. Supp. 3d 336 (S.D.N.Y. 2014) ..................................................................................... 19

iii

*MTR Gaming Grp., Inc. v. Arneault,*
No. 1:11-CV-208-SPB, 2015 WL 136563 (W.D. Pa. Jan. 9, 2015) ......................................... 13

*Newman v. Warnaco Grp., Inc.,*
335 F.3d 187 (2d Cir. 2003) .................................................................................................... 21

*Rudman v. CHC Grp. LTD.,*
217 F. Supp. 3d 718 (S.D.N.Y. 2016) ..................................................................................... 17

*SEC v. Capital Gains Research Bureau,*
375 U.S. 180 (1963) ................................................................................................................. 25

*Slayton v. Am. Exp. Co.,*
460 F.3d 215 (2d Cir. 2006) ............................................................................................... 23, 24

*Staehr v. Hartford Fin. Servs. Grp., Inc.,*
547 F.3d 406 (2d Cir. 2008) ............................................................................................... 17, 18

*United States ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency,*
No. 1:07-CV-00960, 2017 WL 1758074 (E.D. Va. May 3, 2017) ........................................... 13

*United States v. Quintieri,*
306 F.3d 1217 (2d Cir. 2002) .................................................................................................. 14

*Varrone v. Bilotti,*
851 F. Supp. 54 (E.D.N.Y. 1993) ............................................................................................ 15

*Yi Xiang v. Inovalon Holdings, Inc.,*
254 F. Supp. 3d 635 (S.D.N.Y. 2017) ................................................................................ 11, 15

*Youngers v. Virtus Inv. Partners Inc.,*
195 F. Supp. 3d 499 (S.D.N.Y. 2016) ..................................................................................... 19

**Statutes**

15 U.S.C. § 77m ......................................................................................................................... 9

**Rules**

Fed. R. Civ. P. 12(c) ......................................................................................................... 1, 13, 15

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... passim

**Regulations**

17 C.F.R. § 230.403 .................................................................................................................. 17

iv

Lead Plaintiff David Horowitz ("Plaintiff") respectfully submits this Memorandum of Law in opposition to Defendants' Motion for Judgment on the Pleadings.

## PRELIMINARY STATEMENT

Sunlands Technology Group ("Sunlands" or the "Company") is headquartered in and provides online post-secondary education classes in China.  In its Registration Statement for its IPO, Sunlands portrayed itself as rapidly growing due to its unique ability to understand the needs of students and the quality of its courses and faculty. Not surprisingly, Sunlands had no trouble raising approximately $150 million in its IPO from the sale of 13 million shares at $11.50/share on the New York Stock Exchange ("NYSE"). Its Registration Statement was, however, materially inaccurate. It failed to disclose that the Company's success was predicated on the sanctioned and aggressive use of illegal misrepresentations to trick students into signing up for courses. Sunlands investors have paid a steep price — when Plaintiff commenced this action, Sunlands' shares had lost over 80% of their value, trading around $2.28/share.

On March 31, 2021, the day before this case was reassigned to Your Honor, Judge Block denied Defendants' Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion, including their argument that the case is time-barred. (Dkt. No. 41 ("MTD Order").) The MTD Order was decided under the same legal standard and a virtually identical record to the Rule 12(c) motion before the Court now. Defendants' claim that the record is different is false — they do not, and cannot, point to a single fact that was not available to them on their 12(b)(6) motion. Instead, Defendants clearly hope that the reassignment of the case to a new judge will get them a different decision on the same motion. Since there is nothing new here, the stringent motion for reconsideration standard or the similar law of the case standard — which requires an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or

1

prevent manifest injustice — applies. There is no intervening change in controlling law or new evidence available. Accordingly, Defendants are only able to argue that the MTD Order was clearly erroneous, but they do not come anywhere close to showing that.

As the MTD Order held, it is only proper to dismiss on statute of limitation grounds at the pleading stage where Defendants carry their burden to show that uncontroverted evidence irrefutably demonstrates that a reasonably diligent investor would have discovered facts adequate to plead a claim. Defendants misleadingly quote the MTD Order in an attempt to portray it as holding that a court can never hold that an action is time barred on a motion to dismiss. A fair reading of the MTD Order makes clear, however, that Judge Block simply held that Defendants did not carry their burden based on the record in this case. Furthermore, Defendants' contention that Judge Block could have that great a misapprehension of the law is absurd.

The rest of Defendants' motion similarly falls flat. Defendants cannot cite any controlling authority showing that it was clear error for the MTD Order to hold that, on this record, investors in a United States based IPO were not put on notice of their claims by an article ***written in Chinese for a Chinese publication***, the *Beijing News* (the "Beijing New Article"), as a matter of law. Defendants are also not helped by the mention of "negative publicity" in an August 2018 earnings call and J.P. Morgan analyst report. As Defendants admit, they were too vague to put Plaintiff on notice of his claims. Instead, Defendants, again citing no specific facts or evidence in the record, speculate that those documents would have caused a reasonable investor to find the Beijing News Article. Given that neither of those documents actually mentions the Beijing News Article and the difficulty that a non-Chinese speaker would have finding it, the MTD Order correctly held that it could not say with certainty that a reasonably diligent investigation would have uncovered the Article. Finally, this action is not time barred because of the August 2018

documents for the independent reason that they were published less than a year before Plaintiff filed his Initial Complaint, and the Amended Complaint relates back to the Initial Complaint.

## BACKGROUND

### A.  Sunlands' IPO on the New York Stock Exchange.

Sunlands provides online post-secondary education services in China. (Amended Complaint, Dkt. No. 25 ("AC") ¶ 37.) In 2017, self-taught higher education examination ("STE") courses accounted for 89.2% of Sunlands' gross billings and 80.1% of its new student signups. (*Id.*) STEs are an alternative to the higher education system of universities and colleges. (*Id.*) The STE system consists of courses within a specific study area provided by an education-service institution, such as Sunlands, and examinations given by the Chinese government. (*Id.*)

Sunlands conducted an IPO in the United States in March 2018, pursuant to which it sold 13 million American Depository Shares ("ADSs") and raised approximately $150 million (*Id.* ¶ 36.) The Company priced its offering at $11.50 per ADS and listed the ADSs on the New York Stock Exchange ("NYSE"). (*Id.* ¶¶ 19, 36.) The Registration Statement, which the SEC declared effective on March 22, 2018, stated that "[w]e have not taken any action to permit a public offering of the ADSs outside the United States or to permit the possession or distribution of this prospectus outside the United States." (Defs. Ex.[1] E at ii.)

