**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAVID HOROWITZ, Individually and On Behalf of All Others Similarly Situated,<br><br>  Plaintiff,<br><br>  v.<br><br> SUNLANDS TECHNOLOGY GROUP, TONGBO LIU, YIPENG LI, JIANHONG YIN A/K/A PENG OU, LU LU, MICHAEL MINHONG YU, YANG WANG, GOLDMAN SACHS (ASIA) L.L.C., CREDIT SUISSE SECURITIES (USA) LLC, AND J.P. MORGAN SECURITIES LLC,<br><br>  Defendants. | No. 1:19-cv-03744-LDH-RML<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

Edmund Polubinski III
Craig J. Bergman
Nikolaus Williams
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Tel: (212) 450-4695
Fax: (212) 701-5695
edmund.polubinski@davispolk.com
craig.bergman@davispolk.com
nikolaus.williams@davispolk.com

Jonathan K. Chang
DAVIS POLK & WARDWELL LLP
18/F, The Hong Kong Club Building
3A Chater Road, Hong Kong SAR
Tel: +852-2533-1028
Fax: +852-2533-4358
jonathan.chang@davispolk.com

*Counsel for the Sunlands Defendants*

Douglas H. Flaum
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
Tel: (212) 813-8800
Fax: (212) 355-3333
dflaum@goodwinlaw.com

*Counsel for the Underwriter*
*Defendants*

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................................. ii

ARGUMENT ...................................................................................................................... 2

I.  PLAINTIFF'S CLAIMS ARE TIME-BARRED.................................................... 2

     A.  Both the Initial and Amended Complaints Were Untimely Because Both Were Filed More than One Year After the *Beijing News* Article .......................... 2

     B.  The Amended Complaint Was Filed More than One Year After English-Language Sources Provided Further Notice of the *Beijing News* Article............... 8

II.  THE MTD ORDER WAS CLEARLY ERRONEOUS AND DISMISSING THIS CASE IS IN THE INTEREST OF JUSTICE ...................................................... 9

CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

CASES

PAGE(S)

*Amorosa v. AOL Time Warner*,
409 Fed. App'x 412 (2d Cir. 2011) ...................................................................... 2

*Bd. of Regents of Univ. of State of N. Y. v. Tomanio*,
446 U.S. 478 (1980) ......................................................................................... 10

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
750 F.3d 227 (2d Cir. 2014) ............................................................................. 4

*City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*,
637 F.3d 169 (2d Cir. 2011) ..................................................................... 3, 6, 8

*Freidus v. Barclays Bank PLC*,
734 F.3d 132 (2d Cir. 2013) ............................................................................. 2

*In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*,
2012 WL 12893520 (C.D. Cal. Feb. 16, 2012) .................................................. 6

*In re China Mobile Games & Ent. Grp. Ltd. Sec. Litig.*,
2016 WL 922711 (S.D.N.Y. Mar. 7, 2016) ....................................................... 6

*Dartell v. Tibet Pharm., Inc.*,
2016 WL 718150 (D.N.J. Feb. 22, 2016) .......................................................... 5

*DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*,
323 F. Supp. 3d 393 (S.D.N.Y. 2018) ............................................................... 9

*In re Fuwei Films Sec. Litig.*,
634 F. Supp. 2d 419 (S.D.N.Y. 2009) ............................................................... 6

*Gavin/Solmonese LLC v. D'Arnaud-Taylor*,
68 F. Supp. 3d 530 (S.D.N.Y. 2014), *aff'd*, 639 F. App'x 664 (2d Cir. 2016) ........................ 7

*Knox v. Yingli Green Energy Holding Co.*,
2016 WL 6609210 (C.D. Cal. May 10, 2016) ............................................ 3, 4, 7

*Longo v. OSI System, Inc.*,
2021 WL 1232678 (C.D. Cal. Mar. 31, 2021) ................................................... 6

