**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAVID HOROWITZ, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>SUNLANDS TECHNOLOGY GROUP, TONGBO LIU, YIPENG LI, JIANHONG YIN A/K/A PENG OU, LU LU, MICHAEL MINHONG YU, YANG WANG, GAONENG JI, SAM HANHUI SUN, XIAOCHUAN WANG, GOLDMAN SACHS (ASIA) L.L.C., CREDIT SUISSE SECURITIES (USA) LLC, AND J.P. MORGAN SECURITIES LLC,<br><br>    Defendants. | No. 1:19-CV-03744-LDH-RML |

**MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ENTRY OF
ORDER PRELIMINARILY APPROVING SETTLEMENT AND
<u>ESTABLISHING NOTICE PROCEDURES</u>**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   SUMMARY OF THE LITIGATION AND THE SETTLEMENT ....................................... 2

    A.  Procedural History ................................................................................... 2

    B.  Settlement Negotiations ............................................................................ 4

III.  THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR
      SETTLEMENT PURPOSES ................................................................................... 4

    A.  Numerosity ............................................................................................... 5

    B.  Commonality ............................................................................................. 6

    C.  Typicality .................................................................................................. 6

    D.  Adequacy .................................................................................................. 7

       1.  Adequacy of the Proposed Class Representative .......................................... 8

       2.  Rule 23(g) Adequacy of the Proposed Class Counsel ................................... 8

    E.  Common Questions Predominate, and the Class Is Superior to Other Methods of
        Adjudication ............................................................................................. 9

IV.  THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ........ 11

    A.  Standards for Preliminary Approval ...................................................... 11

    B.  Lead Plaintiff and His Counsel Have Adequately Represented the Class ........................ 13

    C.  The Proposed Settlement Is the Result of Good Faith, Arm's-Length Negotiations by
       Informed, Experienced Counsel Who Were Aware of the Risks of the Litigation .......... 13

    D.  The Relief Provided Meets the Adequacy Requirement .................................................. 14

       1.  The Substantial Benefits for the Class, Weighted Against the Costs, Risks, and Delay
         of Trial and Appeal Support Preliminary Approval ..................................... 14

         a)  The Complexity, Expense, and Likely Duration of the Litigation ............................. 14

         b)  The Stage of the Proceedings and the Amount of Discovery Completed .................... 15

         c)  The Risk of Establishing Liability and Damages ....................................... 16

      d)   The Risks of Maintaining the Class Action Through Trial .......................................... 18

      e)   The Ability of Defendants to Withstand a Greater Judgment and the Reasonableness of the Settlement Fund ....................................................................................... 18

   2.   The Proposed Method for Distributing Relief Is Effective ......................................... 19

   3.   Attorneys' Fees, Litigation Expenses, and Award to Lead Plaintiff ........................... 20

   4.   The Parties Have Agreed to a Confidential Agreement Regarding Opt-Outs ............. 20

  E.  There is No Preferential Treatment; The Plan Is Designed to Treat Class Members Equitably ....................................................................................................... 21

V.    THE PROPOSED FORMS AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE AND SATISFY FED. R. CIV. P. 23, THE PSLRA, AND DUE PROCESS ................................................................................................... 22

VI.   PROPOSED SCHEDULE OF EVENTS ........................................................................... 23

VII.  CONCLUSION .................................................................................................................. 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackerman v. Coca-Cola Co.*,
  No. 09 CV 395 DLI RML, 2013 WL 7044866 (E.D.N.Y. July 18, 2013) ............................... 10

*Amchem Prods., Inc., v. Windsor*,
  521 U.S. 591 (1997) .................................................................................................... 5, 10

*Bensley v. FalconStor Software, Inc.*,
  277 F.R.D. 231 (E.D.N.Y. 2011) ..................................................................................... 9

*Cagan v. Anchor Sav. Bank FSB*,
  No. CV-88-3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) ................................................ 19

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981) ....................................................................................................... 11

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
  504 F.3d 229 (2d Cir. 2007) ............................................................................................ 5

*Christine Asia Co. v. Yun Ma*,
  No. 115MD02631CMSDA, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ................... 8, 12, 21

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ................................................................................. 12, 13, 19

*Consol. Edison, Inc. v. Ne. Utilities*,
  332 F. Supp. 2d 639 (S.D.N.Y. 2004) .............................................................................. 22

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995) .............................................................................................. 5

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) ............................................................................................. 14

*Espinoza v. 953 Assocs. LLC*,
  280 F.R.D. 113 (S.D.N.Y. 2011) ..................................................................................... 10

*Fogarazzao v. Lehman Bros.*,
  232 F.R.D. 176 (S.D.N.Y. 2005) ...................................................................................... 8

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  903 F.2d 176 (2d Cir. 1990) ............................................................................................ 7

*Guevoura Fund Ltd. v. Sillerman*,
No. 1:15-CV-07192-CM, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ................................. 20

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) ................................................................................................. 23

*In re Akazoo S.A. Sec. Litig.*,
No. 1:20-CV-01900-BMC, 2021 WL 4316717 (E.D.N.Y. Sept. 10, 2021) ............................. 20

*In re Akazoo S.A. Sec. Litig.*,
No. 1:20-CV-01900-BMC, 2021 WL 8945767 (E.D.N.Y. Apr. 28, 2021) ............................. 23

In re Akazoo S.A. Sec. Litig.,
2022 WL 14915876 (E.D.N.Y. Oct. 7, 2022) ........................................................................... 23

*In re Am. Bank Note Holographics, Inc.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001) ....................................................................................... 15

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
No. 17-CV-04846-NGG-PK, 2021 WL 345790 (E.D.N.Y. Feb. 1, 2021) ............................. 23

*In re Citigroup Inc. Bond Litig.*,
296 F.R.D. 147 (S.D.N.Y. 2013) ................................................................................................ 21

*In re Drexel Burnham Lambert Grp., Inc.*,
960 F.2d 285 (2d Cir. 1992) ........................................................................................................ 7

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
No. 05 CIV 10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ........................ 5, 6, 7, 11

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
312 F.R.D. 332 (S.D.N.Y. 2015) ................................................................................................. 6

*In re Fuwei Films Sec. Litig.*,
247 F.R.D. 432 (S.D.N.Y. 2008) ................................................................................................. 8

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................................................ 6, 18

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ........................................................................................... 11, 15

