**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAVID HOROWITZ, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> SUNLANDS TECHNOLOGY GROUP, TONGBO LIU, YIPENG LI, JIANHONG YIN A/K/A PENG OU, LU LU, MICHAEL MINHONG YU, YANG WANG, GAONENG JI, SAM HANHUI SUN, XIAOCHUAN WANG, GOLDMAN SACHS (ASIA) L.L.C., CREDIT SUISSE SECURITIES (USA) LLC, AND J.P. MORGAN SECURITIES LLC, <br><br> Defendants. | No. 1:19-CV-03744-RML <br><br> CLASS ACTION |

**DECLARATION OF BRIAN B. ALEXANDER IN SUPPORT OF THE MOTIONS FOR: (I) FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND AWARD TO LEAD PLAINTIFF**

**TABLE OF EXHIBITS TO DECLARATION**

| EXHIBIT | TITLE |
|---------|-------|
| 1 | Declaration of Robert A. Meyer |
| 2 | Declaration of Josephine Bravata Concerning: (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections |
| 3 | Declaration of Lead Plaintiff David Horowitz |
| 4 | Declaration of Brian B. Alexander on Behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses |
| 5 | Yahoo Finance's historical price record of Sunlands Technology Group's ADSs from March 26, 2018 to June 27, 2019. |
| 6 | Excerpts from Sunlands' 2022 Form 20-F, filed with the U.S. Securities and Exchange Commission on April 25, 2023. |
| 7 | Excerpts from Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements: 2022 Review and Analysis* (Cornerstone Research 2023) |
| 8 | Excerpts from Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* (NERA Economic Consulting 2023) |
| 9 | Declaration of Laurence M. Rosen Concerning Attorneys' Fees and Expenses (Dkt. No. 366) in the matter *In re Global Brokerage, Inc. f/k/a FXCM Inc. Securities Litigation,* No. 1:17-cv-00916-RA-BCM (S.D.N.Y.) |
| 10 | Order and Final Judgment entered on July 7, 2023 in *In re Global Brokerage, Inc. f/k/a FXCM Inc. Securities Litigation*, No. 1:17-cv-00916- RA-BCM, (S.D.N.Y.) (Dkt. No. 374) |
| 11 | Declaration of Laurence Rosen (Dkt. No. 182-3) in the matter *In re Zillow Group, Inc. Securities Litigation*, No. 2:17-cv-01387-JCC (W.D. Wash.) |

i

| 12 | Order and Final Judgment entered on August 8, 2023 in *In re Zillow Group, Inc. Securities Litigation*, No. 2:17-cv-01387-JCC, slip op. (W.D. Wash.) (Dkt. No. 186) |
|----|------------------------------------------------------------------------------------------------------------------------------------------------------------|
| 13 | Declaration of Laurence M. Rosen on Behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses  (Dkt. No. 44-2) in the matter *Bell v. Kanzhun Limited, et al.*, Case No. 2:21-cv-13543-MAH (D.N.J.) |
| 14 | Order Awarding Attorneys' Fees, Reimbursement of Expenses, and Award to Lead Plaintiff earned on April 5, 2023 in *Bell v. Kanzhun Limited, et al.*, Case No. 2:21-cv-13543-MAH (D.N.J.) (Dkt. No. 53) |

I, Brian B. Alexander, declare under penalty of perjury, pursuant to 28 U.S.C. §1746, as follows:

1.      I am Counsel at The Rosen Law Firm, P.A. ("Rosen Law"), Court-appointed Lead Counsel for Lead Plaintiff David Horowitz ("Lead Plaintiff" or "Horowitz").  I conducted the day-to-day activities in the Action.[1]  I am familiar with the proceedings in this litigation, and I have personal knowledge of the matters set forth herein based upon participating in all aspects the Action.

2.      I respectfully submit this declaration, together with the attached exhibits, in support of Lead Plaintiff's Motions for: (I) Final Approval of Class Action Settlement and Plan of Allocation; and (II) an Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Lead Plaintiff. As set forth in the Memorandum of Law in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation ("Final Approval Memorandum"), Lead Plaintiff seeks final approval of the $6,200,000 Settlement for the benefit of the Settlement Class, as well as final approval of the proposed Plan of Allocation of the Net Settlement Fund to eligible Settlement Class Members.[2]

---

[1] Capitalized terms not otherwise defined herein have the meanings given to them in the Stipulation of Settlement (the "Stipulation") dated May 8, 2023 (Dkt. No. 61) or the Amended Class Action Complaint for the Violation of the Federal Securities Laws ("Amended Complaint") (Dkt. No. 25).

[2] The Settlement Class is defined as "all persons who purchased Sunlands American Depository Shares ("ADSs") pursuant or traceable to the registration statement and related prospectus issued in connection with Sunlands' March 2018 initial public stock offering (the "Sunlands IPO Offering Documents"), and were damaged thereby. Excluded from the Settlement Class are: Defendants; the officers, directors, and affiliates of Sunlands at all relevant times; Sunlands employee retirement or benefit plan(s) and their participants or beneficiaries to the extent they purchased or acquired Sunlands ADSs through any such plan(s); any entity in which Defendants have or had a majority ownership interest; immediate family members of any excluded Person; and the legal representatives, heirs, successors, or assigns of any excluded Person or entity. Notwithstanding this provision, the Parties agree that any "Investment Vehicle" shall not be excluded from the Settlement Class. Investment Vehicle means any investment company or pooled investment fund,

3.      As set forth in the Memorandum of Law in Support of the Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Award to Lead Plaintiff ("Fee Memorandum"), Lead Counsel seek an award of attorneys' fees in the amount of one-third of the Settlement Fund (which, by definition, includes interest accrued thereon), reimbursement of litigation expenses of $34,762.10, and an Award to Lead Plaintiff of $10,000, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for the time he devoted to his representation of the Settlement Class.

4.      The Court preliminarily approved the proposed Settlement by Order dated June 14, 2023 (the "Preliminary Approval Order"), and thereby directed notice of the Settlement to be disseminated to the Settlement Class.  Pursuant to the Preliminary Approval Order, Strategic Claims Services ("SCS"), the Court-approved Claims Administrator, implemented a comprehensive notice program under Lead Counsel's direction, whereby notice was given to potential Settlement Class Members by mail and/or email and by publication.

5.      In total, SCS notified 1,951 potential Settlement Class Members about the Settlement either by mailed Postcard Notice or emailed links to the Long Notice and Claim Form. To date, no requests for exclusion and no objections have been received.

## I.      INTRODUCTION

6.      The Action asserts claims pursuant to Sections 11 and 15 of the Securities Act of 1933 ("Securities Act"), against Sunlands Technology Group ("Sunlands" or the "Company"),

---

including, but not limited to, mutual fund families, exchange traded funds, fund of funds, hedge funds, and retirement accounts and employee benefit plans, in which any of the Underwriter Defendants have, has, or may have a direct or indirect interest, or as to which its affiliates may act as an investment advisor or manager, but in which any of the Underwriter Defendants alone or together with its respective affiliates is not a majority owner or does not hold a majority beneficial interest. Also excluded from the Settlement Class are those Persons who submit a timely and valid request for exclusion in accordance with the Preliminary Approval Order." Stipulation ¶1.33.