Directly after the table of contents, Sunlands' Registration Statement stated that they "**are responsible for the information contained in this prospectus,**" "**have not authorized anyone to provide you with different information**," and investors "should rely only on the information contained in this prospectus."  (*Id.* at i (emphasis in original).) Sunlands' Registration Statement

---

[1] "Defs. Ex." refers to exhibits attached to Defendants' Motion for Judgement on the Pleadings. "Pl. Ex." refers to exhibits to the Declaration of Brian B. Alexander, dated July 15, 2021, and filed with this opposition (the "12 (c) Alexander Declaration"). All the exhibit to the 12(c) Alexander Declaration were also submitted to the Court by one of the parties during the briefing of Defendants' Rule 12(b)(6) motion.

portrayed the Company as rapidly and sustainably expanding because of robust marketing that was focused on fulfilling the needs of students. It explained that "[Sunlands'] marketing philosophy is to promote our services…based on our deep understanding of [students'] unique profile and needs" and repeatedly referred to Sunlands' marketing and sales practices as "counseling-oriented." (AC ¶¶ 97, 99, 101. (emphasis in original).) Sunlands further stressed its marketing team's extensive training. (*Id.* ¶¶ 99, 101.) The Registration Statement also touted the Company's growing new student enrollment and gross billings in numerous statements and attributed Sunlands success to its unique understanding of the needs of its students and the quality of its faculty and courses. (*Id.* ¶¶ 97, 114-118.)

Regarding refunds, the Registration Statement stated that the Company's refund policy was to offer an unconditional refund within 24 hours and to offer partial refunds for various reasons after that. (*Id.* ¶¶ 110, 112.) The Registration Statement also explained that under Sunlands' "installment payment plan" students took out loans from third-party credit providers. (*Id.* ¶¶ 107-108, 112.) Sunlands paid the students' interest expenses and service fees, but the students were personally liable to the third-party for paying back the loan. (*Id.*)

### B. At the Time of its IPO, Deceptive and Illegal Marketing Was Pervasive at Sunlands and the Company Trained its Employees to Engage in It.

Contrary to the Registration Statement, Sunlands' marketing was not focused on the unique needs of each student. Instead, Sunlands taught its sales force to sell courses by lying to students and by pushing them as aggressively as possible regardless of the long-term damage it might do to the Company. In early May 2018, the *Beijing News*, a Chinese publication, published the Beijing News Article on its Chinese language website. (*Id.* ¶ 40; Pl. Ex. 1.)[2] The article described how an undercover reporter from the publication had applied for the position of

---

[2] All the Chinese sources mentioned in the Amended Complaint were professionally translated by people contracted by Plaintiff's counsel.

"Learning Planner" at the Beijing headquarters of Sunlands in mid-March 2018 — right before Sunlands' IPO. (AC ¶ 40.) He discovered that only a high school education was necessary for the position and the job would actually consist of being an aggressive telemarketer that used lies to get students to sign up for Sunlands' STE courses. (*Id.* ¶ 41.) The reporter attended a training session for new Sunlands' sales staff on March 14, 2018 where he learned methods of deceiving students from the instructor and printed training materials. (*Id.* ¶¶ 44-48.) The strategies included posing as a teacher, which the trainer admitted was illegal. (*Id.* ¶ 44.) He also learned to falsely claim that examinations the students had to pass would be more difficult if they registered later, that the price of a course was discounted for only one day, and to make up false registration deadlines for courses. (*Id.* ¶ 48.) Additionally, if a student was interested in an STE exam for which Sunlands did not offer a class, Sunlands' trainers instructed them to claim that Sunlands offered the class, but to then steer the students to a class that Sunlands did offer by telling students lies about the STE exam they actually wanted to take. (*Id.* ¶ 47.)

A Chinese speaking investigator hired by Plaintiff's counsel spoke with five confidential witnesses (referred to as "CWs") who worked in sales positions at Sunlands at the time of its IPO in Guangzhou and Beijing. (*Id.* ¶¶ 58, 65, 70, 72, 78.) CW1 and CW2 both stated that Sunlands held training sessions where salespeople were instructed to lie to students to get them to sign up for STE courses. (*Id.* ¶¶ 59, 66.) The CWs described some of the same deceptions as the Beijing News Article along with additional ones and the damage they did to students. (*Id.* ¶¶ 58-83.) CW1 explained that many of the targets of Sunlands had weak educational backgrounds and would find STE exams very difficult. (*Id.* ¶ 63.) He estimated that 7 of 10 students that he signed up would regret it and want a refund. (*Id.*) An additional scheme that CW1, CW2, and CW4

5

discussed, which did not appear in the Beijing News Article,[3] was promising students that taking a Sunlands course would give them "student status." (AC ¶¶ 61, 67, 72.) This was not possible because STE exam students are not eligible for student status — only students who study at schools are eligible. (*Id.* ¶ 61 n.7.)

The CWs also revealed misrepresentations concerning Sunlands' installment payment option and refund policy that were not in the Beijing News Article.[4] All five CWs said it was standard practice not to disclose to students that they were taking out personal loans when they signed up for the installment payment option. (*Id.* ¶¶ 74-78.) CW2 admitted that many students would not have signed up for the option if they knew the truth. (*Id.* ¶ 75.) Although installment payment students accounted for 72.9% of Sunlands' gross billings in 2017, Sunlands failed to disclose that those students did not know they were taking out loans. (*Id.* ¶ 73.)

According to CW1 and CW3, Sunlands salespeople also routinely lied to potential students about Sunlands' refund policy. (*Id.* ¶ 80-83.) Although, students were only eligible for a full refund if they asked for one within 24 hours, the salespeople would just tell the students they could get their money back if they were not satisfied. (*Id.* ¶ 81.) Sunlands made getting a refund even more difficult by putting an artificial monthly cap on them that delayed refunds even if students were entitled to them. (*Id.* ¶ 80.) CW1 reported that many students had to wait 4 to 6 months for a refund and that they would only receive 30 to 40% of their money back. (*Id.* ¶ 81.) The delay put students who had taken out loans to pay for a course in an incredibility difficult situation since they owed money to third party companies and their credit would be ruined if they

---

[3] Defendants claim that the Beijing News Article's allegations overlapped with the allegations that the CWs made concerning student status, but that is incorrect. The portion of the Amended Complaint and Beijing News Article Defendants cite discuss the ability to sign up for STE exams. (MOL ISO Defendants' Motion for Judgment on the Pleadings ("12(c) Mem.") at 12 (citing AC ¶ 49).) The "student status" issue that the CWs discussed concerned whether Sunlands could confer students with the status necessary to study at school. (AC ¶ 61.)