*In re Magnum Hunter Res. Corp. Sec. Litig.*,
616 F. App'x 442 (2d Cir. 2015).................................................................... 2, 3

*Merck & Co., Inc. v. Reynolds*,
    559 U.S. 633 (2010)  ................................................................................... 3

*Newman v. Warnaco Grp., Inc.*,
    335 F.3d 187 (2d Cir. 2003)  ....................................................................... 5

*Slayton v. Am. Exp. Co.*,
    460 F.3d 215 (2d Cir. 2006)  ....................................................................... 9

*Staehr v. Hartford Fin. Servs. Grp. Inc.*,
    547 F.3d 406 (2d Cir. 2008)  ............................................................... 3, 5, 6, 7

*Yi Xiang v. Inovalon Holdings, Inc.*,
    268 F. Supp. 3d 515 (S.D.N.Y. 2017)  ........................................................ 5

## STATUTES

PAGE(S)

15 U.S.C. § 77k  .............................................................................................. 4

15 U.S.C. § 77m  ........................................................................................... 1, 2

The essential legal principles and facts on this motion are undisputed and straightforward, though obscured within Plaintiff's Opposition.[1]  A Section 11 claim must be filed within one year after "discovery" of the alleged violation "should have been made by the exercise of reasonable diligence."  15 U.S.C. § 77m.  There is no dispute that the alleged violation in this case is based almost entirely on the *Beijing News* Article.  Nor is there any dispute that the *Beijing News* Article was published more than one year before Plaintiff commenced this action.  Under Second Circuit precedent, these undisputed facts mean Plaintiff should have "discover[ed]" his alleged claims when the article was published, and his claim is time-barred.

Plaintiff does not challenge these dispositive facts.  Instead, the sole basis upon which he contends his claim was timely is that the article was written in Chinese.  But—to quote the standard Plaintiff concedes he must meet (Opp. 15, 16)—any "reasonably diligent" investor conducting a "timely investigation" would have certainly "uncovered" the *Beijing News* Article.  Sunlands is a Chinese company, headquartered in Beijing, with substantially all of its operations in China.  Any reasonable investor in Sunlands conducting a timely investigation would have found and reviewed an article published in a state-sponsored newspaper, based in China's capital, that purportedly exposed the marketing tactics alleged in the Amended Complaint and, therefore, "uncovered" the alleged facts giving rise to this claim.  And, in fact, Mr. Horowitz and his counsel clearly *were* able to find the article when they conducted their investigation.  Not surprisingly, the only court to have considered this issue in the same context—i.e., whether the publication of Chinese-language articles about a Chinese company in the Chinese press trigger the statute of limitations—reached the same conclusion and dismissed a claim as untimely.

---

[1] Defined terms have the meaning set forth in Defendants' opening brief ("Mot."). "Opp." refers to Plaintiff's Opposition brief.

Plaintiff also seeks to avoid dismissal by contending that Judge Block's MTD Order bars relief. That is wrong. Plaintiff does not dispute that a party may assert previously raised grounds on a motion under Rule 12(c), and Defendants are not moving for reconsideration. And insofar as the MTD Order declined to dismiss on timeliness grounds, it was clearly erroneous. The law of the case doctrine therefore does not bar this Court from considering these issues now—on this motion and the record before this Court—and dismissing this untimely case.

## ARGUMENT

### I.      PLAINTIFF'S CLAIMS ARE TIME-BARRED

#### A.      Both the Initial and Amended Complaints Were Untimely Because Both Were Filed More than One Year After the *Beijing News* Article

Plaintiff does not dispute that the *Beijing News* Article (1) is itself the source of nearly all the alleged conduct in the Amended Complaint and (2) was published almost 14 months prior to the filing of the initial complaint and over 18 months prior to the Amended Complaint. (Mot. 11-12; Opp. 17-21.) Nor does he dispute that a Section 11 plaintiff must commence his claim within one year after "discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 77m.