*In re Indep. Energy Holdings PLC*,
No. 00 CIV. 6689 (SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ............................. 14

iv

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
 No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ........................ 7, 11, 18

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
 330 F.R.D. 11 (E.D.N.Y. 2019) ................................................................................................. 12

*In re Pfizer Inc. Sec. Litig.*,
 282 F.R.D. 38 (S.D.N.Y. 2012) .................................................................................................... 6

*In re Polaroid ERISA Litig.*,
 240 F.R.D. 65 (S.D.N.Y. 2006) .................................................................................................... 8

*In re Signet Jewelers Ltd. Sec. Litig.*,
 No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) ........................ 14

*In re Twinlab Corp. Sec. Litig.*,
 187 F. Supp. 2d 80 (E.D.N.Y. 2002) ........................................................................................... 6

*In re Vivendi Universal, S.A.*,
 242 F.R.D. 76 (S.D.N.Y. 2007) .................................................................................................... 5

*Johnson v. Nextel Commc'ns Inc.*,
 780 F.3d 128 (2d Cir. 2015) ......................................................................................................... 6

*Karvaly v. eBay, Inc.*,
 245 F.R.D. 71 (E.D.N.Y. 2007) ................................................................................................... 5

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
 136 F. Supp. 3d 1159 (C.D. Cal. 2015) ....................................................................................... 9

*Kristal v. Mesoblast Ltd.*,
 No. 7:20-CV-08430-PMH, 2022 WL 3442535 (S.D.N.Y. Aug. 15, 2022) .............................. 20

*Lea v. Tal Educ. Grp.*,
 No. 18-CV-5480 (KHP), 2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ................................. 20

*Leung v. Home Boy Rest. Inc.*,
 No. 07 Civ. 8779 (RJS) (DFE), 2009 WL 398861 (S.D.N.Y. Feb. 18, 2009) ......................... 13

*Maley v. Del Glob. Techs. Corp.*,
 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ....................................................................................... 20

*Marisol A. by Forbes v. Giuliani*,
 929 F. Supp. 662 (S.D.N.Y. 1996) .............................................................................................. 6

*McMahan & Co. v. Wherehouse Ent., Inc.*,
   65 F.3d 1044 (2d Cir. 1995) ................................................................................. 16

*Mikhlin v. Oasmia Pharm. AB*,
   No. 19CV4349NGGRER, 2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021) ................................... 9

*Morris v. Affinity Health Plan, Inc.*,
   859 F. Supp. 2d 611 (S.D.N.Y. 2012) .................................................................. 19

*Palacio v. E\*TRADE Fin. Corp.*,
   No. 10 CIV. 4030 LAP DCF, 2012 WL 2384419 (S.D.N.Y. June 22, 2012) .......................... 11

*Pasini v. Fishs Eddy, LLC*,
   No. 1:16-CV-00354-PGG, 2018 WL 6843905 (S.D.N.Y. Nov. 15, 2018) .............................. 21

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ...................................................................................... 10

*Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*,
   No. 11-CV-05801 DLI VVP, 2012 WL 3746220 (E.D.N.Y. Aug. 27, 2012) .......................... 15

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993) ............................................................................... 5

*Seijas v. Republic of Argentina*,
   606 F.3d 53 (2d Cir. 2010) ................................................................................ 10

*Vargas v. Cap. One Fin. Advisors*,
   559 F. App'x 22 (2d Cir. 2014) ........................................................................... 22

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ........................................................................................ 6

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ........................................................................... 11, 13

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982) ................................................................................. 4

*Yaroni v. Pintec Tech. Holdings Ltd.*,
   600 F. Supp. 3d 385 (S.D.N.Y. 2022) ................................................................... 17

## **Statutes**

15 U.S.C. §78u-4(a)(4) ....................................................................................... 20

15 U.S.C. § 78u-4(a)(7) ................................................................................... 22, 23

vi

15 U.S.C. § 77k(e) ............................................................................................................ 16

**Rules**

Fed. R. Civ. P. 23 .................................................................................................. passim

**Other Authorities**

7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788, at 528 (1986).. 10

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Lead Plaintiff David Horowitz ("Horowitz" or "Lead Plaintiff") respectfully submits this memorandum in support of his Unopposed Motion for Preliminary Approval of the Class Action Settlement.

## I.    INTRODUCTION[1]

Lead Plaintiff and Defendants[2] have agreed to settle this Action for $6,200,000 by the terms stated in the Stipulation. By this motion, Lead Plaintiff respectfully requests the Court enter an order: (1) preliminarily certifying the Settlement Class for the purposes of settlement; (2) preliminarily approving the terms of the Settlement as set forth in the Stipulation; (3) approving the form and method for providing notice of the Settlement; and (4) scheduling a Final Approval Hearing ("Settlement Fairness Hearing") at which the Court will consider the request for final approval of the proposed Settlement, the Plan of Allocation (the "Plan") of Settlement proceeds, the request for attorneys' fees, expenses and case contribution awards, and entry of the Final Judgment.

The Settlement was achieved only after substantial arm's-length negotiations with the aid of nationally regarded mediator Robert A. Meyer, Esq. of JAMS. The settlement provides an immediate and guaranteed recovery for Settlement Class Members. This is a highly favorable result in light of several obstacles Lead Plaintiff faced with ongoing litigation, including proving liability and refuting Defendants' affirmative defenses of negative causation and statute of limitations. Lead Plaintiff believes that the proposed Settlement is fair, reasonable, and adequate, and is in the Settlement Class Members' best interest. Similarly, the proposed content and manner

---

[1] All capitalized terms used herein have the meanings set forth and defined in the Stipulation of Settlement (the "Stipulation") dated May 8, 2023 and filed herewith.

[2] The Defendants are: Sunlands Technology Group ("Sunlands" or the "Company"), Tongbo Liu, Yipeng Li, Jianhong Yin, Lu Lu, Michael Minhong Yu, Yang Wang (collectively, the "Individual Defendants" and, together with Sunlands, the "Sunlands Defendants"); and Goldman Sachs (Asia) L.L.C., Credit Suisse Securities (USA) LLC, and J.P. Morgan Securities LLC (collectively, the "Underwriter Defendants").

of providing notice satisfies requirements imposed by Fed. R. Civ. P. 23, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and due process. Thus, the Court should preliminarily approve the Settlement.