Tongbo Liu, Yipeng Li, Jianhong Yin, Lu Lu, Michael Minhong Yu, Yang Wang (collectively, the "Individual Defendants" and, together with Sunlands, the "Sunlands Defendants"), and Goldman Sachs (Asia) L.L.C., Credit Suisse Securities (USA) LLC, and J.P. Morgan Securities LLC (collectively, the "Underwriter Defendants," and with the Sunlands Defendants, the "Defendants").

7. The proposed Settlement provides for the resolution of all claims against Defendants in exchange for a non-reversionary, cash payment of $6,200,000 (the "Settlement Amount"). As detailed herein, Lead Plaintiff and Lead Counsel submit that the proposed Settlement represents a highly favorable result for the Settlement Class considering the risks of continued litigation and the risks that Defendants will be unable to pay any judgment and that Lead Plaintiff will not be able to enforce a judgment.

8. The Settlement was negotiated by experienced counsel, who were well aware of the strengths and weaknesses of the case, including the ability to pay and judgment enforcement issues.

9. Lead Counsel's efforts in the litigation included, among other things:

- Researched, drafted, and filed the initial complaint in this Action;
- drafted a motion for appointment of lead plaintiff and lead counsel;
- conducted an extensive investigation of both English and Chinese language sources concerning the claims asserted in the Action, which included, among other things: (a) reviewing and analyzing (i) U.S. Securities and Exchange Commission ("SEC") filings, (ii) public reports, blog posts, research reports prepared by securities and financial analysts, and news articles, (iii) investor call transcripts; and (iv) other publicly available material; (b) retaining a private investigator in China to interview witnesses; and (c) retaining and consulting with an expert concerning damages;
- utilized that comprehensive investigation and additional research to draft and file the Amended Complaint;
- served the Individual Defendants in China through the Hague Service Convention;
- drafted pre-motion letters as well as successful oppositions to Defendants' motion to dismiss the Amended Complaint and motion for judgment on the pleadings;

3

- drafted and served document requests on Defendants and met and conferred multiple times with Defense Counsel about their responses and objections to those document requests;

- negotiated a protective order with Defense Counsel;

- drafted Electronically Stored Information ("ESI") Protocol and met and conferred with Defense Counsel about it multiple times;

- engaged in an extensive mediation and settlement process facilitated by Robert A. Meyer of JAMS, which included the submission of a detailed mediation statement and a full-day mediation session;

- drafted and negotiated a settlement term sheet, the Stipulation (including the exhibits thereto), and Supplemental Agreement with Defendants;

- worked with a damages expert to craft a plan of allocation that treats Lead Plaintiff and all other members of the proposed Settlement Class fairly;

- drafted the preliminary approval motion;

- oversaw the implementation of the notice process to Settlement Class Members; and

- drafted the motion for final approval.

10. Lead Plaintiff entered into the proposed Settlement only after performing all of the above work, and engaging in a full-day mediation that informed him and Lead Counsel as to the strengths and weaknesses of the case. The Settlement is, therefore, the result of arm's length negotiations between and among well-informed, highly experienced counsel.

11. Based on the foregoing efforts, Lead Plaintiff and Lead Counsel believe the Settlement represents a favorable outcome for the Settlement Class and is in the best interests of its members. For all the reasons set forth herein and in the accompanying memoranda and declarations, Lead Plaintiff and Lead Counsel respectfully submit that the Settlement is "fair, reasonable, and adequate" in all respects, and that the Court should grant final approval pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

12. In addition, Lead Plaintiff seeks approval of the proposed Plan of Allocation as fair and reasonable. As discussed in further detail below, Lead Counsel developed the Plan of Allocation with the assistance of Lead Plaintiff's damages consultant. The Plan of Allocation

provides for the distribution of the Net Settlement Fund to each Authorized Claimant on a *pro rata* basis based on their Recognized Loss amounts, and similar plans have been repeatedly approved by the courts.

13.   Finally, Lead Plaintiff seeks approval of Lead Counsel's request for attorneys' fees, reimbursement of litigation expenses, and Award to Lead Plaintiff.  As discussed in detail in the accompanying Fee Memorandum, the requested one-third fee is well within the range of percentage awards granted by courts in this Circuit in comparable securities class actions. Additionally, the fairness and reasonableness of the request is confirmed by a lodestar cross-check, and warranted in light of the extent and quality of the work performed and the substantial result achieved. Likewise, the requested out-of-pocket litigation costs of $34,762.10 and the requested PSLRA award of $10,000 to Lead Plaintiff are also fair and reasonable.  Accordingly, for the reasons set forth in the Fee Memorandum and for the additional reasons set forth herein, Lead Counsel respectfully submits that the request for attorneys' fees and reimbursement of Litigation Expenses should be approved.

## II.   PROSECUTION OF THE ACTION

### A.   Factual Background

14.    Lead Plaintiff alleges that Defendants violated the federal securities laws by making false and misleading statements about Sunlands's marketing, growth, installment payment program, and refund policies in the Sunlands IPO Offering Documents.

### B.   Procedural Background

15.   This Action began on June 27, 2019, when Mr. Horowitz filed a putative class action complaint for violations of the federal securities laws (the "Initial Complaint") in this Court against Defendants alleging claims under Sections 11, 12(a)(2), and 15 of the Securities Act (Dkt.

No. 1.) After Mr. Horowitz filed a motion seeking to be appointed lead plaintiff and to approve his selection of Rosen Law (Dkt. Nos. 5, 6), on August 26, 2019, the Court appointed Mr. Horowitz as Lead Plaintiff and approved Rosen Law as Lead Counsel (Dkt. No. 23).

16.    On November 15, 2019, Lead Plaintiff filed the operative Amended Complaint against Defendants, alleging claims under Sections 11 and 15 of the Securities Act. (Dkt. No. 25). On December 30, 2019, Sunlands and the Underwriter Defendants filed letter motions seeking a pre-motion conference regarding their intended motions to dismiss the Amended Complaint. (Dkt. Nos. 29, 30), which Lead Plaintiff opposed (Dkt. No. 31). On June 11, 2020, Sunlands and the Underwriter Defendants filed a fully briefed motion to dismiss pursuant to the Court's bundling rule. (Dkt No. 35-37). On June 26, 2020, the Individual Defendants filed a motion for joinder in Sunlands' and the Underwriter Defendants' motions to dismiss. (Dkt No. 35-38).

17.    On June 29, 2020, Lead Plaintiff filed a notice voluntarily dismissing Gaoneng Ji, Sam Hanhui Sun, and Xiaochuan Wang. (Dkt. No. 39).