[4] The Beijing News Article did not mention installment payments at all or that Sunlands put an artificial cap on refunds.

stopped paying. (*Id.* ¶ 83.)  CW1 further explained that students were promised refunds if they failed an exam, but not about the strict conditions they had to meet to get one. (*Id.* ¶ 82.) On April 10, 2019, China Central Television published a report about Sunlands' deceptive behavior concerning refunds that was consistent with the CWs account. (*Id.* ¶¶ 84-88.) None of this was disclosed in the Registration Statement. Instead, it generically stated that Sunlands "may experience…negative publicity in relation to refund disputes." (*Id.* ¶ 110.)

On July 4, 2018, Sunlands' regulator, the Shijimgshan Branch of the Beijing AIC, issued an administrative penalty decision that fined Sunlands for violating China's Anti-Unfair Competition Law Article 8 (the "AIC Decision"). (*Id.* ¶¶ 52-53.) The decision stated that the actions reported by *The Beijing News* constituted "false and misleading commercial publicity regarding merchandise to trick and mislead consumers." (*Id.*)

On May 28, 2019, Sunlands filed a Form 6-K with the SEC that stated that, in the First Quarter of 2019, Sunlands' gross billings and new student sign ups had decreased year-over-year by 28.6% and 34.2%, respectively. (*Id.* ¶ 91.) Sunlands admitted that "softer marketing tactics" were one of the reasons for these dramatic decreases. (*Id.* ¶ 92.) On August 23, 2019, Sunlands announced that its gross billings and new student enrollment numbers had again declined dramatically — 43.1% and 44%, respectively. (*Id.* ¶ 95.)

### C. There is no Indication that the Market for Sunlands ADSs was Aware of the Beijing News Article.

Sunlands' ADSs closed at $8.92 on April 30, 2018. (Pl. Ex. 2.) The Beijing News Article was published at 2:30 PM Eastern Standard Time ("EST") on May 1, 2018 (the Article was published at 2:30 AM, May 2, 2018, Beijing Time, 12 hours ahead of EST). (Pl. Ex. 1 at 1.) After the publication of the Beijing News Article, Sunlands' ADS price ***increased***, closing at $9.80 on May 1, 2018, which was that day's high. (Pl. Ex. 2.) On May 2, 2018, Sunlands' ADSs

dipped slightly, closing at $9.21, but that was still higher than their price on April 30, 2018. (*Id.*) On May 7, 2018, Sunlands' ADSs closed at $9.98 (higher than May 1, 2018) and on May 11, 2018 they reached a high of $11.40 (ten cents less than the IPO price). (*Id.*) From May 1, 2018 through June 27, 2018 (a year before Plaintiff filed the Initial Complaint), Sunlands' ADSs never closed more than on cent below the price that they were on April 30, 2018 ($8.92.) (*Id.*)

On May 29, 2018, J.P. Morgan issued an analyst report concerning Sunlands that listed the current price of Sunlands' ADSs as $9.69 and set a bullish price target of $12.50 — higher than the IPO price. (Pl. Ex. 3 at 1.) It did not mention the Beijing News Article or deceptive marketing tactics anywhere in the report. Instead it stated that Sunlands had faster than expected sales growth "***mainly due to a strong marketing program***." (*Id.* (emphasis added).)

## PROCEDURAL HISTORY

### A. The Initial and Amended Complaints Pursue the Same Legal Theory for the Same Factual Reasons.

Plaintiff filed his Initial Complaint on June 27, 2019, asserting claims under Sections 11 and Section 15 of the Securities Act. (ECF No. 1., "IC".) It alleged that Defendants' Registration Statement was false and misleading because:

> (1) Sunlands's student enrollment was declining; (2) Sunlands's gross billings were declining; *(3) Sunlands's marketing tactics were not as robust as described in the Registration Statement; and (4) as a result, Defendants' statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.*

(IC ¶ 29 (emphasis added).) The Initial Complaint also alleged that Sunlands admitted in its May 28, 2019 6-K that "***softer marketing tactics***" led to a steep decrease in new student enrollment and gross billings in first quarter of 2019. (*Compare* IC ¶ 30 (emphasis in IC) *with* AC ¶¶ 91-92.)

Plaintiff filed the Amended Complaint on November 15, 2019, which also asserted claims under Sections 11 and Section 15, after Plaintiff was appointed Lead Plaintiff and The

8

Rosen Law Firm was appointed Lead Counsel. The Amended Complaint narrowed the Initial Complaint by dropping the allegations that Sunlands' student enrollment and gross billings were declining when the Registration Statement was declared effective and added additional allegations supporting the allegations that "Sunlands' marketing tactics were not as robust as described in the Registration Statement." As described above, the Registration Statement portrays Sunlands as having a robust and sustainable marketing model based on "counseling-oriented interactions" and a "deep understanding" of students even though the Company's growth was actually based on unsustainable and deceptive marketing tactics.

### B.  Judge Block's Denial of Defendants' Rule 12(b)(6) Motion to Dismiss.

On June 11, 2020, Defendants moved to dismiss the Amended Complaint under Rule 12(b)(6), *inter alia*, on the grounds that Plaintiff did not bring his Securities Act claims "within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 77m; (*See* MOL ISO Defs' MTD AC, Dkt. No. 35-1 ("Defs. 12(b)(6) Mem."), at 10-16.) Defendants' statute of limitations argument was based on four items: (1) the May 2, 2018 Beijing News Article, (2) the July 4, 2018 AIC Decision, (3) Sunlands' August 24, 2018 earnings call (the "August 2018 Earnings Call"), and (4) an August 27, 2018 J.P. Morgan analyst report (the "August 2018 JPM Report"). (*Id.*) The only one of these items published more than a year prior to the filing of the Initial Complaint was the Beijing News Article. Defendants, however, argued that the other items were also relevant to the statute of limitations analysis because the Amended Complaint did not relate back to the Initial Complaint. (*Id.* 16-17.)