As the Second Circuit has made clear, if public information "provide[s] precisely the information [the defendant] should have disclosed earlier," the plaintiff "should have discovered their alleged claims on the dates of those disclosures" as a matter of law. *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 138 (2d Cir. 2013) (internal quotations omitted) (citing *Amorosa v. AOL Time Warner*, 409 Fed. App'x 412, 416 (2d Cir. 2011)). Put another way, when, as here, public information "touch[es] on every specific allegation that a plaintiff chooses to put in his complaint," the limitations period starts to run. *In re Magnum Hunter Res. Corp. Sec. Litig.*, 616

2

F. App'x 442, 447 (2d Cir. 2015).  Thus, the one-year limitations period began to run when the *Beijing News* Article was published.

In arguing otherwise, Plaintiff relies almost entirely on the fact that the article was originally published in Chinese.  (Opp. 17.)  That has no merit.  The limitations period begins to run when a "reasonably diligent" investor "conducting . . . a timely investigation would have uncovered the facts constituting a violation." *Emerson v. Mut. Fund Series Tr.*, 393 F. Supp. 3d 220, 240 (E.D.N.Y. 2019) (quoting *City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 174 (2d Cir. 2011)).[2]  Here, it is clear what a "reasonably diligent" investor conducting a "timely investigation" of Sunlands would have found:  the *Beijing News* Article.  In contending otherwise, Plaintiff claims that "[a] plaintiff is only charged with knowledge from sources that 'an investor of ordinary intelligence would regularly search.'"  (Opp. 17 (quoting *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 433 (2d Cir. 2008).)  But the Chinese press is *exactly* where a reasonable investor in a Chinese company headquartered in China that does substantially all of its business in China would "regularly search" for news about that company.

It is therefore not surprising that the only on-point case that either party has identified rejected Plaintiff's argument.  As Defendants previously explained (Mot. 13-14), in *Knox v. Yingli Green Energy Holding Co.*, 2016 WL 6609210 (C.D. Cal. May 10, 2016), the court dismissed a securities complaint as untimely at the pleading stage, holding that a reasonably diligent investor would have discovered articles and financial analyst reports notwithstanding that they were in Chinese.  The court determined, *as a matter of law*, that "the fact that the

---

[2] The Second Circuit has not yet resolved whether the more lenient "discovery rule" or the more defendant-friendly "inquiry notice" standard applies to Section 11's limitations period.  *See Magnum Hunter*, 616 F. App'x at 447.  This Court, however, need not resolve this question because the analysis on the limitations period here is the same under either standard.  Even under the more plaintiff-friendly discovery rule, Plaintiff's claim is untimely because "a reasonably diligent plaintiff would have discovered the facts constituting the violation," *Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010) (internal quotations omitted), for the reasons given in this brief.

3

articles were published in Chinese does not justify any significant delay in discovery" because, "[i]n this day in age, reasonably sophisticated analysts and investors following a China-based company should have the means with which to locate and analyze Chinese-language news articles just as quickly as it could with English-language news articles." *Id.* at *7 (emphasis added). The force of that reasoning is demonstrated here because Plaintiff and his counsel *were* able to locate and analyze the article once they belatedly commenced their investigation.

Plaintiff fails to distinguish *Knox*. Rather than address its holding that the publication of articles in Chinese "does not justify any significant delay in discovery," Plaintiff focuses on a different point: that the plaintiff there alleged that the Chinese news articles "had an immediate effect on the defendant company's stock price in an effort to establish loss causation," while Plaintiff here does not. (Opp. 20.) But that is irrelevant. The *Knox* court's reasoning that a reasonable investor would monitor the Chinese press did not depend on stock price movements.[3]