## II.    SUMMARY OF THE LITIGATION AND THE SETTLEMENT

### A.    Procedural History

This Action began on June 27, 2019, when Mr. Horowitz filed a putative class action complaint for violations of the federal securities laws (the "Initial Complaint") in this Court against Sunlands, the Individual Defendants, and the Underwriter Defendants, alleging claims under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"). (Dkt. No. 1.) After Mr. Horowitz filed a motion seeking to be appointed lead plaintiff and to approve his selection of The Rosen Law Firm, P.A. ("Rosen Law") (Dkt. Nos. 5, 6), on August 26, 2019, the Court appointed Mr. Horowitz as Lead Plaintiff and approved Rosen Law as Lead Counsel (Dkt. No. 23).

On November 15, 2019, Lead Plaintiff filed the operative Amended Class Action Complaint for the Violation of the Federal Securities Laws ("Amended Complaint") against the Defendants, alleging claims under Sections 11 and 15 of the Securities Act. (Dkt. No. 25). On December 30, 2019, Sunlands and the Underwriter Defendants filed letter motions seeking a pre-motion conference regarding their intended motions to dismiss the Amended Complaint. (Dkt. Nos. 29, 30), which Lead Plaintiff opposed (Dkt. No. 31). On June 11, 2020, Sunlands and the Underwriter Defendants filed a fully briefed motion to dismiss pursuant to the Court's bundling rule. (Dkt No. 35-37). On June 26, 2020, the Individual Defendants filed a motion for joinder in Sunlands' and the Underwriter Defendants' motions to dismiss. (Dkt No. 35-38). On June 29, 2020, Lead Plaintiff filed a notice voluntarily dismissing Gaoneng Ji, Sam Hanhui Sun, and Xiaochuan Wang. (Dkt. No. 39). On January 8, 2021, Magistrate Judge Robert M. Levy was assigned to the case.

On March 31, 2021, the Honorable Fredric Block issued a Memorandum and Order denying Sunlands, the Individual Defendants, and the Underwriter Defendants' Motions to Dismiss. (Dkt. No. 41, "MTD Order"). On April 1, 2021, the case was reassigned to the Honorable LaShann DeArcy Hall for all further proceedings.

On April 12, 2021, Magistrate Judge Levy held a conference during which he ordered that written discovery could begin, and that counsel should hold a Rule 26(f) conference and submit a proposed case management order.

On May 17, 2021, Sunlands, the Individual Defendants, and the Underwriter Defendants filed Answers to the Complaint. (Dkt. Nos. 44, 46). On May 19, 2021, Sunlands and the Individual Defendants filed a letter motion seeking a pre-motion conference regarding their intended motion for judgment on the pleadings, which Lead Plaintiff opposed. (Dkt. Nos. 47-49). On May 26, 2021, Lead Plaintiff served his First Set of Requests for the Production of Documents to All Defendants and, on June 9, 2021, the Parties filed a Proposed Scheduling Order and Discovery Plan (Dkt. No. 50) and exchanged initial disclosures.

On June 10, 2021, Judge DeArcy Hall denied Sunlands' and the Individual Defendants' request for a pre-motion conference and set a briefing schedule for their anticipated motion for judgment on the pleadings. (June 10, 2021 Dkt. Entry). On June 17, 2021, Magistrate Judge Levy held a conference during which the Parties agreed that Sunlands, the Individual Defendants, and Underwriters Defendants' anticipated motion for judgment on the pleadings triggered a mandatory stay of discovery under the PSLRA.

On July 23, 2021, Sunlands and the Underwriter Defendants filed their fully briefed motion for judgment on the pleadings pursuant to the Court's bundling rule. (Dkt No. 54-56). On September 21, 2022, Judge DeArcy Hall issued a Memorandum and Order denying Sunlands, the Individual Defendants, and the Underwriter Defendants' motion for judgment on the pleadings.

3

(Dkt. No. 57, "MJP Order").

On October 12, 2022, the Parties filed an amended joint discovery plan and case management order (Dkt. No. 59) and Magistrate Judge Levy held a conference on October 18, 2022, where he adopt the amended order. On October 19, 2022, Sunlands, the Individual Defendants, and the Underwriters served responses and objections to Lead Plaintiff's First Set of Requests for the Production of Documents to All Defendants.

On November 8, 2022, the Parties submitted a proposed confidentiality order (Dkt. No. 60) and Magistrate Judge Levy so-ordered it on November 9, 2022. On November 29, 2022, Defendants served their First Request for the Production of Documents to Lead Plaintiff and Lead Plaintiff served his responses and objections on January 18, 2023. Additionally, prior to the Parties' January 20, 2023 mediation, the Parties met and conferred multiple times about Defendants' responses and objections to Lead Plaintiff's document requests and about a protocol regarding the preservation, collection, and production of electronically stored information (the "ESI Protocol") drafted by Lead Plaintiff.

### B.    Settlement Negotiations

On January 20, 2023, following the submission of written position statements and exhibits, Lead Plaintiff and the Sunlands Defendants participated in an in-person, all-day mediation with Mr. Meyer. After vigorous negotiation by the Parties, Mr. Meyer made a mediator's proposal as a resolution of the Action. On January 23, 2023, Mr. Meyer informed the Parties that both sides accepted the mediator's proposal.

### III.   THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

The Second Circuit has long acknowledged the propriety of certifying a class solely for settlement purposes. *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). Although the trial court may disregard management issues in certifying a settlement class, the proposed class must

still satisfy the other requirements of Rule 23. *Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 620 (1997). Specifically, to preliminarily certify a settlement class, the Court must determine whether the threshold requirements of Rule 23(a) and 23(b)(3) are met: numerosity; commonality; typicality; adequacy of representation; and predominance and superiority. *Id*. at 613-15. The Court need not conduct a rigorous analysis to certify a settlement class, reserving such scrutiny for final approval. *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007). The proposed Settlement Class readily meets the standard for preliminary certification.

### A. Numerosity

Rule 23(a)(1) requires a class be so large that joinder of all members is "impracticable." For purposes of Rule 23(a)(1), "[i]mpracticable does not mean impossible," *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993), and Lead Plaintiff must only show "that the difficulty or inconvenience of joining all members of the class make the use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007). Indeed, "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 83 (S.D.N.Y. 2007), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) ("Precise quantification of the class members is not necessary because a court may make common sense assumptions regarding numerosity"); *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 CIV 10240 CM, 2007 WL 2230177, at *12 (S.D.N.Y. July 27, 2007) (numerosity requirement is generally met in cases involving nationally traded securities.).