18.    On January 8, 2021, Magistrate Judge Robert M. Levy was assigned to the case.

19.    On March 31, 2021, the Honorable Fredric Block issued a Memorandum and Order denying the Defendants' Motions to Dismiss. (Dkt. No. 41, "MTD Order").

20.    On April 1, 2021, the case was reassigned to the Honorable LaShann DeArcy Hall for all further proceedings.

21.    On April 12, 2021, Magistrate Judge Levy held a conference during which he ordered that written discovery could begin, and that counsel should hold a Rule 26(f) conference and submit a proposed case management order.

22.    On May 17, 2021, Defendants filed Answers to the Complaint. (Dkt. Nos. 44, 46).

23.    On May 19, 2021, the Sunlands Defendants filed a letter motion seeking a pre-

6

motion conference regarding their intended motion for judgment on the pleadings, which Lead Plaintiff opposed. (Dkt. Nos. 47-49).

24.     On May 26, 2021, Lead Plaintiff served his First Set of Requests for the Production of Documents to All Defendants and, on June 9, 2021, the Parties filed a Proposed Scheduling Order and Discovery Plan (Dkt. No. 50) and exchanged initial disclosures.

25.     On June 10, 2021, Judge DeArcy Hall denied Sunlands' and the Individual Defendants' request for a pre-motion conference and set a briefing schedule for their anticipated motion for judgment on the pleadings. (June 10, 2021 Dkt. Entry). On June 17, 2021, Magistrate Judge Levy held a conference during which the Parties agreed that Defendants' anticipated motion for judgment on the pleadings triggered a mandatory stay of discovery under the PSLRA.

26.     On July 23, 2021, Defendants filed their fully briefed motion for judgment on the pleadings pursuant to the Court's bundling rule. (Dkt No. 54-56). On September 21, 2022, Judge DeArcy Hall issued a Memorandum and Order denying Defendants' motion for judgment on the pleadings. (Dkt. No. 57, "MJP Order").

27.     On October 12, 2022, the Parties filed an amended joint discovery plan and case management order (Dkt. No. 59) and Magistrate Judge Levy held a conference on October 18, 2022, where he adopted the amended order. On October 19, 2022, Sunlands, the Individual Defendants, and the Underwriters served responses and objections to Lead Plaintiff's First Set of Requests for the Production of Documents to All Defendants.

28.     On November 8, 2022, the Parties submitted a proposed confidentiality order (Dkt. No. 60) and Magistrate Judge Levy so-ordered it on November 9, 2022. On November 29, 2022, Defendants served their First Request for the Production of Documents to Lead Plaintiff and Lead Plaintiff served his responses and objections on January 18, 2023. Additionally, prior to the

7

Parties' January 20, 2023 mediation, the Parties met and conferred multiple times about Defendants' responses and objections to Lead Plaintiff's document requests and about the ESI Protocol drafted by Lead Plaintiff.

        **C.**        **Settlement Negotiations and the Settlement's Preliminary Approval**

29.      On January 20, 2023, following the submission of written position statements and exhibits, Lead Plaintiff and the Sunlands Defendants participated in an in-person, all-day mediation with Mr. Meyer. After vigorous negotiation by the Parties, Mr. Meyer made a mediator's proposal as a resolution of the Action. On January 23, 2023, Mr. Meyer informed the Parties that both sides accepted the mediator's proposal.

30.      At all times the settlement negotiations were arm's-length and hard fought. According to Mr. Meyer, "...the parties carried out extensive, detailed, and hard-fought discussions regarding the strengths and weaknesses of the case" and "the negotiations between counsel for the parties were conducted at arm's length and were not collusive." Exhibit 1, Declaration of Robert A. Meyer ("Meyer Decl"), at ¶13.  Additionally, Mr. Meyer concluded "that all sides litigated the action in a vigorous, professional, and thorough manner. It was also clear to me that both sides were well-prepared and fully capable of proceeding to a judicial resolution if a settlement could not be achieved." *Id.*

31.      Shortly after that acceptance of the mediator's proposal, the sides negotiated and agreed to a term sheet.

32.      Following additional negotiations, the Parties exchanged multiple drafts of—and ultimately executed—the Stipulation and Lead Plaintiff filed his Unopposed Motion for Entry of Order Preliminarily Approving Settlement and Establishing Notice Procedures (Dkt. Nos. 61-64).

33.      On June 14, 2023, the Court entered the Preliminary Approval Order.

### III.    THE RISKS OF CONTINUED LITIGATION

34.     The Settlement provides an immediate and certain benefit to the Settlement Class in the form of a non-reversionary cash payment of $6,200,000.  As explained more fully below, there were significant risks that the Settlement Class might recover substantially less than the Settlement Amount—or nothing at all—if the case were to proceed through additional litigation to a jury trial, followed by the inevitable appeals.  Prior to trial and appeal, Lead Plaintiff faced significant litigation risks.  In addition, there were concerns related to Defendants' ability to pay and Lead Plaintiff's ability to enforce a judgment.  Thus, there was no guarantee that Lead Plaintiff and the Settlement Class would later achieve any recovery, let alone one greater than the Settlement Amount.

### A.    The Complexity, Expense and Duration of Litigation

35.     In the absence of the Settlement, the Action would have required extensive fact and expert discovery, as well as, litigating a class certification motion, summary judgment motions, and *Daubert* motions, followed by proving Lead Plaintiff's claims at trial, post-trial motions, and appeals.

36.     The fact that the Sunlands Defendants, and likely most of the witnesses, are in China adds additional complexity. Obtaining evidence through the Hague Convention and letters rogatory is cumbersome and inefficient. Additionally, the Chinese government has imposed restrictions against the production of evidence and testimony to parties abroad. Therefore, there is no guarantee that Lead Plaintiff will be able to obtain the necessary evidence to prove his case and even if Lead Plaintiff is able to do that, it would be costly and potentially take years, delaying any potential recovery of Settlement Class Members. Additionally, it is likely that the vast majority of

9

documents produced will be in Chinese, requiring translation or the retention of bilingual attorneys to facilitate document review.

### B. Risks to Proving Liability and Damages

37. Although the alleged misstatements that Lead Plaintiff pled in the Amended Complaint survived Defendants' motion to dismiss, to survive a summary judgment motion, Lead Plaintiff would need to prove — not merely allege — that "Sunlands' difficulties with students…were the result of pervasive and obviously illegal wrongdoing that was ongoing at the time of the registration statement." MTD Order at 8.

38. Lead Plaintiff also expected Defendants to continue to pursue their statute of limitations affirmative defense on summary judgment.

39. Although Lead Plaintiff believes he had strong arguments in response to these arguments and others, Defendants' contentions nevertheless posed a risk to establishing liability had the litigation continued. Indeed, despite believing that the Action is meritorious, Lead Plaintiff and Lead Counsel were well aware of the high hurdles they would have to surmount in order to successfully prove that Defendants actually violated the securities laws.