The Beijing News Article and AIC Decision are both only available in Chinese. The Amended Complaint contains a description of Plaintiff's translation of the Beijing News Article (AC ¶¶ 40-49.) Additionally, the Parties each attached different translations of the Beijing News

9

Article to their Rule 12(b)(6) motion briefing. The Defendants attached a version translated with Google Translate (Pl. Ex. 4) and Plaintiff attached a certified translation (Pl. Ex. 1.) Defendants did not attach a translation of the AIC Decision to their Rule 12(b)(6) motion, but the Amended Complaint quoted a translation of all the relevant portions of the AIC Decision and the Defendants specifically argued it triggered the statute of limitations. (AC ¶¶ 52-53, 55; Defs.' 12(b)(6) Mem. at 13.) Defendants also attached the August 2018 Earnings Call and the August 2018 JPM Report to their Rule 12(b)(6) motion and Plaintiff did not contest that it was proper for the Court to consider them. (*See* Pl Exs. 5 & 6.) Both of these documents contained vague references to problems that Sunlands had previously experienced and that were now, according to Sunlands, completely rectified. (Pl. Ex. 5 at 6-7; Pl. Ex. 6 at 1, 3.) ***Neither document specifically identified the Beijing News Article or the AIC Decision.***

The MTD Order held that none of those four items triggered the statute of limitations. The Court first laid out the statute of limitations standard:

> "[T]he limitations period commences not when a reasonable investor would have begun investigating, but when such a reasonable investor conducting such a timely investigation would have uncovered the facts constituting a violation." *City of Pontiac Gen. Employees' Ret. Fund v. MBIA, Inc*., 637 F.3d 169, 174 (2d Cir. 2011).

(*Id.* at 4.) The MTD Order then considered the Beijing News Article and the AIC Decision it led to, which were both discussed in the Order's facts section. (*Id.* at 2.)  It held that because of the conflicting inferences that could be drawn from Plaintiff's allegations and the exhibits attached to the Rule 12(b)(6) briefing that he could not determine, as a matter of law on a motion to dismiss, that the Beijing News Article and the AIC Decision triggered the statute of limitations:

> ***The article was printed in Chinese in a source not widely read in the United States.*** On the other hand, reasonable investors in a Chinese company might be expected to keep abreast of their investment in Chinese media.

10

> ***These conflicting arguments lead the Court to conclude that it cannot answer the question as a matter of law on a motion to dismiss.*** Determining when a claim accrues often "requires a fact-intensive inquiry," and so "a motion to dismiss will only be granted where uncontroverted evidence irrefutably demonstrates that the plaintiff discovered or should have discovered facts sufficient to adequately plead a claim." *Yi Xiang v. Inovalon Holdings, Inc.*, 254 F. Supp. 3d 635, 641 (S.D.N.Y. 2017) (internal quotation marks and alterations omitted). Though the historical facts are not seriously in dispute, there are conflicting inferences to be drawn from them. At this stage, Horowitz is entitled to the benefit of the doubt. *See Caro v. Weintraub*, 618 F.3d 94, 97 (2d Cir. 2010) ("We review the dismissal of a complaint de novo, accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff.").

(*Id.* at 5 (emphasis added).) The MTD Order then addressed the 2018 Earnings Call and August 2018 JPM Report, holding that although a reasonable investor would have been aware of those documents, it could not say with certainty that "a reasonably diligent investigation would have yielded both the source and content of the publicity":

> Sunlands alternatively argues that a reasonable investor would have discovered the claimed inaccuracies and omissions in the registration statement when 'negative publicity' was discussed on an earnings call and in an analyst report in August 2018. Although the Court agrees that a reasonable investor would likely stay apprised of such information *, see, e.g., Gavin/Solmonese LLC v. D'Arnaud Taylor*, 68 F. Supp. 3d 530, 535 (S.D.N.Y. 2014), ***it cannot say with certainty when a reasonably diligent investigation would have yielded both the source and content of the publicity***.

(*Id.* at 5-6 (emphasis added).)

The MTD Order did not address whether the Amended Complaint related back to the Initial Complaint since it held that none of the four items triggered the statute of limitations. It further held that the Amended Complaint sufficiently alleged that the Sunlands' Registration Statement was false and misleading because it alleged that "Sunlands's difficulties with students and regulators…were the result of pervasive and obviously illegal wrongdoing that was ongoing at the time of the registration statement." (*Id.* at 8.)   On April 1, 2021, the day after Judge Block denied Defendants' Rule 12(b)(6) motion to dismiss, this case was transferred to Your Honor.

11

**C. Defendants' Motion for Judgment on the Pleadings Makes the Same Argument as Defendants' Motion to Dismiss Based on the Same Evidence.**

On May 17, 2021, the Defendants filed their answers and they both pled statute of limitations affirmative defenses. (Dkt. Nos. 44, 46.) In support, the Sunlands Defendants' Answer included four exhibits, the same four items that Defendants relied on in the Rule 12(b)(6) motion. As Exhibit A, Defendants attached a third translation of the Beijing News Article to go with the two translations submitted by the parties during the Rule 12(b)(6) briefing. (*Compare* Defs.' Ex. A *with* Pl. Exs. 1 & 4.) As Exhibit B, Defendants attached a translation of the AIC Decision. That document was not previously been submitted to the Court, but a translation of the relevant parts were block quoted in the Amended Complaint. (*Compare* Defs. Ex. B *with* AC ¶¶ 52-53, 55.) Notably, the translation certifications for the translations of the Beijing New Article and AIC Decision that Defendants attached to their Answer show that the documents were translated on January 9, 2020, *before* they filed their Rule 12(b)(6) motion. As Exhibits C and D to their Answer, Defendants attached copies of the August 2018 Earnings Call and August 2018 JPM Report that are identical to what they submitted with their Rule 12(b)(6) motion. (*Compare* Defs. Exs. C & D *with* Pl. Exs. 5 & 6.) Defendants now again move the Court to dismiss this action as time barred, now under Rule 12(c), even though the record they rely on is substantively identical to what they relied on in their previous rejected Rule 12(b)(6) motion.

## ARGUMENT

**I. DEFENDANTS HAVE NOT SHOWN THAT PLAINTIFF'S CLAIMS ARE TIME BARRED.**

**A. The Motion For Reconsideration and Law of the Case Standards Apply Here.**

"In deciding a Rule 12(c) motion, [courts] employ[ ] the same standard applicable to dismissals pursuant to Fed.R.Civ.P. 12(b)(6)." *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir.

12

2010) (internal quotation marks omitted). Accordingly, when a defendant brings a Rule 12(c) motion on the same legal grounds and essentially the same record as a previously denied Rule 12(b)(6) motion, courts employ the motion for reconsideration standard. *See Aviles v. S&P Glob., Inc.*, No. 17-CV-2987 (JPO), 2020 WL 1689405, at *3 (S.D.N.Y. Apr. 6, 2020) (holding "a Rule 12(c) motion for judgment on the pleadings that challenges the sufficiency of a complaint on the same ground as an already-denied Rule 12(b)(6) motion to dismiss should meet an identical fate" and applying the reconsideration standard); *MTR Gaming Grp., Inc. v. Arneault,* No. 1:11-CV-208-SPB, 2015 WL 136563, at *9-*11 (W.D. Pa. Jan. 9, 2015) (Rule 12(c) motion based on the same arguments and "essentially the same record" as previous Rule 12(b)(6) motion was "functionally akin to a motion for reconsideration"); *United States ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, No. 1:07-CV-00960, 2017 WL 1758074, at *1 (E.D. Va. May 3, 2017) (construing Rule 12(c) motion as motion for reconsideration where court had previously decided issue on Rule 12(b)(6) motion).