Plaintiff also asserts that the statute of limitations did not start to run upon the *Beijing News* Article's publication because the price of "Sunlands' ADSs did not have an immediate downward reaction" to its publication. (Opp. 20.) But Plaintiff's evidence does not support his assertion. Instead, it shows that on May 2—the day after the article's publication, New York time—the ADS price *fell* roughly 6% below the prior day's closing price.[4] *Cf.*, *e.g.*, *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 233-34 (2d Cir. 2014) (considering price movements the day *after* disclosure). In any event, whether the price of a company's securities falls following publication of an article is irrelevant to whether a reasonably diligent

---

[3] Stock price movements were arguably relevant in *Knox* because plaintiff had sued under Section 10(b) of the Securities Exchange Act of 1934, which requires that plaintiff plead loss causation. Plaintiff there sought to do so by alleging that the company's stock price fell following the disclosure of supposed corrective information. *Knox*, 2016 WL 6609210, at *5, *7. But a plaintiff need not plead loss causation in a Section 11 claim, 15 U.S.C. § 77k(a), and therefore it is unsurprising that such an allegation is not present here.

[4] According to Plaintiff, the article was published on May 1, 2018 at 2:30 p.m. EST. (Opp. 7.) The closing price of Sunlands' ADS on May 1 was $9.80. On May 2, the price of Sunlands' ADS closed at $9.21. (Pl.'s Ex. 2.)

4

investor would have "uncovered" the article upon "conducting a timely investigation." *Emerson*, 393 F. Supp. 3d at 240. Unsurprisingly, courts have explained that "a decline in stock price is not necessarily required" to trigger the statute of limitations for a Securities Act claim. *Yi Xiang v. Inovalon Holdings, Inc.*, 268 F. Supp. 3d 515, 524 (S.D.N.Y. 2017).[5]

None of Plaintiff's cases are inconsistent with *Knox*. For example, the Second Circuit's decision in *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406 (2d Cir. 2008) (Opp. 17-18), which assessed whether public information would have triggered the statute of limitations, supports the conclusion that Plaintiff's claim here is untimely. Applying a "sliding scale"— where "the more widespread and prominent the public information disclosing the facts underlying the fraud, the more accessible this information is to plaintiffs, [] the less company-specific the information must be," *id.* at 432—the Court found that the news articles at issue would not have triggered the statute of limitations because only one article mentioned the defendant "fleetingly," did not identify the alleged misconduct, and was in a "niche" insurance industry publication. *Id.* at 418, 420, 423, 431-32. By contrast, the *Beijing News*—a state-sponsored newspaper in China's capital, where Sunlands is headquartered—is exactly the type of "mainstream press" that *Staehr* found an investor *would* have uncovered. *See id.* at 432. And if there were any doubt, the article was picked up Xinhua News, which put the article on its own website.[6] Xinhua—the official state-run press agency of China and China's largest news publication—is undoubtedly "mainstream press." Moreover, the *Staehr* "sliding scale" only

_____

[5] Other cases cited by Plaintiff do not support a contrary conclusion. *Newman v. Warnaco Grp., Inc.*, 335 F.3d 187 (2d Cir. 2003) (Opp. 21), was a Section 10(b) case, and therefore required alleging loss causation. *Dartell v. Tibet Pharm., Inc.*, 2016 WL 718150, at *6 (D.N.J. Feb. 22, 2016), considered whether an article was a corrective disclosure for purposes of establishing the typicality of class representatives—an entirely different question from that before the Court here. And whether an analyst report published at the end of May happens to have mentioned the *Beijing News* Article (Opp. 20) is irrelevant to whether a reasonably diligent investor would have discovered it.

[6] A Google Translate version of the article posted on Xinhua News' website is attached hereto as Exhibit G. (Reply Declaration of Edmund Polubinski III ("Polubinski Reply Decl.") Ex. G.) This Court may take judicial notice of the article for the fact of its publication. (Mot. 9 n.7 (citing *Staehr*, 547 F.3d at 425).)