Here, there are likely hundreds, if not thousands, of potential Settlement Class Members given that the Initial Public Offering ("IPO") that this case concerns was for 13 million Sunlands American Depository Shares ("ADSs"). Thus, the numerosity requirement is met.

## B.    Commonality

The commonality requirement, which "is applied permissively," asks only whether there are "questions of law or fact common to the class." *EVCI*, 2007 WL 2230177, at *13. All that is required is that "named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 451 (S.D.N.Y. 2004). To be a common issue, the shared question must be "'capable of classwide resolution— which means that [determination of] its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (*quoting Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

Securities fraud cases easily satisfy this standard where it is alleged that "putative class members have been injured by similar material misrepresentations and omissions," *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012), such as those appearing in a company's public filings and statements. *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 341 (S.D.N.Y. 2015). Here, the common issues are whether Defendants made material false statements or omissions in the registration statement and related prospectus issued in connection with Sunlands' March 2018 IPO (the "Sunlands IPO Offering Documents") and the extent of the damages sustained by the Settlement Class.

## C.    Typicality

The Rule 23(a)(3) typicality requirement is fulfilled when "the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." *Marisol A. by Forbes v. Giuliani*, 929 F. Supp. 662, 691 (S.D.N.Y. 1996), *aff'd sub nom. Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997). In a securities case, typicality exists where all class members were allegedly harmed by "the distribution of false and misleading information which artificially inflated the stock." *In re Twinlab Corp. Sec. Litig.*, 187

6

F. Supp. 2d 80, 83 (E.D.N.Y. 2002).  "Typical," however, does not mean identical. *See EVCI*, 2007 WL 2230177, at *13. Particular factual differences, differences in the amount of damages claimed, or even the availability of certain defenses against a class representative may not render his or her claims atypical. *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990); *see also In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *10 (S.D.N.Y. Dec. 23, 2009) (differences in acquisition dates, type of securities purchased, and manner of acquisition will not destroy typicality "if each class member was the victim of the same material misstatements and the same fraudulent course of conduct").

Lead Plaintiff alleged a common course of conduct affecting all Settlement Class Members. Each class member purchased Sunlands' ADSs pursuant or traceable to the Sunlands IPO Offering Documents based on Defendants' allegedly materially false and misleading statements and was damaged thereby. Lead Plaintiff's claims stand or fall with those of the Settlement Class and thus, he is typical.

### D. Adequacy

Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class. This requirement has traditionally entailed a two-pronged inquiry: first, a showing that the interests of the representative parties will not conflict with the interests of Settlement Class Members, and second, that the representative parties' counsel is qualified, experienced, and able to conduct the proposed litigation vigorously. *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *EVCI*, 2007 WL 2230177, at *13. Lead Plaintiff is adequate if his interests do not conflict with those of the class. *Marsh & McLennan,* 2009 WL 5178546, at *10. Pursuant to Rule 23(g), adequacy of proposed class counsel is now considered separately from the determination of the adequacy of the proposed class

representatives. Both prongs of the adequacy requirement are satisfied here.

### 1.    Adequacy of the Proposed Class Representative

Lead Plaintiff's interest is aligned with, not antagonistic to, those of the proposed Settlement Class. Lead Plaintiff, who purchased Sunlands' ADSs pursuant or traceable to the Sunlands IPO Offering Documents based on Defendants' alleged misstatements and was damaged thereby, is seeking on his own behalf, and on behalf of all class members, to maximize the recovery of damages from Defendants. *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest…"). Lead Plaintiff is an adequate class representative.

### 2.    Rule 23(g) Adequacy of the Proposed Class Counsel

Rule 23(g) requires a court to assess the adequacy of proposed class counsel. To that end, the court must consider the following: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. *Fogarazzao v. Lehman Bros.*, 232 F.R.D. 176, 182 (S.D.N.Y. 2005).

Lead Counsel is experienced in prosecuting class actions having successfully prosecuted securities class actions in this Court and courts throughout the country. Courts have consistently found Rosen Law to be well suited as class counsel in securities class actions, including in cases against Chinese-based defendants, showing that Rosen Law understands the intricacies inherent in litigating actions against such defendants. *See Christine Asia Co. v. Yun Ma*, No. 115MD02631CMSDA, 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019) (In considering approval of the $250 million Alibaba securities settlement, the Court stated that "[t]he quality of representation by [Rosen Law] and Defendants' counsel was high in this case . . ."); *In re Fuwei*

*Films Sec. Litig.*, 247 F.R.D. 432, 429 (S.D.N.Y. 2008) ([T]he Rosen Law firm is well-qualified to serve as lead counsel in this matter."); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("[Rosen Law] is 'highly qualified [and] experienced' in securities class actions"); *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 242 (E.D.N.Y. 2011) ("the Rosen Law Firm is well-qualified to serve as lead counsel in this matter"); *Mikhlin v. Oasmia Pharm. AB*, No. 19CV4349NGGRER, 2021 WL 1259559, at *4 (E.D.N.Y. Jan. 6, 2021) ("The Rosen Law Firm, P.A . . . [is] capable and experienced in class litigation."). Lead Counsel's firm resume was filed as Dkt. No. 6-4.

The Settlement was achieved after Lead Counsel spent considerable time for the benefit of Sunlands shareholders. Lead Counsel conducted a comprehensive investigation of Sunlands, including retaining a private investigator in China to interview witnesses, reviewing Sunlands' public filings and news reports concerning the Company in English and Chinese, and retaining an expert to assess damages. Lead Counsel also drafted the Initial and Amended Complaints, opposed Defendants' pre-motion letters and defeated Defendants' motion to dismiss and motion for judgment on pleadings. Additionally, Lead Counsel drafted and served document requests on Defendants, met and conferred multiple times with Defense Counsel about their responses and objections to those document requests and Lead Plaintiff's draft ESI Protocol, and negotiated a protective order with Defense Counsel. Lead Counsel also participated in the mediation and settlement discussions, including drafting a mediation statement. Thus, Lead Counsel should be appointed as Class Counsel for the Settlement Class.

### E. Common Questions Predominate, and the Class Is Superior to Other Methods of Adjudication

After meeting the threshold requirements of Rule 23(a), a plaintiff must establish that the proposed class meets the requirements of Rule 23(b)(3). To certify a class under Rule 23(b)(3), the Court must find that "the questions of law or fact common to class members predominate over

9

any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." This case satisfies the predominance and superiority criteria.