40. Even assuming Lead Plaintiff overcame the above risks and established liability, Lead Plaintiff would have confronted considerable challenges in litigating class-wide damages.

41. The statutory measure of damages under Section 11 is the difference between the IPO price for Sunlands' ADSs, and the price on the date this suit was filed. 15 U.S.C. § 77k(e). Here, the IPO price of Sunlands' IPO of 13 million ADSs was $11.50 per share, and at the time Lead Plaintiff filed his Initial Complaint on June 27, 2018, the ADSs had dropped all the way to around $2.40 per share, yielding statutory damages of approximately $118 million. *See* Exhibit 5 (historical prices of Sunlands' ADSs). Section 11 of the Securities Act, however, provides a

10

negative causation defense under which defendants can reduce the amount of damages by establishing that "the decline in the value of the security in question was not caused by the material omissions or misstatements in the registration statement." *See McMahan & Co. v. Wherehouse Ent., Inc.*, 65 F.3d 1044, 1048 (2d Cir. 1995).

42.     Defendants' negative causation defense creates risk for Lead Plaintiff because it was necessary for Lead Plaintiff to argue in response to Defendants' statute of limitation defense that the market was not aware of the allegations in the *Beijing News* Article more than a year prior to the filing of the Amended Complaint on November 15, 2019. MJP Order at 18.[3] Defendants will argue that this was a concession by Lead Plaintiff that any disclosures prior to November 15, 2018 could not have been corrective disclosure that caused losses to the Class. Since the price of Sunlands ADSs was $4.20 at the close of the market on November 14, 2018, Defendants will argue that only the difference between $4.20 and the price the day Lead Plaintiff filed the Initial Complaint ($2.40) should be attributed to Defendants' misstatements. *See* Ex. 5.[4]  Based on that calculation, Plaintiff and the Class would have a maximum amount of damages of approximately $23.4 million, substantially lower than the maximum available statutory damages. Furthermore, Defendants would try to show that at least some, if not all, of those $23.4 million in damages were not caused by their misstatements. Additionally, loss causation has not been tested at this point in the case because Lead Plaintiff did not plead any corrective disclosures in his Amended Complaint.

---

[3] Lead Plaintiff was forced to argue that the market was not aware of the *Beijing News* Article one-year prior to the Amended Complaint instead of one-year prior to the Initial Complaint because Defendants argued that the Amended Complaint did not relate back to the Initial Complaint. On both Defendants' motion to dismiss and motion for judgment on the pleadings, the Court declined to resolve the relation back issue.

[4] On August 31, 2021, Sunlands conducted a 1-to-12.5 reverse split that reduced the number of outstanding ADSs trading in the market. Accordingly, to calculate the price that each ADS was trading at during the relevant period, it is necessary to divide the prices in Exhibit 5 by 12.5.

11

43.     Moreover, if damages were ultimately contested, both sides would have used experts to support their respective positions. The inevitable "battle of the experts" at class certification, summary judgment, and trial creates substantial litigation risk because there can be no assurance as to which party's expert a jury will find more persuasive.

### C.     Risks of Maintaining Class Status

44.     If litigation were to continue, Defendants would have opposed class certification. While Lead Counsel believe that Rule 23's requirements would have been satisfied and a class would be certified, Lead Plaintiff bears the burden of proof on class certification and Defendants would have undoubtedly raised arguments challenging the propriety of class certification. Moreover, even if Lead Plaintiff successfully obtained class certification, Defendants could have sought permission from the Second Circuit to appeal any class certification order under Federal Rule of Civil Procedure 23(f), further delaying or precluding any potential recovery. Additionally, even if the Court were to certify the class, there is always a risk that the class could be decertified at a later stage in the proceedings. Class certification was, by no means, a forgone conclusion.

### D.     Other Risks, Including Trial and Appeals, and Ability to Collect a Judgment

45.     Complex litigation, like this Action, is uncertain and success is never guaranteed. Lead Plaintiff would have had to prevail at several stages of litigation, each of which would have presented significant risks in complex class actions such as this one.  Lead Counsel know from experience that despite the most vigorous and competent efforts, success in complex litigation such as this case is never assured.

46.     Even if Lead Plaintiff succeeded in proving all elements of his case at trial and obtained a jury verdict, Defendants would almost certainly have appealed. An appeal not only would have renewed all the risks Lead Plaintiff faced—as Defendants would have reasserted all

12

their arguments summarized above—but also would have resulted in significant additional delay. Given these significant litigation risks, Lead Plaintiff and Lead Counsel believe that the Settlement represents a highly favorable result for the Settlement Class.

47. Additionally, the Settlement was funded by Sunlands' D&O policy. In its most recent 20-F report filed with the SEC, Sunlands stated that its liabilities are greater than its assets. *See* Exhibit 6 at F-3 (Sunlands' 2022 Form 20-F). Therefore, Defendants' ability to pay is limited. Furthermore, because all of Sunlands assets and the Individual Defendants are located in China, it would have been difficult to enforce a judgment against the Sunlands Defendants.

48. Accordingly, if the case was litigated and if Lead Plaintiff prevailed, it is likely that the Settlement Class would have received less money than provided for in the Settlement. If a settlement had not been reached, Defendants would have continued to use the D&O policy funds to mount their defense and this would have eroded the amount of funds available for investors.

**E.     The Settlement is Reasonable in Light of the Maximum Potential Recovery**

49. Even based on the original calculation of $118 million in statutory damages, the Settlement offers a recovery of more than 5% of the maximum statutory damages, which, according to Cornerstone Research, is higher than the median percentage of statutory damages settled for in Securities Act cases in 2022 and 2021. Exhibit 7 (Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements: 2022 Review and Analysis* (Cornerstone Research 2023)) at 7-8.

50. The result looks even more favorable when one considers, as discussed in the previous section, that the Defendants will argue that the absolute maximum statutory damages still available in this case is actually approximately $23.4 million. The $6.2 million settlement represents a recovery of more than 26% of those damages. Additionally, NERA Economic

Consulting concluded that the median recovery in securities class actions in 2022 was approximately 1.8% of estimated damages. Exhibit 8 (Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* (NERA Economic Consulting 2023)) at 18. This weighs strongly in favor of final approval.

51.     Having evaluated the relative strengths and weaknesses of the Action in light of Defendants' arguments, and considering the very real risks presented by continued litigation, it is our informed judgment, based on all of the proceedings to date and our extensive experience in litigating class actions under the federal securities laws, that the proposed Settlement is fair, reasonable, and adequate and in the Settlement Class's best interest.