Here there is no dispute that Defendants' Rule 12(c) motion is on the same legal grounds as their Rule 12(b)(6) motion. Defendants weakly protest that the record is different, but that it is not true in any substantive sense. The only differences are that Defendants have submitted a *third* translation of the Beijing News Article to go with the two that the Parties submitted with the Defendants' Rule 12(b)(6) motion (*compare* Defs. Ex. A *with* Pl. Exs. 1 & 4) and Defendants now submit a complete translation of the AIC Decision, whereas in their Rule 12(b)(6) motion, Defendants relied on the extensive quotations of a translation of the AIC Decision pled in the Amended Complaint (*compare* Defs.' Ex. B *with* AC ¶¶ 52-53, 55; Defs.'12(b)(6) Mem. at 13). Defendants do not claim anywhere in their Rule 12(c) motion that these additions make any difference. It is also indisputable that Defendants could have submitted these translations to the

13

Court with their Rule 12(b)(6) motion since they are integral to the Amended Complaint. Indeed, the translations are dated prior to the filing of the Rule 12(b)(6) motion. Finally, it is undisputed that the copies the August 2018 Earnings Call and August 2018 JPM Report that Defendants submitted with this motion are identical to their Rule 12(b)(6) submissions, and Judge Block considered them. (*Compare* Defs. Exs. C & D *with* Pl. Exs. 5 & 6.) Accordingly, the Court should apply the motion for reconsideration standard here. Reconsideration is "an extraordinary remedy to be employed sparingly" and the major grounds justifying it are "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Knights v. Legere*, No. 16-CV-6965 (LDH), 2017 WL 11487172, at *1 (E.D.N.Y. Sept. 6, 2017) (DeArcy Hall, J.) (internal quotation marks omitted).

Furthermore, as Defendants virtually concede, the law of the case doctrine also applies here. (12(c) Mem. at 20-21); *see United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002) (the law of the case doctrine holds "that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case…unless cogent and compelling reasons militate otherwise" (internal quotation marks omitted)). Similar to the motion for reconsideration standard, departure from law of the case is appropriate in light of an "intervening change in law, availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Johnson v. Holder*, 564 F.3d 95, 99–100 (2d Cir. 2009). Although the law of the case doctrine is discretionary, "the Supreme Court has cautioned that although a 'court has the power to revisit prior decisions…courts should be loathe to do so in the absence of extraordinary circumstances….'" *Hatteras Enterprises Inc v. Forsythe Cosm. Grp., Ltd*, No. 15CV5887ADSARL, 2016 WL 4083386, at *5 (E.D.N.Y. July 30, 2016) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)).

14

Since Defendants do not claim there was any change in controlling law and there is no new evidence available, they must show that Judge Block committed a clear error. As discussed below, Defendants do not come close to showing that controlling law compels a different result.

**B.  The MTD Order Applied the Correct Statue of Limitations Standard.**

Defendants erroneously claim that the MTD Order applied the incorrect motion to dismiss standard. (12(c) Mem. at 2-3, 19-20.) The MTD Order began by stating that the one-year statute of limitations for Securities Act claims "'commences not when a reasonable investor would have begun investigating, but when such a reasonable investor conducting such a timely investigation would have uncovered the facts constituting a violation.'" (*Id.* at 4 (quoting *City of Pontiac*, 637 F.3d at 174.).) The MTD Order later stated that "[d]etermining when a claim accrues often 'requires a fact-intensive inquiry,' and so 'a motion to dismiss will only be granted where uncontroverted evidence irrefutably demonstrates that the plaintiff discovered or should have discovered facts sufficient to adequately plead a claim.'" (*Id.* at 5 (quoting *Yi Xiang*, 254 F. Supp. 3d at 641).) As with all matters, the Rule 12(c) standard is the same. *See, e.g., Varrone v. Bilotti*, 851 F. Supp. 54, 56 (E.D.N.Y. 1993) ("[D]ismissal [of a Rule 12(c) motion] is improper unless it 'appears beyond doubt' that the plaintiff's claim is barred by the applicable statute of limitations." (quoting *Egelston v. State University College,* 535 F.2d 752, 754 (2d Cir.1976)).

Defendants do not contest that the MTD Order's recitation of the standard is correct. Instead, they argue that the MTD Order applied the standard wrong because there can never be a factual dispute about whether a plaintiff was put on notice since "questions of notice and timeliness are entirely objective and legal in nature." (12(c) Mem. at 20.) The Second Circuit's recent decision of *Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*, 873 F.3d 85 (2d Cir. 2017) ("*Nomura*"), shows that Defendants' description of the law is wrong. The Second Circuit explained that prior to the U.S. Supreme Court's decision in *Merck &*

15

*Co., Inc. v. Reynolds*, 559 U.S. 633 (2010), "Circuit law, [was that the Securities Act] limitations period could begin to run as early as the moment a plaintiff knew or should have known of storm warnings that placed it on inquiry notice," but "[a]fter Merck, we still assume a reasonable plaintiff on inquiry notice would conduct further investigation, but the limitations period begins to run only when, in the course of that investigation, the reasonable plaintiff would have discovered sufficient information to plead a securities-law violation adequately." *Nomura*, 873 F.3d at 119. The Second Circuit further held that because "under *Merck*, **it was Defendants' burden to prove** that a reasonable investor in the [plaintiffs'] shoes would have conducted a fulsome investigation and uncovered information sufficient to make out a plausible claim for relief," it could not rule that plaintiffs' claims were time barred as a matter of law where "Defendants adduced no evidence of ... how long it would take a reasonably diligent investor in the GSEs' position to investigate the [Securities Act] claims such that it could adequately plead them." *Id.* at 122 (emphasis added) (internal quotation marks omitted); *see also DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 439 (S.D.N.Y. 2018) (holding on Rule 12(b)(6) motion that action was not time barred where there were "no facts presented to the Court to support a finding as a matter of law that a reasonably diligent investor, conducting a reasonably diligent investigation, would have discovered the declaration and the attached transcript…").