5

further supports that Plaintiff here is charged with knowledge of the *Beijing News* Article:  The lengthy article focused almost exclusively on Sunlands and provided, at length, the very basis for Plaintiff's allegations.  Thus, under *Staehr's* "sliding scale," even if the *Beijing News* were not a "widespread and prominent" publication (which, of course, it is), Plaintiff would still be charged with notice of the article's contents.  *See id.*

Plaintiff's other cases fare no better.  The only other case Plaintiff cites addressing a statute of limitations, *In re China Intelligent Lighting & Electronics, Inc. Securities Litigation* (Opp. 19-20), involved Chinese regulatory filings *that were not even alleged to be available online*, and there was no allegation that Plaintiff had, in fact, uncovered them.  2012 WL 12893520, at *7 (C.D. Cal. Feb. 16, 2012).  It therefore has no application here.

Plaintiff's remaining cases (Opp. 18, 19) arise in wholly different contexts.  *In re Fuwei Films Securities Litigation* considered whether Chinese articles were "matters of general public knowledge" such that a company had a duty to disclose them.  634 F. Supp. 2d 419, 437-38 (S.D.N.Y. 2009).  As did *Longo v. OSI System, Inc.*, 2021 WL 1232678, at *7 (C.D. Cal. Mar. 31, 2021).  And *In re China Mobile Games & Entertainment Group, Ltd. Securities Litigation*, considered, *in dicta*, whether a report contained "publicly available" information for purposes of evaluating loss causation.  2016 WL 922711, at *9 n.12 (S.D.N.Y. Mar. 7, 2016).  None of those cases considered the standard applicable here, which charges a reasonably diligent investor with the *affirmative* obligation to conduct a timely *investigation*.  *Pontiac*, 637 F.3d at 174.[7]

Unable to cite to any on-point cases, Plaintiff argues that it would be impractical for an investor to review the Chinese press as part of an investigation.  (Opp. 18-19.)  But free, simple,

---

[7] Plaintiff's cases are also factually distinguishable.  For example, travel to China was required to obtain the information at issue in *In re China Mobile*.  2016 WL 922711, at *9 n.12.  In *Longo*, the defendant was a U.S.-based company and the information at issue was a contract (in Albanian) on an Albanian government website and a power of attorney that required travel to Albania, not a widely published news article.  2021 WL 1232678, at *1, 7.

and ubiquitous tools like Google Translate—which allow near-instantaneous translations with just the hit of a button—make it easy to search and review the Chinese press, as the *Knox* court recognized. *Knox*, 2016 WL 6609210, at \*7. Plaintiff's suggestion that Google Translate would not help because "it does not explain how an investor is supposed to find the Article in the first place" (Opp. 18) ignores that even *search results* can be translated through Google with a simple click. Indeed, searching and translating Chinese-language search results is hardly more difficult than doing so in English: An investor can copy Sunlands' name in Chinese characters (尚德机构)—readily identifiable on both the cover of Sunlands' Registration Statement and Sunlands' website—into Google, yielding the *Beijing News* Article *within just the first few hits*.[8]

Plaintiff also objects to being charged with monitoring multiple sources of information. (Opp. 18.) But that is already the law: "[A] reasonably diligent plaintiff would undertake an investigation based on the filing of related lawsuits, news articles and analyst's reports, and prospectuses, quarterly reports, and other information related to their investments," even though there may be dozens of such sources. *Gavin/Solmonese LLC v. D'Arnaud-Taylor*, 68 F. Supp. 3d 530, 536 (S.D.N.Y. 2014) (internal quotations omitted) (citation omitted), *aff'd*, 639 F. App'x 664 (2d Cir. 2016). Moreover, as noted, the *Beijing News* Article was picked up by other news sources, including Xinhua News (*supra* at 5 & n.6)—further undermining Plaintiff's position that it would be onerous to find. In any event, modern technology, again, has the answer: An investor could easily set up a Google alert for Sunlands (in English and Chinese), allowing it to "efficient[ly] . . . track all significant Chinese news sources" (Opp. 18) by just clicking a button.[9]

---

[8] As of June 2020, when Defendants filed their Rule 12(b)(6) motion, the *Beijing News* Article was the third hit after Sunlands' website, and the version re-posted on Xinhua News' website was three results lower. (Polubinski Reply Decl. ¶ 3; *id.* Ex. H.)