When common questions are a significant aspect of a case and they can be resolved in a single action, class certification is appropriate. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788, at 528 (1986). "Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." *Ackerman v. Coca-Cola Co.*, No. 09 CV 395 DLI RML, 2013 WL 7044866, at *18 (E.D.N.Y. July 18, 2013). Because "the focus of the predominance inquiry is on defendants' liability, not on damages," *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 125 (S.D.N.Y. 2011), "it is well-established that the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification." *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010). This case illustrates the principle that the predominance requirement can be "readily met" in securities fraud class actions, *Amchem*, 521 U.S. at 625, because, were each class member to bring an individual action, proof of liability would require every plaintiff to demonstrate that Defendants made the same alleged misstatements. The superiority inquiry compares class actions to other possible methods of adjudication. Pursuant to Fed. R. Civ. P. 23(b)(3), the factors relevant to a finding of superiority include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Because of the PSLRA's notice, consolidation, and Lead Plaintiff provisions, subsections (B) and (C) have already been resolved, and subsection (D) does not apply to settlements. With respect to subsection (A), those investors damaged by securities law violations whose losses do not run into several millions of dollars would likely have no practical recourse. *Phillips Petroleum*

10

*Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("most of the plaintiffs would have no realistic day in court if a class action were not available"). The "class action is uniquely suited to resolving securities claims," because "the prohibitive cost of instituting individual actions" in such cases gives class members "limited interest in individually controlling the prosecution or defense of separate actions." *Marsh & McLennan*, 2009 WL 5178546, at *12. Furthermore, if individuals *do* have the means to litigate their own case, absent a class action, this Court would have to try many lawsuits.

As set forth above, a class action is the superior method of adjudication and satisfies the requirements of Rule 23(b)(3). Solely for the purposes of settlement, Defendants do not dispute that the Settlement Class should be certified in accordance with Rule 23(b)(3). As such, the Court should conditionally certify the Settlement Class for settlement purposes.

## IV.   THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

### A.   Standards for Preliminary Approval

There is a "strong judicial policy favoring settlements, particularly in the class action context," *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012); *Palacio v. E\*TRADE Fin. Corp.*, No. 10 CIV. 4030 LAP DCF, 2012 WL 2384419, at *2 (S.D.N.Y. June 22, 2012) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)), because such cases tie up judicial resources, require large expenditures of the parties' time and money, and their resolution is usually significantly delayed. *Palacio*, 2012 WL 2384419, at *3 ("Litigation through trial would be complex, expensive, and long."). Due to the presumption in favor of settlement, and "[a]bsent fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *EVCI*, 2007 WL 2230177, at *4. When reviewing a proposed class settlement, courts should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).

Where, as here, the parties propose to resolve class action litigation through a class-wide

11

settlement, they must request and obtain the Court's approval. Fed. R. Civ. P. 23(e). Pursuant to

Rule 23(e)(1), as amended in 2018, preliminary approval turns on whether the Court "will likely

be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of

judgment on the proposal." Rule 23(e)(2) provides:

> (2)    ***Approval of the Proposal.***   If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> > (A)    the class representatives and class counsel have adequately represented the class;
> >
> > (B)    the proposal was negotiated at arm's length;
> >
> > (C)    the relief provided for the class is adequate, taking into account:
> >
> > > (i)    the costs, risks, and delay of trial and appeal;
> > >
> > > (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > >
> > > (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
> > >
> > > (iv)    any agreement required to be identified under Rule 23(e)(3); and
> >
> > (D)    the proposal treats class members equitably relative to each other.

These factors "add to, rather than displace, the *Grinnell* factors"[3] considered by courts

within the Second Circuit. *Payment Card,* 330 F.R.D. at 29 (courts "consider[] the Rule 23(e)(2)

factors, and then consider[] additional *Grinnell* factors not otherwise addressed"); *Christine Asia*

---

[3] The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) (citing *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974)).

*Co.*, 2019 WL 5257534, at \*10 ("Rule 23(e)(2)(C)(i) incorporates the factors set out in [*Grinnell*] … and courts in this Circuit have long utilized the *Grinnell* nine-factor test in determining whether a settlement is substantively fair, reasonable, and adequate.").

At this stage, courts undertake an initial review of the Rule 23(e) factors to determine whether the Settlement merits preliminary approval such that notice of the terms of the proposed Settlement should be disseminated to the Class. *See* Rule 23(e)(1)(A)-(B). Under this multi-factor analysis, the Settlement merits preliminary approval.

**B.      Lead Plaintiff and His Counsel Have Adequately Represented the Class**

Lead Plaintiff and Lead Counsel have diligently prosecuted this Action. As discussed above, Lead Plaintiff and Lead Counsel: conducted a comprehensive investigation of Sunlands, including retaining a private investigator in China to interview witnesses, reviewing Sunlands' public filings and news reports concerning the Company in English and Chinese, and retaining an expert to assess damages; drafted the Initial and Amended Complaints; opposed Defendants' pre-motion letters and defeated Defendants' motion to dismiss and motion for judgment on the pleadings; drafted and served document requests on Defendants and met and conferred multiple times with Defense Counsel about their responses and objections to those document requests and Lead Plaintiff's draft ESI Protocol; negotiated a protective order with Defense Counsel; and negotiated a favorable settlement that provides immediate recovery to Settlement Class Members.

**C.      The Proposed Settlement Is the Result of Good Faith, Arm's-Length Negotiations by Informed, Experienced Counsel Who Were Aware of the Risks of the Litigation**

A proposed settlement is presumed fair and reasonable when it is the result of "extensive arm's-length negotiations between experienced attorneys and their clients." *Leung v. Home Boy Rest. Inc.*, No. 07 Civ. 8779 (RJS) (DFE), 2009 WL 398861, at \*1 (S.D.N.Y. Feb. 18, 2009); *Wal-Mart Stores, Inc.*, 396 F.3d at 116. Further, a mediator's involvement in negotiations supports a

13

presumption of fairness and "helps to ensure that the proceedings were free of collusion and undue pressure." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001); *In re Indep. Energy Holdings PLC*, No. 00 CIV. 6689 (SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("the fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable.").

Having exchanged position statements in advance, the Parties participated in an all-day session under mediator Mr. Meyer's oversight. The negotiations were hard-fought, with the Parties exchanging frank views over the course of many hours. The arm's-length nature of the negotiations and an experienced mediator's involvement support the conclusion that the Settlement is fair and was achieved free of collusion.