## IV.     LEAD PLAINTIFF'S COMPLIANCE WITH THE COURT'S PRELIMINARY APPROVAL ORDER REQUIRING ISSUANCE OF THE NOTICE

52.     The Preliminary Approval Order directed that SCS, under Lead Counsel's direction, to: (i) email links to the Long Notice and Claim Form on SCS's website to Settlement Class Members for whom SCS was able to obtain email addresses; (ii) mail the Postcard Notice to Settlement Class Members if no email address could be obtained identified with reasonable effort; and (iii) publish the Summary Notice.

53.     The Court also set a deadline of September 6, 2023 (21 calendar days prior to the Settlement Hearing) for Settlement Class Members to submit objections to the Settlement, the Plan of Allocation, and/or the Fee Memorandum or to request exclusion from the Settlement Class, and scheduled the Settlement Hearing for September 27, 2023 at 2:00 p.m.

54.     Contemporaneously with the dissemination of the notices, Lead Counsel instructed SCS to post downloadable copies of the Long Notice and Claim Form online at https://www.strategicclaims.net/sunlands (the "Settlement Website").   The notices directed Settlement Class Members to the Settlement Website in order to obtain additional information on

14

the Settlement, including how to file a claim, request exclusion or object to the Settlement, and access the Long Notice and Claim Form.

55.    The Court-approved Long Notice disclosed, among other things, the following information to Settlement Class Members: (a) a summary of the Settlement, including the $6,200,000 Settlement Amount; (b) the proposed Plan of Allocation; (c) that Lead Counsel would apply for an award of attorneys' fees in an amount not to exceed one-third of the Settlement Amount (*i.e.*, $2,066,666, plus interest), reimbursement of litigation expenses in an amount not to exceed $80,000, and an Award to Lead Plaintiff not to exceed $10,000; (d) that any Settlement Class Member could object to the requested attorneys' fees, reimbursement of the litigation expenses and Award to Lead Plaintiff; (e) an explanation of the reasons for the Settlement; (f) that requests for exclusion from the Settlement must be submitted to the Claims Administrator no later than September 6, 2023; (g) that objections to the Settlement, the Plan of Allocation, and/or the Fee Memorandum must be filed with the Court and served on counsel no later than September 6, 2023; and (h) that the deadline for submitting a Claim Form is August 28, 2023.

56.    To disseminate notice, on July 3, 2023, SCS mailed a copy of the Postcard Notice to the one organizations identified in the transfer agent records provided to Lead Counsel by Sunlands' counsel.  *See* Declaration of Josephine Bravata Concerning: (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; And (C) Report on Requests for Exclusion and Objections ("Bravata Decl."), attached hereto as Exhibit 2 at ¶6.

57.    In addition, SCS maintains a proprietary database with names and addresses of the largest banks, brokerage firms, institutions and other third-party nominees.  On June 27, 2023, 2023, SCS caused a letter to be mailed or emailed to the 2,256 nominees contained in the SCS master mailing list.  *Id.* at ¶5; Ex. 2-C (copy of the letter sent to nominees).  The letter directed

15

nominees to: (a) mail the Postcard Notice to their customers who may be beneficial purchasers/owners; (b) email a direct link to the Long Notice and Claim Form supplied by SCS to their beneficial purchasers/owners; or (c) provide SCS with a list of the names, mailing addresses, and email addresses, if available, of such beneficial purchasers/owners so SCS could promptly mail the Postcard Notice or email links to the Long Notice and Claim Form directly to them. *Id* at ¶5.

58.     To date, SCS and nominees have mailed 1,735 copies of the Postcard Notice to potential Settlement Class Members. *Id.* at ¶6. SCS was also informed that one of the nominees emailed 216 of their customers to notify them of this settlement and provide direct links to the Notice and Claim Form on the settlement website. *Id*. at ¶7.

59.     On July 3, 2023, in accordance with the Preliminary Approval Order, SCS caused the Summary Notice to be published once in *Investor's Business Daily* and to be transmitted over *GlobeNewswire*. *See id.* at ¶10; Ex. 2-D (confirmations of publications).

60.     Lead Counsel also caused SCS to establish the dedicated Settlement Website, which became operational on June 27, 2023, to provide potential Settlement Class Members with information concerning the Settlement, including exclusion, objection, and claim-filing deadlines for the case; the online claim filing link; the date and time of the Settlement Hearing; and downloadable versions of the Long Notice and Claim Form, as well as copies of the Stipulation and Preliminary Approval Order. *Id.* ¶12.

61.     SCS maintains a toll-free telephone number for potential Settlement Class Members to call and obtain information about the Settlement and/or request a Long Notice and Claim Form. SCS promptly responds to each telephone inquiry and will continue to address potential Settlement Class Members' inquiries. *Id.* at ¶11.

62.    As set forth above, the Long Notice informed potential Settlement Class Members that the deadline to file objections to the Settlement, the proposed Plan of Allocation and/or the Fee Memorandum, or to request exclusion from the Settlement Class, is September 6, 2023.  To date, no requests for exclusion have been received.  *Id.* at ¶¶13-14.  SCS will file a supplemental affidavit after the September 6, 2023 deadline addressing whether any requests for exclusion have been received.

63.    In addition, to date, no objections to the Settlement, the Plan of Allocation, and/or the Fee Memorandum have been entered on this Court's docket or have otherwise been received by Lead Counsel.  Lead Counsel will file reply papers by September 20, 2023 that will address any objections that may be received.

## V.    ALLOCATION OF THE NET PROCEEDS OF THE SETTLEMENT

64.    Pursuant to the Preliminary Approval Order, and as set forth in the Long Notice, all Settlement Class Members who want to participate in the distribution of the Net Settlement Fund (*i.e.*, the $6,200,000 Settlement Amount, plus any and all interest earned thereon, less: (i) any Taxes; (ii) any Notice and Administration Costs; (iii) any litigation expenses awarded by the Court; and (iv) any attorneys' fees awarded by the Court) must submit a valid Claim Form with all required information either online or postmarked no later than August 28, 2023. The Net Settlement Fund will be distributed among Authorized Claimants according to the proposed Plan of Allocation, subject to Court approval. *See* Ex. 2-B (Long Notice), at pp. 5-6.  As set forth in the Long Notice, the Net Settlement Fund will be distributed among Settlement Class Members according to the Plan of Allocation approved by the Court.

65.    The proposed Plan of Allocation is detailed in the Long Notice.  *See* Ex. 2-B (Long Notice) pp. 5-6.  A downloadable version of the Long Notice is posted online on the Settlement

Website. If approved, the Plan of Allocation will govern how the Net Settlement Fund will be distributed among Authorized Claimants. The Plan of Allocation's objective is to distribute the Net Settlement Fund equitably to those Settlement Class Members who suffered economic losses as a result of the Defendants' wrongful conduct. *See id.*

66. The Plan of Allocation, developed by Lead Plaintiff's damages expert working in conjunction with Lead Counsel, is based on a theory of damages consistent with the securities claims alleged, and reflects an assessment of the damages that Lead Plaintiff contends could have been recovered under the theories of liability and damages asserted in the Action.