The MTD Order straightforwardly applied the law to the facts. Contrary, to Defendants' contention it did not hold that timeliness could not be decided as a matter of law on a motion to dismiss. Instead, the MTD Order held that given that the Beijing News Article "was printed in Chinese in a source not widely read in the United States," the Court could not conclude, as a matter of law, that Defendants had carried their burden of showing that a reasonably diligent

16

investor would have been aware of it. (MTD Order at 5-6.) [5] Furthermore, as discussed below, Defendants are unable to cite any controlling law that compels a different conclusion.

### C.  This Action is Not Time Barred Due to the Beijing News Article.

Defendants to do not come anywhere close to showing that the MTD Order's holding that Defendants have not "irrefutably demonstrate[d]" that a reasonably diligent investor would have found the Beijing News Article was clear error (MTD Order at 4-5.) The Beijing News Article was published by a Chinese website and only available in Chinese. Defendants argue that because Plaintiff owned ADSs of a company that operates in China, he should have monitored Chinese language news sources even though Sunlands purposefully targeted English speaking investors located in the United States by conducting its IPO on the NYSE. (12(c) Mem. at 14.) Notably, the SEC specifically requires that a Company listing on any stock exchange in the United States make disclosures in English. *See* 17 C.F.R. § 230.403 ("All Securities Act filings and submissions must be in the English language….If a registration statement or other filing requires the inclusion of a document that is in a foreign language, the filer must submit instead a fair and accurate English translation of the entire foreign language document….").

A plaintiff is only charged with knowledge from sources that "an investor of ordinary intelligence would regularly search." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 433 (2d Cir. 2008). When discussing this standard, the Circuit stated: "***We have never affirmed the dismissal of a complaint as time-barred based on a story that appeared only in a specialty publication***, as opposed to mainstream press reports that are more likely to come to the attention

---

[5] The Second Circuit cases that Defendants cite for the statute of limitations standard (12(c) Mem. at 19), *LC Cap. Partners, LP v. Frontier Ins. Grp., Inc.*, 318 F.3d 148, 154-157 (2d Cir. 2003) and *Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 350-351 (2d Cir. 1993) were decided before *Merck* and do not concern situations where it was unclear if a reasonably diligent investor could locate something. Notably, in *LC Cap. Partners*, 318 F.3d at 156, the court stated "[w]e recognize that whether a plaintiff had sufficient facts to place it on inquiry notice is "often inappropriate for resolution on a motion to dismiss under Rule 12(b)(6)." (internal quotations marks omitted). Similarly, *Emerson v. Mut. Fund Series Tr.*, 393 F. Supp. 3d 220, 240 (E.D.N.Y. 2019) and *Rudman v. CHC Grp. LTD.*, 217 F. Supp. 3d 718, 723-725 (S.D.N.Y. 2016), both concern disclosures that the companies made in their public filings.

of an investor of ordinary intelligence." *Id.* at 432 (emphasis added). One could make the same argument about specialty publications that the Defendants make about the *Beijing News* — since an investor holds stock of a company in a particular industry, he or she should regularly search publications concerning that industry. The Second Circuit has, however, rejected that argument.

Defendants' argument that investors could have used Google Translate to read the Beijing News Article just raises more questions since it does not explain how an investor is supposed to find the Article in the first place. (12(c) Mem at 14.) Defendants seems to expect investors to feed all of the articles on the *Beijing News'* website into Google Translate every day. Furthermore, based on Defendants' position, investors in Sunlands would presumably need to follow numerous other Chinese media sources in both Beijing and other places in China where Sunlands operates. How many Chinese media sources are investors in Sunlands supposed to feed into Google Translate a day? Defendants do not say. *See Longo v. OSI Sys., Inc.*, No. CV 17-8841 FMO (SKX), 2021 WL 1232678, at *7 (C.D. Cal. Mar. 31, 2021) (holding that information was not public because it is "plainly unreasonable to require an investor to comb foreign websites" using Google Translate). There may be an efficient way to track all significant Chinese news sources in English, but Plaintiff's counsel is not aware of one and it is not something one would expect from "an investor of ordinary intelligence." A copy of the Beijing News Article that Defendants translated with Google Translate and attached to their Rule 12(b)(6) motion (but have, tellingly, avoided attaching to this motion) further undermines their position since it mistranslated the name Sunlands as "Suntech." (Pl. Ex. 4.) Additionally, Defendants' contention that Chinese media sources are "perhaps *the most natural source* of information about the Company's financial performance" is absurd. (12(c) Mem. at 14 (emphasis in original).) Every stock listed on the NYSE, the largest stock exchange in the world, is covered by numerous

18

English language sources — the fact that Defendants' cannot point to a single English language source that specifically discusses the article just underscores how obscure it was. [6] Unsurprisingly, cases in the Second Circuit that Defendants cite where media reports triggered the statute of limitations concerned articles in major English language publications, such as the *Wall Street Journal*, *Bloomberg*, and *The Financial Times*. (12(c) Mem. at 13.)[7]

Ultimately, Defendants' argument that the Court should reverse the MTD Order relies primarily on *Knox v. Yingli Green Energy Holding Co. Ltd.*, No. 215CV04003ODWMRWX, 2016 WL 6609210 (C.D. Cal. May 10, 2016) — an out of circuit district court case that they also cited in their Rule 12(b)(6) briefing. *First*, not only is *Knox* not controlling precedent, but other courts, including ones in this Circuit, have held that Chinese language sources are not publicly available to investors in securities listed in the United States. *See In re Fuwei Films Sec. Litig.*, 634 F. Supp. 2d 419, 438 (S.D.N.Y. 2009) ("The Court finds that ***the publication of three newspaper articles—in Chinese***—does not transform the information contained within the articles into 'matters of general public knowledge' that may properly be imputed to Fuwei's stockholders." (emphasis added)); *In re China Mobile Games & Ent. Grp., Ltd Sec. Litig.*, No. 14-CV-4471 (KMW), 2016 WL 922711, at *9 n. 12 (S.D.N.Y. Mar. 7, 2016) (holding that information was not "publicly available" because it contained "information requiring travel to China, communicating in Chinese, reading signs in Chinese, and translating financial filings in Chinese"); *In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*, No. CV 11-2768 PSG (SSX), 2012 WL 12893520, at *7 (C.D. Cal. Feb. 16, 2012) (holding that Section 11 claim based

---

[6] Defendants argued in their Rule 12(b)(6) Reply (Dkt. No. 37 at 4 n.4) that an investor could paste the Chinese characters on the front of Sunlands' Registration Statement into Google and translate the results. While that would have been a savvy, there is no support for the proposition that an investor in an NYSE stock of ordinary intelligence would do that. Furthermore, it is not certain what would have appeared on Google at any particular time.