[9] Plaintiff's argument that the *Beijing News* publication is "obscure" (Opp. 19) ignores that Plaintiff *himself* had no difficulty finding the article, which, as noted, was one of the very top hits when searching for Sunlands' name in (….continued)

B.      **The Amended Complaint Was Filed More than One Year After English-Language Sources Provided Further Notice of the *Beijing News* Article**

Even if Plaintiff were correct that a reasonably diligent investor in a Chinese company operating exclusively in China would not have found the *Beijing News* Article (or the Xinhua News repost) on its own—which he is not—the Amended Complaint would still be untimely because the subsequent earnings call and analyst reports, which were in English, alerted investors to the negative publicity resulting from the article and would have caused a reasonably diligent investor to investigate and easily discover it.  (Mot. 15-18); *Pontiac*, 637 F.3d at 174.

Contrary to Plaintiff's assertion, those sources were not "vague" (Opp. 22), but specifically discussed "the *negative publicity that occurred in May*" "regarding the high proportion of students using loans to finance tutorial classes and the company's restrictive returns policy," and whether the Beijing government was "still checking *the malpractices of some sales team*."  (Mot. 16-17 (quoting Ex. C at 6-7, Ex. D at 1) (emphases added).)  As a result, Plaintiff cannot dispute that they would have put a reasonable investor on notice of negative publicity relating to Sunlands' sales practices and caused any reasonably diligent investor to investigate further.  (Opp. 22; Mot. 17.)  Instead, Plaintiff argues that Defendants "failed to carry their burden" to show that "a reasonable investigation would have yielded the *Beijing News* Article."  (Opp. 22*.*)

But that is not true, and the Court need only look to Mr. Horowitz, who *did* find it, for proof.  Having done so, he cannot claim that a reasonably diligent investor conducting a timely investigation would *not*.  This is not a question of "comb[ing]" foreign websites, or "employ[ing]

(continued….)

Chinese.  It also ignores that the article had been picked up by the official Chinese state run news agency.  (*Supra* at 5.).  And Plaintiff's suggestion that he had no obligation to monitor the Chinese-language press because *Sunlands* is required to make disclosures in English under SEC rules (Opp. 17) is neither sensible nor the law:  A reasonable investor is clearly charged with monitoring sources *other* than a company's own disclosures.

Chinese speaking investigators" (Opp. 18, 23), but rather of taking *a few seconds* to enter the

relevant characters into Google's search engine and clicking a button to translate the results.[10]

Nor can Plaintiff avoid dismissal by arguing that the Amended Complaint relates back to

his initial complaint. (Opp. 23-24). To relate back, "the general fact situation alleged in the

original pleading" must give "adequate notice of the matters raised in the amended pleading."

*Slayton v. Am. Exp. Co.*, 460 F.3d 215, 228 (2d Cir. 2006). But as the MTD Order recognized,

the Amended Complaint advanced the "*opposite*" theory as the initial complaint. (MTD Order at

3.) Indeed, the initial complaint did not mention the *Beijing News* Article or make *any*

allegations relating to false or deceptive marketing tactics, refund disputes, or tuition payment

plans.[11] Because the Amended Complaint is "based on an entirely distinct set of factual

allegations," it does not relate back. *See Slayton*, 460 F.3d at 228.

## II.    THE MTD ORDER WAS CLEARLY ERRONEOUS AND DISMISSING THIS CASE IS IN THE INTEREST OF JUSTICE

There is no serious dispute that this motion is procedurally proper. Plaintiff does not and

cannot contend that it was untimely or that Defendants were somehow barred from raising an

issue that they had previously raised on their motion under Rule 12(b)(6). (*See* Mot. 18.)