### D.    The Relief Provided Meets the Adequacy Requirement

#### 1.    The Substantial Benefits for the Class, Weighted Against the Costs, Risks, and Delay of Trial and Appeal Support Preliminary Approval

##### a)    The Complexity, Expense, and Likely Duration of the Litigation

Courts generally recognize that securities class actions are complex and expensive. *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468, at *4 (S.D.N.Y. July 21, 2020) ("Courts recognize that [s]ecurities class actions are generally complex and expensive to prosecute.") The Settlement provides a guaranteed, immediate recovery. If the Settlement were not reached, the Parties would have to incur substantial costs and engage in prolonged litigation through discovery, class certification, summary judgment, trial and, if applicable, subsequent appeals. Discovery costs, including document production and hosting fees as well as experts, including for class certification, expert reports, and expert testimony would be significant and could easily exceed the several million dollar range for Lead Plaintiff.

14

Additionally, the fact that the Sunlands Defendants, and likely most of the witnesses, are in China adds another layer of complexity. Obtaining evidence through the Hague Convention and letters rogatory is "cumbersome and inefficient, and hardly make litigation in the United States convenient." *Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*, No. 11-CV-05801 DLI VVP, 2012 WL 3746220, at *7 (E.D.N.Y. Aug. 27, 2012). Marshalling and obtaining evidence from China is challenging, as the Chinese government has imposed restrictions against the production of evidence and testimony to parties abroad. Accordingly, there is no guarantee that Lead Plaintiff would have been able to obtain the necessary evidence to prove his case through discovery. Even if Lead Plaintiff could do so, it would be costly, take years, and delay any potential recovery to Settlement Class Members. Moreover, any documents produced will likely be in Chinese, requiring translation or the retention of bilingual attorneys to facilitate document review. Thus, the complexity, expense, and likely duration of these proceedings favor approval of the Settlement.

### b) The Stage of the Proceedings and the Amount of Discovery Completed

The fact that there has been no formal discovery in this case does not weigh against preliminary approval. *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425-26 (S.D.N.Y. 2001) ("To approve a proposed settlement … the Court need not find that the parties have engaged in extensive discovery. Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make … an appraisal of the Settlement.") (quotation marks and citations omitted); *see also IMAX*, 283 F.R.D. at 190 ("The threshold necessary to render the decisions of counsel sufficiently well informed, however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties."). Prior to settlement, Lead Plaintiff conducted a thorough and informed investigation of both English and Chinese language sources concerning Sunlands, including hiring an investigator to interview Sunlands employees in China. Lead Plaintiff and Lead

15

Counsel entered into the Settlement fully informed about the Action's strengths and weaknesses.

### c)  The Risk of Establishing Liability and Damages

There were substantial risks in this Action and further prosecution may have yielded limited or no recovery. Although the alleged misstatements that Lead Plaintiff pled in the Amended Complaint survived Defendants' motion to dismiss, to survive a summary judgment motion, Lead Plaintiff would need to prove — not merely allege — that "Sunlands' difficulties with students…were the result of pervasive and obviously illegal wrongdoing that was ongoing at the time of the registration statement." MTD Order at 8. Lead Plaintiff also expected Defendants to continue to pursue their statute of limitations affirmative defense on summary judgment.

Additionally, there is risk that Defendants would be able to show that Lead Plaintiff and the Settlement Class had a greatly reduced amount of damages in this case. The statutory measure of damages under Section 11 is the difference between the IPO price for Sunlands' ADSs, and the price on the date this suit was filed. 15 U.S.C. § 77k(e). Here, the IPO price of Sunlands' ADSs was $11.50 per share, and at the time Lead Plaintiff filed his Initial Complaint on June 27, 2018, the ADSs had dropped all the way to around $2.40 per share, yielding statutory damages of approximately $118 million. Section 11 of the Securities Act, however, provides a negative causation defense under which defendants can reduce the amount of damages by establishing that "the decline in the value of the security in question was not caused by the material omissions or misstatements in the registration statement." *See McMahan & Co. v. Wherehouse Ent., Inc.*, 65 F.3d 1044, 1048 (2d Cir. 1995).

Defendants' negative causation defense creates risk for Lead Plaintiff because it was necessary for Lead Plaintiff to argue in response to Defendants' statute of limitation defense that the market was not aware of the allegations in the *Beijing News* Article more than a year prior to

16

the filing of the Amended Complaint on November 15, 2019. MJP Order at 18.[4] Defendants will argue that this was a concession by Lead Plaintiff that any disclosures prior to November 15, 2018 could not have been corrective disclosure that caused losses to the Class. *See Yaroni v. Pintec Tech. Holdings Ltd.*, 600 F. Supp. 3d 385, 399 (S.D.N.Y. 2022) (holding that the corrective disclosure date is the same as the constructive notice date for the purpose of statute of limitations). Since the price of Sunlands ADSs was $4.20 at the close of the market on November 14, 2018, Defendants will argue that only the difference between $4.20 and the price the day Lead Plaintiff filed the Initial Complaint ($2.40) should be attributed to Defendants' misstatements. *See* Exhibit 1 to the Declaration of Brian B. Alexander, dated May 8, 2023, and filed concurrently with this motion ("Alexander Decl.").[5]  Based on that calculation, Plaintiff and the Class would have a maximum amount of damages of approximately $23.4 million, substantially lower than the maximum available statutory damages. Furthermore, Defendants would try to show that at least some, if not all, of those $23.4 million in damages were not caused by their misstatements. Notably, loss causation has not been tested at all at this point in the case because Lead Plaintiff did not plead any corrective disclosures in his Amended Complaint.

If he survived summary judgment, Lead Plaintiff would then have to establish each element of his claims and damages to a jury's satisfaction. Even if Lead Plaintiff won at trial, he would have to survive Defendants' inevitable appeals. Through this entire period, every hour Defendants' attorneys worked would diminish the funds available to fund a settlement or pay a judgment. And if Defendants' negative causation, damages, or other arguments were accepted, the maximum

---

[4] Lead Plaintiff was forced to argue that the market was not aware of the *Beijing News* Article one-year prior to the Amended Complaint instead of one-year prior to the Initial Complaint because Defendants argued that the Amended Complaint did not relate back to the Initial Complaint. On both Defendants' motion to dismiss and motion for judgment on the pleadings, the Court declined to resolve this issue.