67. Under the Plan of Allocation, the Claims Administrator will calculate a Recognized Loss for each Settlement Class Member's purchases of Sunlands ADSs pursuant or traceable to the Sunlands IPO Offering Documents.

68. Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement — his, her, or its Recognized Loss divided by the total of Recognized Loss of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund and in accordance with each type of claim's allocation.  Ex. 2- B (Long Notice) at pp. 5-6.

69. An individual Claimant's recovery under the Plan of Allocation will depend on a number of factors, including how many Sunlands ADSs the Claimant purchased and sold, when they purchased and sold the ADSs, the difference between the purchase price of the Sunlands ADSs and the price at which the Settlement Class Member sold them or their price on the date this suit was filed if the Settlement Class Member still held them at that time, and the number of valid claims filed by other claimants.

70. If a Claimant has an overall market gain with respect to his, her, or its overall

18

transactions in Sunlands ADSs common stock during the relevant period that Claimant will not recovery any money from the Settlement Fund.  *Id.*

71.      If the prorated payment to be distributed to any Authorized Claimant is less than $10.00, no distribution will be made to that Authorized Claimant.  Ex. 2- B (Long Notice) at p. 5; Stipulation ¶6.6.  Any prorated amounts of less than $10.00 will be included in the pool distributed to those Authorized Claimants whose prorated payments are $10.00 or greater. *Id.* In Lead Counsel's experience, processing and sending a check for less than $10.00 is cost-prohibitive.

72.      In sum, the Plan of Allocation was designed to allocate the proceeds of the Net Settlement Fund among Settlement Class Members based on the losses they suffered on transactions in Sunlands ADSs that were attributable to the wrongful conduct alleged in the Amended Complaint.  Lead Counsel believes that the proposed Plan of Allocation will result in a fair and equitable distribution of the Net Settlement Fund among Settlement Class Members similar to the result if Lead Plaintiff prevailed at trial.

73.      To date, no objections to the proposed Plan of Allocation have been received by Lead Counsel, the Claims Administrator, or filed on the Court's docket.  *See* Bravata Decl. at ¶14.

## VI.   LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

74.      In addition to seeking final approval of the Settlement and Plan of Allocation, Lead Counsel is applying for a fee award of one-third of the Class Action Settlement Amount (*i.e.*, $2,066,666, plus interest). Lead Counsel also request reimbursement of litigation expenses from the Settlement Fund in the amount of $34,762.10 and an Award to Lead Plaintiff of $10,000 for the time he devoted to his representation of the Settlement Class.  The requested litigation expenses are well below the maximum expense amount of $80,000 set forth in the Long Notice, Summary Notice, and Postcard Notice. The legal authorities supporting a one-third fee award are set forth in

19

the accompanying Fee Memorandum, which is being filed contemporaneously herewith. The primary factual bases for the requested fee and reimbursement of Litigation Expenses are summarized below.

### A.     The Fee Application

75.     Lead Counsel is applying for a percentage-of-the-common-fund fee as compensation for the services they rendered on behalf of the Settlement Class.  As set forth in the accompanying Fee Memorandum, the percentage method is the best method for determining a fair attorneys' fee award, because unlike the lodestar method, it aligns the lawyers' interest with that of the Settlement Class in achieving the maximum recovery.  The lawyers are motivated to achieve maximum recovery in the shortest amount of time required under the circumstances.  This paradigm minimizes unnecessary drain on the Court's resources.  Notably, the percentage-of-the-fund method has been recognized as appropriate by the Supreme Court and the Second Circuit for cases of this nature.  Furthermore, as set forth below, though not required in the Second Circuit, Lead Counsel also respectfully submits that the requested fee is fully supported by a "lodestar multiplier cross-check."

76.     Based on the quality of the result achieved, the extent and quality of the work performed, the significant risks of the litigation, and the fully contingent nature of the representation, Lead Counsel respectfully submits that the requested fee award is fair and reasonable and should be approved.  As discussed in the Fee Memorandum, a one-third fee award is well within the range of percentages awarded in securities class actions with comparable settlements in this Circuit.

### 1.     The Favorable Outcome Achieved is the Result of the Significant Time and Labor That Lead Counsel Devoted to the Action

77.     Lead Counsel spent considerable time prosecuting the Action on behalf of the

20

Settlement Class. Among other things, Lead Counsel:

- Researched, drafted, and filed the Initial Complaint in this Action;

- drafted a motion for appointment of lead plaintiff and lead counsel;

- conducted an extensive investigation of both English and Chinese language sources concerning the claims asserted in the Action, which included, among other things: (a) reviewing and analyzing (i) SEC filings, (ii) public reports, blog posts, research reports prepared by securities and financial analysts, and news articles, (iii) investor call transcripts, and (iv) other publicly available material; (b) retaining a private investigator in China to interview witnesses; and (c) retaining and consulting with an expert concerning damages;

- utilized the comprehensive investigation and additional research to draft and file the Amended Complaint;

- served the Individual Defendants in China through the Hague Service Convention;

- drafted pre-motion letters as well as successful oppositions to Defendants' motion to dismiss the Amended Complaint and motion for judgment on the pleadings;

- drafted and served document requests on Defendants and met and conferred multiple times with Defense Counsel about their responses and objections to those document requests;

- negotiated a protective order with Defense Counsel;

- drafted an ESI Protocol and met and conferred with Defense Counsel about it multiple times;

- engaged in an extensive mediation and settlement process facilitated by Mr. Meyer of JAMS, which included the submission of a detailed mediation statement and a full-day mediation session;

- drafted and negotiated a settlement term sheet, the Stipulation (including the exhibits thereto), and Supplemental Agreement with Defendants;

- worked with a damages expert to craft a plan of allocation that treats Lead Plaintiff and all other members of the proposed Settlement Class fairly;

- drafted the preliminary approval motion;

- oversaw the implementation of the notice process to Settlement Class Members; and

- drafted the motion for final approval.

78.     Attached hereto as Exhibit 4 is the Declaration of Brian B. Alexander on Behalf of

The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses ("Alexander Fee

21

Declaration"). The Alexander Fee Declaration includes a chart containing each Rosen Law attorney's time on the Action.