[7] *See Youngers v. Virtus Inv. Partners Inc.*, 195 F. Supp. 3d 499, 521 (S.D.N.Y. 2016) (*The Wall Street Journal, Barron's*, and *The Financial Times*) and *Monroe Cty. Employees' Ret. Sys. v. YPF Sociedad Anonima*, 15 F. Supp. 3d 336, 352 n. 106 (S.D.N.Y. 2014) (*The Financial Times*, *The Wall Street Journal*, and *Bloomberg*). Additionally, *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 138 (2d Cir. 2013), concerned information released by the Defendant.

19

on Chinese language company filings that the complaint pled were "publicly available" was not time barred). *Second*, *Knox*, 2016 WL 6609210, at *7, is easily distinguishable since the defendant's stock dropped 22% after "several reporters and financial analysts publicly opined" about fraud in a program of the defendant company. Furthermore, ***plaintiff had previously argued that those reports were corrective disclosures that had an immediate effect on the defendant company's stock price in an effort to establish loss causation.*** *Id.* The court correctly concluded that the plaintiff could not have it both ways: "[I]f the market learned of the fraud in the Golden Sun Program by this date, so too would a reasonably diligent investor." *Id.*[8]

In contrast to *Knox*, Plaintiff has never alleged that the Beijing News Article is a corrective disclosure. Additionally, Sunlands' ADSs did not have an immediate downward reaction to the Beijing News Article. Indeed, on the day of the Beijing News Article's publication (2:30 PM EST on May 1, 2018), ***the ADSs rose.*** (Pl. Ex. 2.) The ADSs then almost went back up to their IPO price on May 11, 2018. (*Id.*) From May 2018 through June 27, 2018 (a year before Plaintiff filed the Initial Complaint), Sunlands' ADSs never closed more than one cent below the price that they were on April 30, 2018, the day before the Beijing News Article came out on. (*Id.*)   Furthermore, the May 29, 2018 J.P. Morgan analyst report did not say anything about the Beijing News Article or deceptive marketing tactics even though it listed six risk factors for the stock (Pl. Ex. 3 at 7.) Instead, it stated that Sunlands' fast growth was "mainly due to a strong marketing program" and set a target price for the ADSs that was higher than the IPO price. (*Id.* at 1.) Not only does the lack of movement of Sunlands' ADSs distinguish this

---

[8] Defendants also cite, in a footnote, *In re Qudian Inc. Sec. Litig.*, No. 17-CV-9741 (JMF), 2019 WL 4735376 (S.D.N.Y. Sept. 27, 2019), which is not a statute of limitations case. As with *Knox*, that plaintiff forfeited his ability to argue that the market was unaware of Chinese new articles by alleging a stock drop based on them. *Id.* at *3. Accordingly, that court did not engage at all with the question of whether Chinese language newspaper articles are generally in the public mix of information. *See id.* at *6 (citing only to *In re SunEdison, Inc. Sec. Litig.*, 300 F. Supp. 3d 444, 488 (S.D.N.Y. 2018), which held that a *Wall Street Journal* article was in the public mix of information).

case from *Knox*, but it is also an independent ground under Second Circuit law that supports the MTD Order's determination that Defendants have not irrefutably demonstrated that the Beijing News Article triggered the statute of limitations. *See Newman v. Warnaco Grp., Inc.*, 335 F.3d 187, 195 (2d Cir. 2003) (statute of limitations was not triggered since the "stock price did not have any significant movement following the" disclosure and remained roughly between $24.00 and $30.00 and above the price the day before the disclosure most of time for several months).[9]

Finally, Defendants speculate that it is especially likely that a reasonable investor in Sunlands would have found the Beijing New Article in light of warnings about negative publicity in the Registration Statement. (12(c) Mem. at 15.) Even if it were true that the Registration Statement's risk disclosure were at all informative, (which Judge Block held they were not[10]), it does nothing to alleviate the difficulty of monitoring Chinese language publications.

### D. This Action is Not Time Barred Based on the AIC Decision, August 2018 Earnings Call, and the August 2018 JPM Report.

This action is not time barred by the AIC Decision, August 2018 Earnings Call, and or the August 2018 JPM Report for two independent reasons. *First*, as the MTD Order held, they were not sufficient to trigger the statute of limitations. *Second*, those documents are all from less than a year before the June 27, 2019 filing of Initial Complaint. Since the Amended Complaint relates back to the Initial Complaint, those documents cannot time bar the case.

---

[9] *Cf. Dartell v. Tibet Pharms., Inc.*, No. CV 14-3620, 2016 WL 718150, at *6 (D.N.J. Feb. 22, 2016) (holding that disclosure on a Chinese-language website was not corrective since "Defendants point to no evidence that this disclosure actually was known to the relevant public or that the market quickly priced in the disclosure").

[10] Not only did the risk disclosure that Defendants cite fail to warn investors of the ongoing misconduct at Sunlands, it actually encouraged investors to dismiss negative news about the Company as inaccurate. The disclosure made it appear as though the greatest threat to Sunlands was negative publicity caused by false allegations: In the title of the paragraph is says that Sunlands could be harmed by negative publicity, "regardless of its accuracy" and later discussed "false and malicious allegations" and how easy it is to disseminate "inaccurate information" on the internet. (AC ¶ 105; Defs. Ex. E at 20.) Unsurprisingly, the MTD Order held that Sunlands' risk disclosures were not sufficient to prevent Sunlands' Registration Statement from being misleading given the "pervasive and obviously illegal wrongdoing" alleged in the complaint. (MTD Order at 6-8.) *Emerson*, 393 F. Supp. 3d at 240 is inapposite — the plaintiffs argued that they were unaware that a mutual fund engaged in uncovered call options, a risky type of investment, even though the prospectus specifically stated the fund wrote uncovered call options.

1.    <u>Those Documents Did Not Trigger the Statute of Limitations.</u>

As an initial matter, Defendants do not even attempt to explain how a non-Chinese speaking, United States based investor could have found the AIC Decision, which was issued in Chinese by a Chinese regulatory agency. The August 2018 Earning Call and August 2018 JPM Report also do not help Defendants because, as they admit (12(c) Mem. at 17), those documents were vague and did not, by themselves, put Plaintiff on notice of the pervasive and company-sanctioned misconduct at Sunlands. *See In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13 CIV. 7789 (LGS), 2016 WL 5108131, at \*16 (S.D.N.Y. Sept. 20, 2016) (holding that analyst report discussing unusually sharp movements in exchange rates and banks warning customers not to trade did not put plaintiffs on notice of interbank conspiracy to fix prices).