Nor is the MTD Order a bar to relief on the instant motion. Plaintiff asserts that the

Court should recharacterize it as a motion for reconsideration or that law of the case precludes

the relief sought. (*See* Mot. 18-21; Opp. 12-14.) While Plaintiff is incorrect, these arguments

---

[10] As a result, this case is not like *DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393 (S.D.N.Y. 2018) (Opp. 22-23). There, the court concluded that "there are no facts presented" to conclude that a reasonably diligent investor would have found deposition testimony annexed as one of fifteen exhibits to a declaration filed in federal court two months prior. *Id.* at 439. Here, in contrast, the *Beijing News* Article was published online in a major, state-sponsored newspaper and could be found quickly by simply searching for Sunlands' name in Chinese.

[11] In arguing otherwise, Plaintiff largely quibbles over the meaning of the word "robust." (Opp. 24.) But however defined, the initial complaint's allegation that Sunlands' "marketing practices were not as robust as described in the Registration Statement" (ECF No. 1 ¶ 29) does not give notice that the practices were "deceptive and illegal" (*e.g.*, AC ¶ 98).

are beside the point:  Plaintiff concedes that, under any standard, the MTD Order does not bar relief if it is erroneous.  (Opp. 15.)  As explained above and in the motion, Plaintiff's claim is clearly untimely as a matter of law under the relevant Second Circuit standard; insofar as the MTD Order concluded otherwise, it clearly erred.[12]

Plaintiff contends that it would somehow be "unjust" (*id.* at 24-25) to dismiss Plaintiff's untimely claims.  That is wrong.  Although not the subject of this motion, Plaintiff's claims lack any underlying merit because there was nothing misleading about the Registration Statement.  Indeed, Sunlands expressly disclosed the precise risk that Plaintiff alleges was concealed: that rogue employees could engage in misconduct during marketing activities that could, among other things, "result in customer complaints, regulatory and legal liabilities, as well as serious harm to our brand and reputation."  (Ex. E at 31.)  But more fundamentally, "[s]tatutes of limitations are not simply technicalities.  On the contrary, they have long been respected as fundamental to a well-ordered judicial system."  *Bd. of Regents of Univ. of State of N. Y. v. Tomanio*, 446 U.S. 478, 487 (1980).  Because this case is clearly untimely, it should be dismissed before the Court and the parties expend further resources on it unnecessarily.

## CONCLUSION

For the reasons set forth above and in their opening brief, Defendants respectfully request that the Court grant Defendants' motion and dismiss the Amended Complaint with prejudice.

---

[12] Moreover, the record on the instant Motion is different than on the Rule 12(b)(6) motion.  In addition to the exhibits to the Answer (Mot. 18), Defendants have submitted a copy of a version of the *Beijing News* Article posted to the website of Xinhua News, China's state-sponsored news agency, which further demonstrates that a reasonably diligent investor would have discovered the article.

Dated:  July 23, 2021
        New York, NY

Respectfully Submitted,

DAVIS POLK & WARDWELL LLP


 */s/ Edmund Polubinski III*
Edmund Polubinski III
Craig J. Bergman
Nikolaus Williams
450 Lexington Avenue
New York, NY 10017
Tel: (212) 450-4695
Fax: (212) 701-5800
edmund.polubinski@davispolk.com
craig.bergman@davispolk.com
nikolaus.williams@davispolk.com

Jonathan K. Chang
18/F, The Hong Kong Club Building
3A Chater Road, Hong Kong SAR
Tel: +852-2533-1028
Fax: +852-2533-4358
jonathan.chang@davispolk.com

*Counsel for the Sunlands Defendants*


 */s/ Douglas H. Flaum*
 Douglas H. Flaum
 GOODWIN PROCTER LLP
 620 Eighth Avenue
 New York, NY 10018
 Tel.: (212) 813-8800
 Fax: (212) 355-3333
 dflaum@goodwinlaw.com

*Counsel for the Underwriter Defendants*

11