[5] On August 31, 2021, Sunlands conducted a 1-to-12.5 reverse split that reduced the number of outstanding ADSs trading in the market. Accordingly, to calculate the price that each ADSs was trading at during the relevant period, it is necessary to divide the prices in Exhibit 1 by 12.5.

17

damages that could be established at trial could be much lower than Lead Plaintiff's estimate of damages and, of course, Lead Plaintiff may have lost at summary judgment, trial, or on appeal on some or all of his claims, resulting in a recovery of little or nothing. The Settlement avoids these genuine risks.

### d)  The Risks of Maintaining the Class Action Through Trial

For class certification, Lead Plaintiff must show that common issues predominate over individual issues.  Defendants would have opposed Lead Plaintiff's motion for class certification and disputed Lead Plaintiff's ability to certify a class.  Additionally, even if Lead Plaintiff was able to certify a class, there is no guarantee that a class would remain certified through trial as the Court may re-evaluate the appropriateness of class certification at any time. Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *Glob. Crossing*, 225 F.R.D. at 460 ("[E]ven if plaintiffs could obtain class certification, there could be a risk of decertification at a later stage."). Because this risk remains through judgment and appeal, "the uncertainty surrounding class certification supports approval of the Settlement." *Marsh & McLennan*, 2009 WL 5178546, at *6.

### e)  The Ability of Defendants to Withstand a Greater Judgment and the Reasonableness of the Settlement Fund

In securities class actions, plaintiffs primarily look to the company defendant for settlement funds. It is highly unlikely that Sunlands would be able to withstand a greater judgment because in its most recent report filed with the SEC, Sunlands stated that its liabilities are greater than its assets.[6]

Additionally, this settlement is a highly favorable result for the Settlement Class. The Stipulation provides a Settlement of $6,200,000 to immediately be paid into the Settlement Fund.

---

[6] Form 20-F, filed on April 25, 2023, at F-3, Available at:
https://www.sec.gov/ix?doc=/Archives/edgar/data/0001723935/000095017023014218/stg-20221231.htm.

Even based on the original calculation of $118 million in statutory damages, the Settlement offers a recovery of more than 5% of the maximum statutory damages, which, according to Cornerstone Research, is higher than the median percentage of statutory damages settled for in Securities Act cases in 2022 and 2021. Exhibit 2 to the Alexander Decl. at 7-8. The result looks even more favorable when one considers, as discussed in the previous section, that the Defendants will argue that the absolute maximum statutory damages still available in this case is actually approximately $23.4 million. The $6.2 million settlement represents a recovery of more than 26% of those damages. Additionally, NERA Economic Consulting concluded that the median recovery in securities class actions in 2022 was approximately 1.8% of estimated damages. *See* Exhibit 3 to the Alexander Decl. at 18. Moreover, the recovery here is well above recoveries courts have declared reasonable. *See Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason . . . why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) ("It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair"); *Cagan v. Anchor Sav. Bank FSB*, No. CV-88-3024, 1990 WL 73423, at *12–13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million."). As such, the Settlement falls well within the range of possible approval.

### 2.    The Proposed Method for Distributing Relief Is Effective

As demonstrated below at pages 22-24, the method of the proposed notice and claims administration process are effective. The claims process includes a claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan. The Plan governs how Settlement Class Members' claims will be calculated and, ultimately, how money will be

19

distributed to Authorized Claimants.

### 3.    Attorneys' Fees, Litigation Expenses, and Award to Lead Plaintiff

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Lead Counsel intends to seek an award of attorneys' fees of no more than one-third of the Settlement Fund, and recover litigation expenses in an amount not to exceed $80,000. This fee request is in line with other settlements approved in this Circuit. *In re Akazoo S.A. Sec. Litig.*, No. 1:20-CV-01900-BMC, 2021 WL 4316717, at *1 (E.D.N.Y. Sept. 10, 2021) (awarding attorneys' fees of one-third of $4.9 million partial settlement); *Kristal v. Mesoblast Ltd.*, No. 7:20-CV-08430-PMH, 2022 WL 3442535, at *1 (S.D.N.Y. Aug. 15, 2022) (awarding attorneys' fees of one-third of $2 million settlement); *Lea v. Tal Educ. Grp.*, No. 18-CV-5480 (KHP), 2021 WL 5578665, at *12 (S.D.N.Y. Nov. 30, 2021) ("percentage of the fund requests – one-third – is a percent that has been approved as reasonable in this Circuit."); *Guevoura Fund Ltd. v. Sillerman*, No. 1:15-CV-07192-CM, 2019 WL 6889901, at *21 (S.D.N.Y. Dec. 18, 2019) (awarding attorneys' fees of one-third and finding that it is "consistent with percentage fees awarded in this Circuit and nationwide for comparable recoveries") (citing cases); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (awarding attorneys' fees of one-third and holding that this "request…falls comfortably within the range of fees typically awarded in securities class actions").

Further, as explained in the proposed notice, Lead Plaintiff intends to request an amount not to exceed $10,000 for reasonable costs and expenses pursuant to 15 U.S.C. §78u-4(a)(4) in connection with his representation of the Settlement Class.

### 4.    The Parties Have Agreed to a Confidential Agreement Regarding Opt-Outs

The Parties have agreed to a standard supplemental agreement providing that if Settlement Class Members representing a certain number of shares of Sunlands ADSs opt out of the Settlement,

Sunlands shall have the option to terminate the Settlement. Stipulation ¶ 2.12. As standard in securities class actions, while the Supplemental Agreement is identified in the Stipulation (*id.*), the terms are confidential to avoid creating incentives for a small group of class members to opt out solely to leverage the threshold to extract an individual settlement. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co.*, 2019 WL 5257534, at *15.

### E.    There is No Preferential Treatment; The Plan Is Designed to Treat Class Members Equitably

Rule 23(e)(2)(D) requires courts to evaluate if the settlement treats class members equitably relative to one another. A plan of allocation will be preliminarily approved if the proposed plan has a "reasonable, rational basis." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 158 (S.D.N.Y. 2013). The Plan is fair, reasonable and adequate because it does not treat Lead Plaintiff or any other Settlement Class Member preferentially. *Pasini v. Fishs Eddy, LLC*, No. 1:16-CV-00354-PGG, 2018 WL 6843905, at *2 (S.D.N.Y. Nov. 15, 2018) (approving a class action settlement where "the terms of the Settlement have no obvious deficiencies and do not improperly grant preferential treatment to any individual member of the Settlement Class").