79.     The hourly rates for the attorneys and professional support staff are similar to the rates that have been accepted in other securities or shareholder litigation in this District and throughout the country.  Additionally, the rates billed by Rosen Law attorneys in this action (ranging from $550-$800 per hour for non-partners and $875-$1,075 per hour for partners) are comparable to peer plaintiff and defense firms litigating matters of similar magnitude.  Courts in the Second Circuit, and in other jurisdictions, have recently approved Rosen Law's rates. *See e.g.,* Exhibit 9, *In re Global Brokerage, Inc. f/k/a FXCM Inc. Securities Litigation,* No. 1:17-cv-00916-RA-BCM (S.D.N.Y.) Declaration of Laurence M. Rosen Concerning Attorneys' Fees and Expenses, ¶5 (Dkt. No. 366); Exhibit 10, *In re Global Brokerage, Inc. f/k/a FXCM Inc. Securities Litigation*, No. 1:17-cv-00916- RA-BCM, slip op. (S.D.N.Y.) (Dkt. No. 374); Exhibit 11, *In re Zillow Group, Inc. Securities Litigation*, No. 2:17-cv-01387-JCC (W.D. Wash.) Declaration of Laurence Rosen, ¶6 (Dkt. No. 182-3); Exhibit 12, *In re Zillow Group, Inc. Securities Litigation*, No. 2:17-cv-01387-JCC, slip op. (W.D. Wash.) (Dkt. No. 186); Exhibit 13, *Bell v. Kanzhun Limited, et al*., Case No. 2:21-cv-13543-MAH (D.N.J.) Declaration of Laurence M. Rosen on Behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses, ¶4 (Dkt. No. 44-2); Exhibit 14, *Bell v. Kanzhun Limited, et al*., Case No. 2:21-cv-13543-MAH, slip op. (D.N.J.) (Dkt. No. 53).

80.     Rosen Law expended 1,796.50 hours in the investigation and prosecution of the Action, resulting in a lodestar of $1,451,790.  The requested fee amount of one-third of the Settlement Fund currently equals $2,066,666 (plus interest earned at the same rate as the Settlement Fund), and therefore represents a lodestar multiplier of approximately 1.42.

81.     Moreover, Lead Counsel will continue to work towards effectuating the Settlement in the event the Court grants final approval. Among other things, Lead Counsel will continue working with the Claims Administrator to resolve issues with Settlement Class Member's claims, will respond to shareholder inquiries, will draft and file a motion for distribution, and will oversee the distribution process.  No additional compensation will be sought for this work.

82.     As detailed above, throughout this litigation, Lead Counsel devoted substantial time to the prosecution of the Action. Lead Counsel maintained control of, and monitored the work performed by, lawyers and other personnel on this case.  Throughout the litigation, Lead Counsel maintained an appropriate level of staffing that avoided unnecessary duplication of effort and ensured the efficient prosecution of this litigation.

83.     Lead Counsel's extensive efforts in the face of substantial risks and uncertainties have resulted in a significant recovery for the benefit of the Settlement Class.  In circumstances such as these, and in consideration of the hard work and the result achieved, we respectfully submit that the requested fee is reasonable and should be approved.

### 2.     The Magnitude and Complexity of the Action

84.     As detailed in the Fee Memorandum, securities class action cases are known for their notorious complexity.  This case was no different.  To build and settle the case, Lead Counsel, among other things, needed to: (i) conduct an extensive factual investigation of both English and Chinese sources, including retention of a private investigator in China to interview witnesses and consultation with loss causation and damages expert; (ii) prepare the Initial and Amended Complaints; (iii) successfully oppose Defendants' motion to dismiss the Amended Complaint and motion for judgment on the pleadings; (iv) draft and serve document requests on Defendants and meet and confer multiple times with Defense Counsel about their responses and objections to those

document requests; (v) negotiate a protective order with Defense Counsel; (vi) draft an ESI Protocol and meet and confer with Defense Counsel about it multiple times; (vii) submit a written mediation statement; and (viii) engage in a full day mediation.

85.     The Parties zealously advocated their positions throughout the litigation and mediation process and it took several months before the Parties reached complete agreement and executed the Stipulation.

### 3.     The Significant Risks Borne By Lead Counsel

86.     This prosecution was undertaken by Lead Counsel on an entirely contingent-fee basis.  From the outset, there was no guarantee that Lead Counsel would ever be compensated for the substantial investment of time and money the case would require. In undertaking that responsibility, Lead Counsel was obligated to ensure that sufficient resources were dedicated to the prosecution of the Action, that funds were available to compensate attorneys and staff, and that the considerable litigation costs required by a litigation like this one were covered. Upon Rosen Law's involvement in the Action, it was unknown how long litigation would last. With an average lag time of many years for complex cases like this to conclude, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis.  Indeed, Lead Counsel received no compensation during the course of the Action, and incurred $34,762.10 in out-of-pocket litigation-related expenses.

87.     Additionally, Lead Plaintiff alleged his claims without information gained through subpoena power, as Defendants argued that any attempt to do so was precluded by the PSLRA's automatic stay of discovery.

88.     Lead Counsel also bore the risk that no recovery would be achieved. As discussed above, from the outset, this litigation presented multiple risks and uncertainties that could have prevented any recovery whatsoever.

89.     Moreover, despite the most vigorous and competent of efforts, success in contingent-fee litigation like this one is never assured.  Lead Counsel know from experience that the commencement of a class action does not guarantee a settlement. *See supra*, ¶¶35-48. To the contrary, it takes hard work and diligence by skilled counsel to develop the facts and theories that are needed to sustain a complaint or win at trial, or to induce sophisticated defendants to engage in serious settlement negotiations at meaningful levels.

**4.      The Quality of Representation, Including the Result Obtained, the Experience and Expertise of Leal Counsel, and the Standing and Caliber of Defendants' Counsel**

90.      As demonstrated by Rosen Law's firm resume, attached as Exhibit A to the Alexander Fee Declaration, Lead Counsel is a highly experienced and skilled law firm that focuses its practice on securities class action litigation. Indeed, Lead Counsel has substantial experience in litigating securities class actions and has negotiated scores of other class settlements, which have been approved by courts within the Second Circuit and throughout the country. Lead Counsel enjoys a reputation for skill and success in the prosecution and favorable resolution of securities class actions and other complex civil matters, including in cases against China based Defendants, and Lead Counsel's experience added valuable leverage in the settlement negotiations. *See Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019) (In considering approval of the $250 million securities settlement against Chinese company Alibaba, the Court stated that "[t]he quality of representation by [Rosen Law] and Defendants' counsel was high in this case . . ."); *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 429 (S.D.N.Y. 2008) (holding that "[T]he Rosen Law firm is well-qualified to serve as lead counsel" in case involving Chinese

25

company); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) (holding that "[t]he Rosen Law Firm is 'highly qualified [and] experienced' in securities class actions" in case involving Chinese company); *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 242 (E.D.N.Y. 2011) ("the Rosen Law Firm is well-qualified to serve as lead counsel in this matter"); *Mikhlin v. Oasmia Pharm. AB*, 2021 WL 1259559, at *4 (E.D.N.Y. Jan. 6, 2021) ("The Rosen Law Firm, P.A . . . [is] capable and experienced in class litigation.").

91.     Lead Counsel also obtained a highly favorable result for the Settlement Class, as described in Paragraphs 49-51.

92.     Additionally, the quality of the work performed by Lead Counsel in obtaining the Settlement should also be evaluated in light of the quality of the opposition. Here, the Defendants were represented by Davis Polk & Wardwell LLP and Goodwin Procter, LLP, well-known law firms that vigorously represented the interests of their clients throughout the Action. Indeed, from past experience, Lead Counsel know firsthand that Defense Counsel will zealously and persistently litigate for their clients through class certification, summary judgment, trial, and appeals. In the face of this experienced and formidable opposition, Lead Counsel was nonetheless able to persuade Defendants to settle the case on terms favorable to the Settlement Class.