Instead, Defendants claim that the August 2018 Earning Call and August 2018 JPM Report would have led a reasonably diligent investor to find the Beijing News Article and AIC Decision. That argument is completely unavailing, however, because neither source specifically mentions them and, instead, only vaguely mentions generalities, such as "negative publicity." (Defs' Ex. C at 6-7; Defs' Ex. D at 1.) Given, as discussed above, the difficulty a reasonable investor would have had finding those Chinese language materials, the MTD Order correctly ruled "that it cannot say with certainty when a reasonably diligent investigation would have yielded both the source and content of the publicity." (*Id.* at 5-6.) This a straightforward application of *Merck* and *Nomura* — Defendants have failed to carry their burden to show that it is indisputable that a reasonable investigation would have yielded the Beijing News Article. *DoubleLine Cap. LP*, 323 F. Supp. 3d at 436-440 is instructive. That court held that even though numerous news articles in publications such as *The Wall Street Journal* and *Bloomberg* may have been sufficient to trigger inquiry notice, the case was not time barred because Defendants did not carry their burden to show that the plaintiff's investigation should have uncovered a

22

public deposition transcript that would have provided notice of a securities law violation. *Id.*

Lastly, Defendants' argument that a diligent investor would have found the Beijing News Article because Plaintiff's counsel discovered it is a red herring. As Defendants stress, the statute of limitations standard is objective. Thus, the standard cannot be that a "reasonably diligent investigation" requires an investor to hire a firm that employs Chinese speaking investigators. Defendants do not even come close to showing that the MTD Order was clear error.[11]

### 2.   The Amended Complaint Relates Back to the Initial Complaint.

An amendment to a pleading relates back "when…the amendment asserts a claim…that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Rule 15(c)(1)(B). "The purpose of Rule 15 is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." *Slayton v. Am. Exp. Co.*, 460 F.3d 215, 228 (2d Cir. 2006) (internal quotations marks omitted). When an amendment "renders prior allegations more definite and precise" instead of bringing claims that are "based on an entirely distinct set of factual allegations," it relates back. *Id.*

In *Slayton*, the Second Circuit overturned a district court's ruling that a securities complaint did not relate back. *Id.* at 228-229. The Circuit held that specific allegations of failure to disclose lack of risk management controls and proper valuation methods and that accounting violated GAAP all related back to general allegations that the defendants did not comprehend the risk of their investment portfolio. *Id.* at 221-222, 228-229.  Notably, the Circuit further held that the amended complaint also related back because "the original complaint alleged that Amex misstated and/or omitted material facts in its filings with the SEC in violation of SEC regulations requiring accurate representations of…operations and financial conditions." *Id.* at 229. It

---

[11] *Gavin/Solmonese LLC v. D'Arnaud-Taylor*, 68 F. Supp. 3d 530, 536 (S.D.N.Y. 2014), which Defendants cite and was also cited in the MTD Order, does not help Defendants since it does not address whether a reasonably diligent investigation would have uncovered the Beijing News Article.

23

explained that "*[a]lthough these were very general allegations*, the assertions in the amended complaint that some of these misstatements and/or omissions relate to valuation and accounting irregularities simply delineate with more detail those general allegations." *Id.* (emphasis added.)

The Initial and Amended Complaints meet this standard. The Initial Complaint alleged, *inter alia*, that "Sunlands's marketing tactics were not as robust as described in the Registration Statement." (IC at 29.) The word "robust" means "having or exhibiting strength or vigorous health" or "strongly formed or constructed."[12] Marketing practices based on lying to and tricking students are not of "vigorous health" or "strongly formed or constructed." Such tactics are unsustainable and fragile. Thus, the Initial and Amended Complaints pled that Defendants violated the same laws (Sections 11 and 15) for the same factual reason — Sunlands' marketing practices were not as robust as described in the Registration Statement. The Initial Complaint's allegation that Sunlands admitted in its May 28, 2019 6-K that the "*softer marketing tactics*" led to a significant decrease in new student enrollment and gross billings gave Defendants further notice that Sunlands' aggressive marketing would be at issue. (IC ¶ 30 (emphasis in IC).)[13]

### E. It is Not in the Interests of Justice for the Court to Dismiss This Case on Statute of Limitations Grounds.

Defendants argue that that if this Court does not reconsider the MTD Order it would work a "manifest injustice," but they have it backwards. (12(c) Mem. at 21.) Since the MTD Order ruled that Defendants made numerous misstatements in their Registration Statement, and Defendant do not challenge that here, it has already been established that this case is not "frivolous." Instead, the question before the Court is whether Defendants will get away with their malfeasance because investors who purchased a stock on the NYSE could not find an article

---

[12] https://www.merriam-webster.com/dictionary/robust.
[13] Defendants' citation to *ASARCO LLC v. Goodwin*, 756 F.3d 191 (2d Cir. 2014) demonstrates why their argument is wrong. (12(c) Mem. at 17.)  In *ASARCO*, 756 F.3d at 203, the complaint did not relate back because it was "based on different conduct, in a different location, and attributable to different entities."

published by a Chinese news source and available only in Chinese. Letting Defendants off the hook would undermine "[t]he [Securities Act's] 'fundamental purpose [which] was to substitute a philosophy of full disclosure for the philosophy of *caveat emptor* and thus to achieve a high standard of business ethics in the securities industry.'" *Feit v. Leasco Data Processing Equip. Corp.*, 332 F. Supp. 544, 563 (E.D.N.Y. 1971) (Weinstein, J.) (quoting *SEC v. Capital Gains Research Bureau*, 375 U.S. 180, 186 (1963)). In line with this, Sunlands' Registration Statement told investors to "**rely only on the information contained in**" it. (Defs. Ex. E at i (emphasis added).) Furthermore, the Private Securities Litigation Reform Act gives Section 11 claims special status — they are not subject to the heightened pleading or scienter requirements of Section 10(b) claims. *See In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 631-33, 640 (S.D.N.Y. 2007). Accordingly, it would be deeply unjust to dismiss Plaintiff's claims at this stage of the case based on a theoretical statute of limitations argument.

## CONCLUSION

For the reasons above, Defendants' Motion should be denied in its entirety. If the Court dismisses the Complaint, Plaintiff respectfully requests that it should be without prejudice.

Dated: July 15, 2021                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**
By: /s/*Phillip Kim*
Phillip Kim
Brian B. Alexander
Jing Chen
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
        balexaner@rosenlegal.com
        jchen@rosenlegal.com

*Counsel for Plaintiff and the Class*

25