The Plan, set out in the Long Notice, explains how the Settlement proceeds will be distributed among Authorized Claimants. The Plan was designed, with the help of a damages expert, to distribute the Settlement Fund consistent with the claims alleged in this case. Each claimant's Recognized Loss is calculated based on the number of shares purchased pursuant or traceable to the Sunlands IPO Offering Documents and each Recognized Loss is divided by the total Recognized Losses of all Authorized Claimants, multiplied by the total amount of the Net Settlement Fund. Lead Plaintiff and all other Settlement Class Members will receive their payment pursuant to the same formula.

21

## V.    THE PROPOSED FORMS AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE AND SATISFY FED. R. CIV. P. 23, THE PSLRA, AND DUE PROCESS

Class notice of a settlement must meet the requirements of Rules 23(c)(2) and 23(e), the PSLRA, and due process. Under Rule 23(c)(2), the Court "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Cap. One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014). Additionally, the notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," including the opportunity to opt out of or object to the settlement. *Id.* at 27. The requirements of Rule 23, due process, and the PSLRA are similar. *Compare Vargas, supra, with Consol. Edison, Inc. v. Ne. Utilities*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004) ("Due process requires that the notice to class members 'fairly apprise the ... members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.'"), *with* 15 U.S.C. § 78u-4(a)(7)(A)-(F).

The proposed Long Notice provides detailed information concerning: (a) the rights of Settlement Class Members, including the manner in which objections can be lodged; (b) the nature, history, and progress of the litigation; (c) the proposed Settlement; (d) how to file a Claim Form; (e) a description of the Plan; (f) the fees and expenses to be sought by Lead Counsel and Lead Plaintiff; and (g) the necessary information to examine Court records. This closely tracks a model notice published by the Federal Judicial Center.[7]

The proposed Long Notice also informs Settlement Class Members how to request exclusion from the Settlement and clearly states that all those who do not exclude themselves will be bound by the Settlement and Final Judgment. Furthermore, the PSLRA-mandated disclosures are satisfied as the Long Notice: (a) states the amount of the Settlement on both an aggregate and

---

[7] *Compare* Ex. A-1 *with* Federal Judicial Center, *Securities Class Action Certificate and Settlement: Full Notice*, available at https://www.fjc.gov/sites/default/files/2016/ClaAct13.pdf.

average per share basis; (b) provides a brief statement explaining the reasons why the Parties are proposing the Settlement; (c) states the amount of attorneys' fees and maximum amount of litigation expenses (both on an aggregate and average per share basis) that counsel will seek; and (d) provides the contact information for the Claims Administrator[8] and Lead Counsel to answer questions from Settlement Class Members. 15 U.S.C. § 78u-4(a)(7).

The proposed Notice program includes: (a) emailing links to the location of the Long Notice and Claim Form, or if no email address can be obtained, mailing the Postcard Notice, to Settlement Class Members who can be identified with reasonable effort; (b) posting the Long Notice, Claim Form, Preliminary Approval Order, and Stipulation on a website maintained by the Claims Administrator; (c) upon request, mailing copies of the Long Notice and/or Claim Form; and (d) disseminating the Summary Notice over *GlobeNewswire* and in *Investor's Business Daily*. Courts have held this multi-pronged approach sufficient to satisfy the notice requirements of Rule 23, the PSLRA, and due process. *In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-04846-NGG-PK, 2021 WL 345790, at *3 (E.D.N.Y. Feb. 1, 2021) (included notice by email, mailed postcard notice, disseminating summary notice, and website); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 (S.D.N.Y. 2014).

Accordingly, the form and manner of providing notice are the best practicable under the circumstance and satisfy due process, Rule 23, and the PSLRA.

## VI.    PROPOSED SCHEDULE OF EVENTS

Lead Plaintiff proposes the following schedule as set forth in the Preliminary Approval Order, paragraphs of which are referenced in the chart:

---

[8] Lead Plaintiff requests Strategic Claims Services ("SCS") be appointed the Claims Administrator as SCS has substantial experience administering securities settlements. *See, e.g., In re Akazoo S.A. Sec. Litig.*, No. 1:20-CV-01900-BMC, 2021 WL 8945767, at *2-3 (E.D.N.Y. Apr. 28, 2021) (appointing SCS), and 2022 WL 14915876, at *2 (E.D.N.Y. Oct. 7, 2022) (final judgment approving implementation of notice program).

| Event | Deadline for Compliance |
| --- | --- |
| Posting Stipulation, Long Notice, and Claim Form and Preliminary Approval Order on Claims Administrator's Website | Within 21 days after entry of the Preliminary Approval Order (¶15) |
| Emailing Links to the Long Notice and Claim Form, and/or Mailing Postcard Notice | Within 21 days after the entry of the Preliminary Approval Order (¶17) |
| Publication of the Summary Notice | Within 21 days after the entry of the Preliminary Approval Order (¶16) |
| Deadline to file papers in support of the Settlement, the Plan, and for application of attorneys' fees and expenses | No later than 28 days prior to the Settlement Fairness Hearing (¶32) |
| Deadline for requests for exclusion | No later than 21 days prior to the Settlement Fairness Hearing (¶23) |
| Deadline for Objections | No later than 21 days prior to the Settlement Fairness Hearing (¶29) |
| Deadline for Claim Forms | No later than 30 days prior to the Settlement Fairness Hearing (¶21(a)) |
| Deadline to file reply papers in support of the Settlement, the Plan, and for application of attorneys' fees and expenses | No later than 7 days prior to the Settlement Fairness Hearing (¶33) |
| Date for Settlement Fairness Hearing | Approximately 100 days after the Preliminary Approval Order |

## VII.    CONCLUSION

For the above-stated reasons, Lead Plaintiff requests that the Court: (1) preliminarily certify the Class for the purposes of Settlement; (2) preliminarily approve the Settlement as set forth in the Stipulation; (3) approve the form and manner of notice; and (4) set a Settlement Fairness Hearing.

Dated: May 8, 2023                          Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**
By: /s/*Brian B. Alexander*
Phillip Kim
Brian B. Alexander
Jing Chen
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
        balexaner@rosenlegal.com
        jchen@rosenlegal.com

*Counsel for Lead Plaintiff and the Proposed Settlement Class*

25