93.     Mr. Meyer took note of the quality of the work counsel performed during the mediation process and found that they were well prepared and knowledgeable. Ex. 1, Meyer Decl. ¶8. Moreover, while the Court will make its own determination of an appropriate attorneys' fee award, Mr. Meyer believes that the request of one-third "is fair and reasonable in light of the substantial benefit conferred upon the class and the risks of continued litigation." *Id.* at ¶15.

**5.      The Requested Fee In Relation to the Settlement**

94.      The amount of the fee requested (one-third) in relation to the Settlement Amount ($6.2 million) is fair and reasonable. Courts routinely award fees of one-third in securities class action settlements.  *See* Fee Memorandum at pp. 6-8.

**6.      Interests of Public Policy, Including the Need to Ensure the Availability of Experienced Counsel in High-Risk Contingent Securities Cases**

95.      Courts have consistently recognized that it is in the public interest to have vigorous private enforcement of the federal securities laws.  If this important public policy is to be carried out, the courts should award fees that adequately compensate plaintiffs' counsel, taking into account the risks undertaken in prosecuting a securities class action. Relatedly, it is long-recognized public policy that settlement is to be encouraged, including the resolution of fee applications that fairly and adequately compensate the counsel who bear the risks and dedicate the time, financial investment, and expertise necessary to achieve those settlements.

**7.      The Reaction of the Class Supports Lead Counsel's Fee Request**

96.      As noted above, as of August 30, 2023, SCS notified 1,951 potential Settlement Class Members about the Settlement either by mailed Postcard Notice or emailed links to the Long Notice and Claim Form. Bravata Decl. at ¶8. To date, no requests for exclusion and no objections have been received. *Id*. at ¶¶13-14. In addition, the Court-approved Summary Notice has been published in *Investor's Business Daily* and transmitted over *GlobeNewswire*. *Id.* at ¶10; Ex. 2-D (confirmation of Summary Notice publications).  To date, no objections to the maximum potential attorneys' fees request set forth in the Long Notice have been received or entered on this Court's docket. Any objections received after the date of this filing will be addressed in Lead Counsel's reply papers, set to be filed by September 20, 2023.

### 8.    Lead Plaintiff Supports Lead Counsel's Fee Request

97.    As set forth in the declarations submitted by Lead Plaintiff, Lead Plaintiff has concluded that Lead Counsel's requested fee is fair and reasonable based on the work performed, the recovery obtained for the Settlement Class, and the risks of the Action. *See* Exhibit 3, Declaration of Lead Plaintiff David Horowitz ("Horowitz Decl."), at ¶6.  Lead Plaintiff has been intimately involved in this case, and his endorsement of Lead Counsel's fee request supports the reasonableness of the request and should be given weight in the Court's consideration of the fee award.

98.    In sum, Lead Counsel accepted the Action on a fully contingent basis, committed significant resources, and prosecuted the Action without any compensation or guarantee of success.  Based on the result obtained, the quality of the work performed, the litigation risks, and the contingent nature of the representation, Lead Counsel respectfully submit that a fee award of one-third of the Settlement Fund, resulting in a multiplier of 1.42, is fair and reasonable, and is supported by the fee awards courts have granted in other comparable cases.

### B.    Reimbursement of the Requested Litigation Expenses is Fair and Reasonable

99.    Lead Counsel seeks $34,742.10 in litigation expenses to be paid from the Settlement Fund.

100.    The Long Notice, Summary Notice, and Postcard Notice informed potential Settlement Class Members that Lead Counsel would be seeking reimbursement of litigation expenses in an amount not to exceed $80,000.  The amount requested by Lead Counsel is well below the $80,000 that Settlement Class Members were advised could be sought.  To date, no objection has been raised as to the maximum amount of expenses set forth in both the Long Notice, Summary Notice, and Postcard Notice.  If any objection to the request for reimbursement of

28

litigation expenses is made after the date of this filing, Lead Plaintiff will address it in his reply papers.

101.     From the beginning of the case, Lead Counsel were aware that they might not recover their out-of-pocket expenses.  Lead Counsel also understood that, even assuming the case was ultimately successful, reimbursement for expenses would not compensate them for the contemporaneous lost use of funds advanced to prosecute the Action. Accordingly, Lead Counsel were motivated to, and did, take steps to assure that only necessary expenses were incurred for the vigorous and efficient prosecution of the case.

102.     In my opinion, the expenses paid were necessary and appropriate for the prosecution and resolution of the Action. The expenses were incurred for professional services rendered by Lead Plaintiff's damages expert, investigator, costs of mediation, legal and factual research, translation of Chinese language documents, service of process, and other expenses incurred in the course of the litigation.

### C.     The Award to Lead Plaintiff

103.     Lead Plaintiff seeks reimbursement, pursuant to 15 U.S.C. § 78u-4(a)(4), for the time he devoted to with his representation of the Settlement Class, in the amount of $10,000.  Ex., 3, Horowitz Decl., ¶9. Lead Plaintiff lost a significant amount of money on his investments in Sunlands ADSs and was highly motived to, and did, work closely with Lead Counsel throughout the pendency of the Action to secure the highest possible recovery for himself and the Settlement Class. In fact, Mr. Horowitz initiated this Action.

104.     Lead Plaintiff is a sophisticated investor who has been investing for over 20 years. *Id*. at ¶2. Lead Plaintiff utilized his knowledge to assist Lead Counsel and the Settlement Class by conducting his own research and investigation. *Id*. at ¶4.

29

105.    Additionally, Lead Plaintiff: (i) regularly communicated with Lead Counsel regarding the posture and progress of the case, as well as strategy; (ii) produced documents to Lead Counsel attorneys; (iii) reviewed all significant pleadings and briefs filed in the Action; (iv) consulted with his attorneys regarding the settlement negotiations; and (v) evaluated and approved the proposed Settlement. *Id*.

## VII.    CONCLUSION

106.    In view of the significant recovery for the Settlement Class and the substantial risks related to the prosecution of the Action, as described herein and in the accompanying Final Approval Memorandum, I respectfully submit that the Settlement should be approved as fair, reasonable, and adequate and that the proposed Plan of Allocation should be approved as fair and reasonable.  I further submit that the requested fee in the amount of one-third of the Settlement Fund should be approved as fair and reasonable, reimbursement of litigation expenses, and Award to Lead Plaintiff, should also be approved.

I declare under penalty of perjury under the laws of the United States of America that the foregoing facts are true and correct.

Executed this 30th day of August 2023, at New York, New York.

*/s/ Brian B. Alexander*
BRIAN B. ALEXANDER

30